IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| KEITH EDWARDS, as guardian and conservator for Jerry Blasingame,  Plaintiff,  v.  OFFICER J. GRUBBS # 6416 and THE CITY OF ATLANTA,  Defendants. | CIVIL ACTION FILE  No. 1:19-CV-2047-SCJ |

### ORDER

The Court enters the following Order to perfect the record on Defendants' challenge/objection to Plaintiff's use of peremptory strikes.

### I. BACKGROUND

This action involves personal injuries to Jerry Blasingame, a Black man, allegedly caused by an excessive use of force by Officer Jon Grubbs, also a Black man. See Doc. No. [52]. Officer Grubbs witnessed Mr. Blasingame near an interstate in Atlanta and believed he was pan-handling. After Officer Grubbs attempted to question Mr. Blasingame, a pursuit ensued, during which Officer

Grubbs tased Mr. Blasingame. Mr. Blasingame sustained injuries as a result.[1] This lawsuit arises from that incident.

During jury selection at trial in this matter, Plaintiff and Defendants each had six peremptory strikes. Plaintiff used all his peremptory strikes on white venire members. Defendants raised a "reverse Batson challenge,"[2] contending that Plaintiff struck those venire members due to their race. As discussed further below, the Court undertook the three-step Batson analysis and overruled Defendants' Batson challenge. The Court enters this Order to perfect the record.

## II. LEGAL STANDARD

In Batson v. Kentucky, the Supreme Court held that the Equal Protection Clause of the United States Constitution forbids the striking of potential jurors solely on account of their race. 476 U.S. 79, 86 (1986); see also Georgia v.

---

[1] Because Mr. Blasingame's injuries have caused him to lack "sufficient capacity to make or communicate significant responsible decisions concerning the management of his health and safety," Keith Edwards was appointed as Mr. Blasingame's guardian and conservator. Doc. No. [113]. Thus, although Mr. Blasingame is the injured individual in this lawsuit, Mr. Edwards is the named plaintiff. Id.

[2] Because Batson dealt with the unlawful striking of Black jurors, courts have used the term "reverse Batson challenge" to refer to instances when a litigant challenges another litigant's striking of white jurors. See, e.g., United States v. Palmer, 770 F. App'x 509, 510 (11th Cir. 2019) (per curiam) (discussing "reverse Batson challenge" when a Black litigant used all her peremptory strikes on white venire members).

2

McCollum, 505 U.S. 42, 54 (1992) (holding that "a defendant's discriminatory exercise of a peremptory challenge is a violation of equal protection"). In ruling on Batson challenges, courts in the Eleventh Circuit have "consistently followed the three-step approach prescribed by Batson." United States v. Maxime, 484 F. App'x 439, 445 (11th Cir. 2012). Under that three-step procedure for evaluating an objection to a peremptory challenge,

> (1) the objector must make a prima facie showing that the peremptory challenge is exercised on the basis of race; (2) the burden then shifts to the challenger to articulate a race-neutral explanation for striking the jurors in question; and (3) the trial court must determine whether the objector has carried its burden of proving purposeful discrimination.

United States v. Allen-Brown, 243 F.3d 1293, 1297 (11th Cir. 2001).

## III.   DISCUSSION

Defendants met their initial burden of establishing a prima facie basis for a Batson objection. Plaintiff used all six of his strikes to eliminate white venire members. Courts look to "all relevant circumstances" to determine whether a challenging party has established a prima facie case of discrimination. Allen-Brown, 243 F.3d at 1297. Here, having considered all relevant circumstances, the Court determined that Plaintiff's striking of only white venire members was

3

sufficient to infer that Plaintiff—who as guardian and conservator for Mr. Blasingame is representing the interests of a Black man—struck venire members due to their race. See United States v. Palmer, 770 F. App'x 509, 510 (11th Cir. 2019) (per curiam) (finding that it was "undisputed" that the government had established a prima facie case under the first step of Batson because the defendant, who was Black, had "used all seven of her peremptory strikes on white venire members"); United States v. Walker, 490 F.3d 1282, 1291 (11th Cir. 2007) (stating that under the first step of the Batson analysis, "a pattern of strikes against all venire members of one race or gender is considered significant").

Because Defendants established a prima facie basis for their objection, it was then Plaintiff's burden to come forward with a race-neutral explanation for his use of the six peremptory strikes.[3] Plaintiff provided the following race-neutral explanations as to the struck venire members:

---

[3] "The second step of this process does not demand an explanation that is persuasive, or even plausible. 'At this [second] step of the inquiry, the issue is the facial validity of [Plaintiff's] explanation. Unless a discriminatory intent is inherent in [Plaintiff's] explanation, the reason offered will be deemed race neutral.'" Purkett v. Elem, 514 U.S. 765, 767–68 (1995) (citation omitted). The Supreme Court has admonished "that to rebut a prima facie case, the proponent of a strike must give a clear and reasonably specific explanation of his legitimate reasons for exercising the challenges, and that the reason must be related to the particular case to be tried. This warning was meant to refute the notion that [Defendant] could satisfy his burden of production by merely denying that

4

- Plaintiff explained that he struck Potential Juror 14 because he works for an insurance company that deals with law enforcement agencies. Plaintiff expressed concern that this professional connection would make this potential juror more sympathetic to Officer Grubbs.

- Plaintiff explained that he struck Potential Juror 19 for several reasons. First, because this potential juror had stated that he is a Rotary Club member and self-employed, Plaintiff believed that he would be a difficult juror regarding damages. Plaintiff stated that this potential juror's general demeanor supported Plaintiff's conclusion. Moreover, Plaintiff identified Potential Juror's 19 statements that he knows local law enforcement officers and sometimes has lunch with the Forsyth County Sheriff as reasons to strike him.

- Plaintiff explained that he struck Potential Juror 9 because she is employed as a Director of Operations. It was Plaintiff's position that she has a strong personality and that people who are in similar career roles often try to exert control. As such, Plaintiff was concerned that this potential juror would unduly attempt to control other jurors.

- Plaintiff explained that he struck Potential Juror 11, who is employed as a Vice President of Operations, for the same reasons he struck Potential Juror 9 (i.e., strong and controlling personality). Further, Plaintiff noted that this potential juror had expressed misgivings regarding panhandlers. Plaintiff also cited this potential juror's involvement in a church as a source of concern for Plaintiff.

- Plaintiff explained that he struck Potential Juror 2 because he is an engineer, and Plaintiff was concerned that he too would have a strict

he had a discriminatory motive or by merely affirming his good faith. What it means by a 'legitimate reason' is not a reason that makes sense, but a reason that does not deny equal protection." Id. at 768–69 (cleaned up); see also Walker, 490 F.3d at 1293 ("Under Batson, almost any plausible reason can satisfy the striking party's burden, as long as the reason is race or gender neutral. Courts have upheld reasons deemed to be superstitious, silly, or trivial, as long as they are race or gender-neutral.").

and controlling personality. Plaintiff also expressed concern that this potential juror would be critical of jobless people and thus may view Mr. Blasingame negatively.

- Plaintiff explained that he struck Potential Juror 12 because he is sole custodian of his child and because he has several international work trips planned in the coming weeks, including a week during trial. Plaintiff expressed concern that these matters would distract this potential juror from the trial.

Once Plaintiff offered race-neutral explanations for striking these potential jurors, the Court moved to the third step of the Batson test by looking at all the circumstances to determine the merit of Plaintiff's race-neutral explanations and whether Defendants carried their burden to prove improper discrimination. See United States v. Ochoa-Vasquez, 428 F.3d 1015, 1038–39 (11th Cir. 2005); see also Purkett v. Elem, 514 U.S. 765, 768 (1995) (stating that the trial court determines at the third step whether the explanations for striking the potential jurors were persuasive and whether the opponent of the strike carried his burden of proving purposeful discrimination). At that stage, the Court had to determine whether Defendants carried their burden in proving purposeful discrimination, which required an assessment of the credibility of Plaintiff's race-neutral explanations. United States v. Thomas, 315 F. App'x 828, 834 (11th Cir. 2009).

6

As part of the third step of the Batson analysis, the Court gave Defendants the opportunity to respond to Plaintiff's explanations. Defendants reiterated that Plaintiff—who is representing the interests of a Black man—struck only white venire members. Defendants also argued that Plaintiff should not have wanted to strike the engineer, who Defendants did not view to be potentially adversarial to Plaintiff.

Having observed the venire members and listened to their answers during voir dire, the Court was satisfied with the race-neutral explanations Plaintiff gave. Further, having observed Plaintiff's counsel when he explained the race-neutral reasons for striking these venire members, the Court was satisfied that he was giving honest answers. Walker, 490 F.3d 1282, 1294 (11th Cir. 2007) ("The trial judge is in the best position to evaluate an attorney's candor and ferret out purposeful discrimination."). While weighing these considerations, the Court also accounted for the fact that the jury of eight selected as a result of the peremptory strikes consisted of three Black individuals, another minority individual, and four white individuals. See United States v. Lovett, No. CR414-143, 2015 WL 417600, at *6 (S.D. Ga. Jan. 30, 2015) (considering the racial makeup of the selected jury). The Court was convinced that under the circumstances,

7

Plaintiff's stated reasons for striking the venire members were not pretextual justification for purposeful discrimination.

For the foregoing reasons, and after having conducted the above-stated sensitive inquiry, evaluation, and comparisons, the Court found that Defendants did not meet their burden to prove purposeful discrimination in Plaintiff's peremptory strikes. Accordingly, the Court **OVERRULED** Defendants' Batson challenge/objection to Plaintiff's use of his peremptory strikes.

IT IS SO ORDERED this __18th__ day of August, 2022.

_____
**HONORABLE STEVE C. JONES**
**UNITED STATES DISTRICT JUDGE**