UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| KEITH EDWARDS as Guardian and Conservator Jerry Blasingame, | ) ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) |
| OFFICER J. GRUBBS, #6416, and CITY OF ATLANTA, | ) ) ) |
| Defendants. | ) |

CIVIL ACTION FILE NO.
1:19-CV-2047-SCJ

## DEFENDANT CITY OF ATLANTA'S MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 50 AND BRIEF IN SUPPORT

COMES NOW Defendant City of Atlanta hereinafter referred to as ("Defendant"), pursuant to Fed. R. Civ. Pro. 50, and files this, its Motion for Judgment as a Matter of Law and Brief in Support, and shows this Court the following:

### STATEMENT OF FACTS

On July 10, 2018, City of Atlanta Police Department ("APD") Officers Grubbs and Keith Shelley observed Plaintiff on Interstate 20 East, an interstate highway, at or near the Windsor Street exit. At the time, both officers were on duty

1

and patrolling in the City of Atlanta. Plaintiff was believed, by the officers, of panhandling. Defendant Grubbs attempted to arrest Plaintiff. Plaintiff ran and Defendant Grubbs pursued Plaintiff on foot. Eventually, Defendant Grubbs was able to get close to Plaintiff. Plaintiff, however, attempted to evade Defendant Grubbs further by using a backward swinging motion toward Defendant Grubbs. Defendant Grubbs then deployed his conducted Conducted Electrical Weapon ("Taser") and fired the Taser's two darts into Plaintiff's back. Plaintiff fell down a slight incline that was hidden from Defendant Grubbs' view and into a large power box sitting on a cement foundation. Plaintiff was severely injured. Defendant Grubbs and Shelley called for medical assistance and Plaintiff was taken to Grady by ambulance. Plaintiff was eventually arrested and charged with violating O.C.G.A. § 17-4-46 (Willful Obstruction of Law Enforcement Officers) and 40-6-97 (Pedestrian Soliciting Rides/Business).

## City of Atlanta Police Department Policies and Procedures

The policies, procedures and customs promulgated by the APD were specifically designed to promote the public welfare and safety by managing and training its police officers. As demonstrated by the testimony and evidence, it has been the policy of APD to provide its officers with a training program that includes certification of current skills, improving and updating of skills, development of new skills and awareness of new techniques that are consistent

with state standards. The APD requires all officers to complete a Georgia Peace Officer's Standards and Training Council ("P.O.S.T.") mandate training and to receive P.O.S.T. certification. When Defendant Grubbs was hired and began his training at APD's Academy, the mandate training courses included the following: Georgia criminal law and criminal procedure; peace officer liability; firearms; and use of force, which included lessons on restraint and how to use the appropriate level of force when conducting an arrest. APD requires all officers to complete at least forty (40) hours of in-service training annually, twice the number of hours required to maintain P.O.S.T. certification.

Per the testimony of Officers Banja and Kramer, APD has been Council for Accreditation of Law Enforcement ("CALEA") accredited for several years- which means the APD's officers are required to have ongoing, mandatory use of force training. APD also follows up with officer training by conducting audits and in-service training throughout the year. The audits track officer training to determine what training they have had and what training they need. These audit records are maintained by APD's Academy.

**<u>Grubbs' Training:</u>**

The following is a list of classes and associated dates in which Grubbs participated and completed training. (Defendants' Trial Ex. "1"). The list goes through 2019.

## 2014:

| | |
|---|---|
| Security and Integrity of CHRI | Dec. 1, 2014 |
| Basic Law Enforcement Training Course | Dec. 11, 2014 |
| Extended Basic (Atlanta PD) | Dec. 11, 2014 |

## 2015:

| | |
|---|---|
| Atlanta Annual Inservice Training | Aug. 10, 2015 |
| CJIS Network Operator Training | Aug. 11, 2015 |
| Security and Integrity of CHRI | Aug. 11, 2015 |
| Defensive Tactics | Aug. 11, 2015 |
| Leadership | Aug. 12, 2015 |
| Firearms Requal & Use of Deadly Force | Sept. 14, 2015 |
| Overview of Post Council | Oct. 14, 2015 |

## 2016:

| | |
|---|---|
| Atlanta Annual Inservice Training | March 23, 2016 |
| Taser Recertification | March 23, 2016 |
| Active Shooter Response | March 24, 2016 |
| Officer Survival | March 24, 2016 |
| Firearms Requal & Use of Deadly Force | Aug. 15, 2016 |

## 2017:

| | |
|---|---|
| Community Policing | June 12, 2017 |
| Atlanta Annual Inservice Training | June 12, 2017 |
| Officer Survival | June 13, 2017 |
| Taser Recertification | June 13, 2017 |
| Body Camera | July 12, 2017 |
| Firearms Requal & Use of Deadly Force | Aug. 31, 2017 |
| Back-Up Weapon Qualification | Sept. 1, 2017 |
| Tactical Team Operations | Oct. 17, 2017 |
| Narcan | Nov. 14, 2017 |
| Use of Force & De-Escalation Options for Gaining Compliance | Nov. 16, 2017 |
| Suspicious Activity Reporting | Dec. 6, 2017 |

**2018:**

| | |
|---|---|
| Human Trafficking | Jan. 20, 2018 |
| De-Escalation Techniques | March 30, 2018 |
| Firearms Training (Not Requalification) | March 30, 2018 |
| Community Policing | April 25, 2018 |
| Atlanta Annual Inservice Training | April 25, 2018 |
| Taser Recertification | April 25, 2018 |
| Officer Survival | April 26, 2018 |
| Field Investigations | May 25, 2018 |
| Intro to Terrorism (GPSTC Online) | Aug. 15, 2018 |
| Firearms Requal & Use of Deadly Force | Sept. 5, 2018 |
| Legal Update | Sept. 17, 2018 |
| Eyewitness Identification (GPSTC Online) | Oct. 2, 2018 |
| Law Enforcement & Animal Encounters (GPSTC Online) | Oct. 3, 2018 |
| Vehicle Pullovers (GPSTC Online) | Oct. 9, 2018 |
| Due Regard (GPSTC Online) | Oct. 22, 2018 |
| Family Violence | Oct. 29, 2018 |
| Introduction to Human Trafficking (Atlanta PD Academy) | Dec. 5, 2018 |

**2019:**

| | |
|---|---|
| De-Escalation Options for Gaining Compliance | Feb. 19, 2019 |
| Use of Force | Feb. 20, 2019 |
| Cultural Awareness | March 3, 2019 |
| Atlanta Annual Inservice Training | March 6, 2019 |
| Taser Recertification | March 6, 2019 |
| Firearms Training (Not Requalification) | March 18, 2019 |
| Ambush Survival Tactics | March 26, 2019 |
| Firearms Requal & Use of Deadly Force | Aug. 29, 2019 |
| Back-Up Weapon Qualification | Dec. 5, 2019 |

## **CLAIMS ALLEGED BY PLAINTIFF**

Plaintiff alleges a violation of the Fourth and Fourteenth Amendments of the United States Constitution based on Grubbs' alleged unreasonable use of force with a Taser that proximately caused Plaintiff to fall

5

and injure himself. (Plt's Amended Compl. ¶¶ 34-37). Plaintiff also contends that APD was the moving force behind Grubbs' use of excessive force because of its practices, customs and polices. (Plt's Amended Compl. ¶ 38). Lastly, Plaintiff alleges that APD's "failure to train" Grubbs can be construed as deliberate indifference. (Plt's Amended Compl. ¶ 8).Even when viewing the evidence in the light most favorable to Plaintiff, Defendants' Motion must prevail. Plaintiff cannot prove every essential element of any claim. Therefore, Defendants' Motion should be granted as a matter of law.

## **STANDARD OF REVIEW**

Rule 50 of the Federal Rules of Civil Procedure, based on the facts established at trial, entitles Defendant City of Atlanta to judgment as a matter of law. Rule 50 states in relevant part:

> (a) **Judgment as a Matter of Law**.
> (1) *In General*. If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
> (A) Resolve the issue against the party; and
> (B) Grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.
> (2) *Motion*. A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury. The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment.

# ARGUMENT AND CITATION OF AUTHORITY

### I. Plaintiff Cannot Prove Sufficient Facts To Establish A Claim Against City of Atlanta For Defective Customs, Training, And Policies As To The Use Of Force And the Use Of Conducted Electrical Weapons ("Taser").

To impose section 1983 liability on a municipality, Plaintiff must show that: (1) a constitutional right was violated; (2) the municipality had a custom, practice, or policy that constituted **deliberate indifference** to that constitutional right; and (3) the municipality's custom, practice or policy caused the violation. City of Canton v. Harris, 489 U.S. 378, 388 (1989); Perez v. Miami-Dade County, 168 F. App'x 338, 340 (11th Cir. 2006). (Emphasis added). Plaintiff's evidence at trial is insufficient to meet his burden under the standard articulated in City of Canton. A policy is defined as "a decision that is officially adopted by the municipality, or created by an official of such rank that his or she could be said to be acting on behalf of the municipality. Sewell v. Town of Lake Hamilton, 117 F.3d 488, 489 (11th Cir. 1997). While a custom "is a practice that is so settled and permanent that it takes on the force of law." Perez at 168 F. App'x at 340.

Plaintiff appears to claim that his injury resulted from the City's inadequate or defective training of its police officers in the use of Tasers and/or use of force. See, Plt's Amended Compl. (Doc. 52, ¶ 8). Notwithstanding Plaintiff's allegations, his case still fails because he cannot show that a policy or custom existed that caused the alleged deprivation. APD's 'practice, custom or policy"

is to fully train its officers.

Although the Supreme Court has held that local government entities are "persons" within the scope of Section 1983 and are subject to liability, Plaintiff cannot rely upon the theory of *respondeat superior* to hold local government liable. See, <u>Monell v. Dep't of Soc. Servs. of NY</u>, 436 U.S. 658, 692 (1978). "Congress did not intend [for] municipalities to be held liable unless deliberate action attributable to the municipality directly caused a deprivation of federal rights". <u>Board of County Com'rs v.Brown</u>, 520 U.S. 397, 415 (1997). In fact, rarely will an allegation of failure to train or supervise be the basis for liability under section 1983. <u>Gold v. City of Miami</u>, 151 F.3d 1346, 1350 (11th Cir. 1998). It is well-settled that a governmental entity is not liable, as a matter of law, for a failure to train or supervise where there is no **notice** of a need. (emphasis added). <u>Id</u>. at 1351; See <u>Wright v. Sheppard</u>, 919 F.2d 665 (11th Cir. 1990). Additionally, where the claim is based on a defendant's failure to act or "deliberate indifference," a plaintiff must show "a background of events and circumstances" which demonstrates that the complained of policy, practice, or custom is tantamount to an affirmative decision by the municipality to violate the constitution. <u>City of Canton</u>, 489 U.S. at 385. Thus, "it is only when the execution of the government's policy or custom … inflicts the injury that the municipality may be held liable." <u>Id</u>. Furthermore, the deliberate indifference

must exhibit a need that is so obvious so as to imply the municipality's lack of concern for violations of constitutional rights. Gold, 151 F.3d at 1352. This ensures that a municipality is held liable under Section 1983 only for those deprivations resulting from the deliberate legislative decisions and demonstrated practices of the municipality, and not for an isolated incident. McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004).

In the case at bar, Plaintiff's evidence at trial is devoid of any relevant custom, practice or policy which caused his injury. Even if Officer Grubbs used excessive force (which Defendants absolutely deny), Plaintiff has presented no evidence that the City of Atlanta was on notice of any need to better train police officers as to Taser and failed to do so prior to this incident. There is a complete absence in the record that shows that City of Atlanta was aware of any prior incidents, similar to the incident of July 10, 2018.

Going further, Dr. Scott's, Plaintiff's expert, testimony stated only conclusions. The testimony did not show any policy, practice or custom (of any similar incidents) that would have put the City of Atlanta on notice that even more training was needed on the Taser.

### i. **Failure To Train**

Any allegation made by Plaintiff of failure to train must fail. Again, this Court previously dismissed Plaintiff's respondeat superior claim relating to "torts

9

committed by employees". (Doc. 84). Plaintiff specifically alleges that City of Atlanta failed to train its police officers on how to handle Tasers. In the <u>Riley v. Newton</u>, 94 F. 3d 632, 638 (11th Cir. 1996) the Court held:

> …a section 1983 claim for inadequate training exists "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." <u>Canton</u>, 489 U.S. at 388, 109 S.Ct. at 1204. The failure to train must reflect a "deliberate" or "conscious" choice and the deficiency "must be closely related to the ultimate injury." <u>Id.</u>at 389, 391, 109 S.Ct. at 1205, 1206. Failure to train only becomes "deliberate" where "in light of theduties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policy makers of the city can reasonably be said to have been deliberately indifferent to the need." <u>Id.</u> at 390, 109 S.Ct. at 1205. <u>See Also</u> <u>Belcher v. City of Foley, Alabama</u>, 30 F. 3d 1390, 1397-98 (11th Cir. 1994).

Supervisory liability must be proven by something more than an allegation that on a <u>singular</u> occasion officers did not properly apply their training. <u>See</u> <u>West v. Tillman</u>, 496 F.3d 1321, 1330-1331 (11th Cir. 2007)(citing <u>Pineda v. City of Houston</u>, 291 F.3d 325, 333 (5th Cir.)). In fact, rarely will an allegation of failure to train or supervise be the basis for liability under § 1983. <u>Gold v. City of Miami</u>, 151 F.3d at 1346, 1350. Again, it is well-settled that a governmental entity (and its officials) is not liable, as a matter of law, for a failure to train or supervise where there is no notice of a need. <u>Id</u>. at 1351; <u>See</u> <u>Wright v. Sheppard</u>, 919 F.2d 665 (11th Cir. 1990).

Additionally, where the claim is based on the defendant's failure to act or "deliberate indifference", a plaintiff must show "a background of events and circumstances" which demonstrates that the complained of policy or custom is tantamount to an affirmative decision by the [public official] to violate the constitution. City of Canton, 489 U.S. at 385.

Plaintiff has made no such showing of a constitutional violation. Plaintiff's questioning of APD's training officers actually demonstrated the significant amount of training all officers receive regarding use of force and, specifically, the Taser. With all of this evidence as a backdrop, Plaintiff's use of force expert's (Dr. Scott) unsupported opinions do not overcome this burden.

### ii. Custom, Practice and/or Pattern

Although Plaintiff fails to prove that City of Atlanta was either aware, or reasonably should have been aware of the existence of a pattern and practice of police officers wrongly using Tasers, this argument will be addressed out of an abundance of caution. Plaintiff has proven no allegation that a pattern of abuse existed. Further, the record is completely void of evidence tending to support any conclusion that City of Atlanta reasonably should have been on notice of such a pattern. To constitute sufficient notice, the past widespread abuses "must be obvious, flagrant, rampant, and of continued duration, rather than isolated occurrences." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999).

Here, the evidence fails to demonstrate that City of Atlanta was placed on notice or had any knowledge of any such alleged widespread flagrant abuses arising out of Defendant Grubbs' pursuit of Plaintiff and use of his Taser (or, for that matter, body worn cameras). Thus, Plaintiff cannot make the requisite showing.

Municipal liability may be established by negligent hiring. <u>Bd. Of County Comm'rs v. Brown</u>, 520 U.S. 397, 415-216 (1997). There is no evidence that Grubbs' was prone to using excessive force with a Taser prior to and after being hired by Defendant APD.

## II. **Plaintiff Is Not Entitled To Punitive Damages As To City of Atlanta Because Plaintiff Has Failed To Show Bad-Faith Actions By City of Atlanta.**

In Plaintiff's Amended Complaint (Doc. 52, at 8), Plaintiff requests punitive damages against Defendant. As a general rule, municipal governments such as City of Atlanta, are immune from claims of punitive damages actions under §1983 forthe alleged bad-faith actions of government officials. <u>City of Newport v. Fact Concerts, Inc.</u>, 453 U.S. 247, 271 (1981); see also <u>Young Apartments, Inc. v. Town of Jupiter</u>, 529 F. 3d 1047 (11th Cir. 2008) (citing <u>Newport</u> and finding that "[i]n a §1983 action, punitive damages are only available from government officials when they are sued in their individual capacities.").

Furthermore, Georgia's general policy is to shield municipalities from claims for punitive damages. See e.g. Scott v. Brown, 2007 WL 528081, at 2 (N.D. Ga., Feb 9, 2007); McGee v. Barrett, 2006 WL 256918, at 9 (N.D. Ga. Aug 31, 2006)(quoting Newport in finding that a plaintiff could not recover punitive damages from APD because "a municipality is immune from punitive damages under 42 U.S.C. § 1983.").

The awarding of punitive damages against a municipality is against public policy and impermissible as a matter of law. See Newport, 453 U.S. at 271; see also MARTA v. Boswell, 261 Ga.427, 428 (1991). Accordingly, City of Atlanta is entitled to dismissal of the punitive damages claims as a matter of law.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this Court grant its Motion for Judgment as a Matter of Law.

Respectfully submitted, this 24th day of August, 2022.

.

Respectfully submitted,

*/s/ Staci J. Miller*
Staci J. Miller
Georgia Bar No.: 601594

City of Atlanta Law Department
55 Trinity Avenue, Suite 5000
Atlanta, GA 30303
404.546.4100
sjmiller@atlantaga.gov

| | |
|---|---|
| | **/s/ James E. Dearing, Jr.** |
| | James E. Dearing, Jr. |
| 1596 W. Cleveland Avenue, Suite 102 | Georgia Bar. No.: 215090 |
| East Point, GA 30344 | *Attorney for Defendants* |
| 404.870.0010 / tele | |
| jdearing@jed-law.com | |

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **KEITH EDWARDS as Guardian and Conservator Jerry Blasingame,** ) ) ) ) **Plaintiff,** ) ) **v.** ) ) ) **OFFICER J. GRUBBS, #6416, and CITY OF ATLANTA,** ) ) ) **Defendants.** ) | **CIVIL ACTION FILE NO. 1:19-CV-2047-SCJ** |

**CERTIFICATE OF SERVICE**

This is to certify that I have this day served a copy of the foregoing **DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW** upon Counsel below via Statutory Electronic Service, properly addressed as follows:

Ven R. Johnson
Ayanna Hatchett
Johnson Law, PLLC
535 Griswold Street, Suite 2600
Detroit, MI 48226
vrjohnson@venjohnsonslaw.com
ahatchett@venjohnsonlaw.com

Darren Tobin
Tobin Injury Law
49B Lenox Point NE
Atlanta, GA 30324
darren@tobininjurylaw.com

This 24th day of August, 2022.

Respectfully submitted,
***/s/ Staci J. Miller***
Staci J. Miller
Georgia Bar No.: 601594

City of Atlanta Law Department
55 Trinity Avenue, Suite 5000
Atlanta, GA 30303
404.546.4100
sjmiller@atlantaga.gov

***/s/ James E. Dearing, Jr.***
James E. Dearing, Jr.
1596 W. Cleveland Avenue, Suite 102   Georgia Bar. No.: 215090
East Point, GA 30344   *Attorney for Defendants*
404.870.0010 / tele
jdearing@jed-law.com