UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA GEORGIA

KEITH EDWARDS as Guardian and
Conservator for JERRY BLASINGAME,

    Plaintiff,

v.

OFFICER J. GRUBBS, #6416,
 and CITY OF ATLANTA/
ATLANTA POLICE DEPARTMENT

    Defendants.

Case No. 1:19-cv-2047-SCJ

---

**PLAINTIFF'S RESPONSE TO DEFENDANT GRUBBS' MOTION FOR DIRECTED MOTION REGARDING THE USE OF EXCESSIVE FORCE & QUALIFIED IMMUNITY**

---

NOW COMES Plaintiff, Keith Edwards as Guardian and Conservator for Jerry Blasingame, by and through his counsel, Johnson Law, PLC, and files this Response to Defendant Grubbs' Motion for Directed Verdict. When considering the testimony and evidence presented at trial in the context of binding precedent from the United States Court of Appeals for the 11th Circuit, Defendant Officer Grubbs' ("Grubbs") use of force against Jerry Blasingame must be viewed as deadly and as a violation of a clearly established right.

1

## STATEMENT OF FACTS

On July 10, 2018, Mr. Blasingame was critically injured when Grubbs violated Mr. Blasingame's Fourth Amendment right to be free from excessive force. Grubbs pursued Mr. Blasingame on foot and used his taser to stop Mr. Blasingame from running away and purportedly into traffic, while Mr. Blasingame began to descend one of many steep hills along the shoulder of I-20. When the probes from Grubbs' taser made contact, Mr. Blasingame's body instantly dropped down the hill, with nothing to break his fall other than his head and a utility box. The utility box was platformed in concrete at the bottom of the hill.

In trial Grubbs' and his then partner Officer Keith Shelly ("Shelley") agreed that Mr. Blasingame was only seen along the shoulder, not crossing the roadway. They were in the area to investigate panhandling. Grubbs stated that when he first saw Mr. Blasingame, he only wanted to interview him, not arrest him. In fact, as he was being pursued, Grubbs admitted that Mr. Blasingame never said anything, nor did he act in a manner that caused him to feel threatened or fearful for his or anyone else's safety. He also never saw Mr. Blasingame with a weapon. Grubbs and Shelley stated that they couldn't tell whether Mr. Blasingame intended to cross the ramp at the bottom of the hill or not.

Though Grubbs claimed in trial that he shouted out "stop" while he chased Mr. Blasingame, no such announcement was captured on his body worn camera (BWC), taser camera, or even witnessed by his partner Shelley. Since Grubbs turned his BWC off while it was in buffering mode nothing leading up to the tasing or the tasing itself for that matter was was captured.  However, Grubbs doesn't dispute that he failed to warn Mr. Blasingame before deploying the probes into Mr. Blasingame's back.

Furthermore, if we accept the City's position that Grubbs did receive routine annual training on how to use his taser, then Grubbs would have known that in using his taser under the circumstances established in this case, he was using deadly force. "Environmental factors which could lead to serious injury or death" are discussed in the City of Atlanta's CEW (or taser) policies (Plaintiff's exhibit number 27, ADP.SOP.3042, 4.2.3) as well as throughout the materials (used by the City of Atlanta to train its officers (Plaintiff's exhibit number 37, Taser Annual CEW User Update). The first circumstance listed under the heading of "Increased Injury Risk Examples" on page 29 of Plaintiff's exhibit number 37 is "**Elevated position**." [emphasis added] Likewise, Officer Michael Banja confirmed that the section excerpted below is included in his CEW (or "taser") officer training:

### INJURIES FROM FALLS

- CEWs frequently cause subject to fall

- Falls are often uncontrolled

- Falls, even from ground level, can cause serious injuries or death (especially on hard surfaces)
- Always consider environment subject is standing on

- Consider if you would be justified in tackling or intentionally grounding

(Plaintiff's Exhibit No. 37, pg. 28)

Grubbs testified that he knew Mr. Blasingame was standing on a downward path when he decided to deploy his taser, while also acknowledging that he couldn't see the bottom of the path.

### STANDARD OF REVIEW

"Under Rule 50, a court should render judgment as a matter of law when there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." *Cleveland v. Home Shopping Network, Inc.,* 369 F.3d 1189, 1192 (11th Cir. 2004). In reviewing a motion for judgment as a matter of law, "all evidence and inferences in the light most favorable to the non-moving party to determine whether the evidence presented is so one-sided that reasonable people could not arrive at a contrary verdict." *Id*.

> If the facts and inferences are so strong and overwhelmingly in favor of one party that the court believes that reasonable persons could not arrive at a contrary verdict, the grant of a directed verdict is proper. If, however, substantial evidence is presented opposed to the motion, and

4

this evidence is of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions, the motion must be denied. [*Walker v. NationsBank N.A.*, 53 F.3d 1548, 1555 (11th Cir. 1995) (internal citations omitted).]

## ARGUMENT

Plaintiff's complaint, in part, sets forth a claim of excessive force against Defendant Grubbs. The right to be free from excessive force is guaranteed by the Fourth Amendment's protections against unreasonable seizures. *See* U.S. Const. amend. IV; *see also Graham v. Connor*, 490 U.S. 386, 393-94 (1989). The Supreme Court in *Tennessee v. Garner* established that a police officer's use of deadly force is a "seizure" within the meaning of the Fourth Amendment and that claims alleging the use of such force are evaluated under the Fourth Amendment's reasonableness standard. *Tennessee v. Garner*, 471 U.S. 1, 7 (1985). Under that standard, "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them[.]" *Graham*, 490 U.S. at 397.

Determining whether the use of force is reasonable requires a careful balancing of "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Garner*, 471 U.S. at 8. The Supreme Court instructed that courts should weigh "the severity of the crime at issue, whether the suspect pose[d] an immediate threat to the

safety of the officers or others, and whether he [was] actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396 (citing *Garner*, 471 U.S. at 8-9). As the 11th Circuit has recently explained in an opinion that will be discussed extensively below,

> When an officer uses deadly force, we must also consider whether the officer (1) has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others' or 'that he has committed a crime involving the infliction or threatened infliction of serious physical harm; (2) reasonably believes that the use of deadly force was necessary to prevent escape; and (3) has given some warning about the possible use of deadly force, if feasible. [*Bradley v Benton*, 10 F.4th 1232, 1240-1241 (2021) (internal quotations and citations omitted).]

Here, a binding opinion issued by the 11th Circuit within the last year determines whether the use of force in this case was permissible. In *Bradley*, the Plaintiff was a passenger in a vehicle that was pulled over in a traffic stop. After interacting with the driver of the vehicle, the officers turned their attention to the Plaintiff. When the Defendant officer asked a different officer at the scene to run the Plaintiff's name through the department's system, the Plaintiff exited the vehicle and fled on foot. He ultimately found himself situated atop of a concrete wall that was roughly eight feet tall. *Id*. at 1236. Evidence indicated that the Defendant deployed his taser and struck the Plaintiff while he was atop the wall, causing the Plaintiff to fall. *Id*. at 1240. Upon falling, Plaintiff suffered blunt force trauma to his head and neck, dying as a result. *Id*. at 1236.

6

In concluding that the Defendant was not entitled to qualified immunity relative to the Plaintiff's claim for excessive force under the 4th Amendment, the 11th Circuit explained that while a taser is *generally* not classified as a deadly weapon, it may nonetheless be applied in a way that results in deadly force. *Id*. at 1241. The *Bradley* Court thus clarified that "As relevant here, we join many other courts that have recognized that tasing a person who is at an elevated height may come with a substantial risk of serious bodily harm or death." *Id*.

After acknowledging that tasing someone who is at an elevated height can be properly classified as lethal force (and is so classified in many other courts), the Court determined that the Defendant's "decision to use this level of force was not reasonable under these circumstances." Note, the Court did not state that a reasonable jury could *perhaps* conclude that the use of force was not reasonable. Rather, it appears the Court determined that the *only* permissible conclusion was that the use of force was unreasonable. The same is true here, and for the same reasons as in *Bradley*.

The *Bradley* Court specified that the use of force was unreasonable "for three reasons." *Id*. at 1241. First, where the Plaintiff was unarmed, never made any threatening gesture and never demonstrated that he posed any danger at all, the Court found that the Defendant "lacked probable cause to believe that Robinson posed a threat of serious physical harm to anyone." *Id*. at 1241-1242. Here, Plaintiff

likewise was unarmed, likewise never threated anybody and likewise never posed any danger at all.

Second, the *Bradley* Court noted that the Defendant did not have probable cause to conclude that the Plaintiff had committed a crime that involved either actual or threatened serious physical harm. Again, the same is true here. Plaintiff had not committed, or threatened to commit, *any* crime of violence, let alone an act that would cause the serious physical violence that would justify the use of deadly force.

Third, the *Bradley* Court found that the Defendant officer fired his taser at the Plaintiff without giving a warning, despite having the opportunity to do so. *Id*. at 1242. Again, the present case is no different. Plaintiff was never warned that he was going to be subjected to any force at all, let alone lethal force. Grubbs admitted in trial that he never warned Mr. Blasingame before he fired his taser.

As is demonstrated by the binding case law cited above, using a taser on someone while they are at an elevated height amounts to deadly force. Where an officer uses that particular type of deadly force 1.) without probable cause that the target poses a threat of serious physical harm to another, 2.) without probable cause that the target had already committed a crime involving either actual or threated serious physical harm and 3.) without giving the target warning before using force, the 11th Circuit has established that no reasonable finder of fact could conclude that the use or fore was constitutionally permissible.

After concluding that the use of force at issue was per se unreasonable and unconstitutional, the Court addressed whether that right was clearly-established at the time of the underlying use of force. While the 11th Circuit noted that litigants generally need to establish the constitutional right at issue with a sufficient level of specificity to avoid an application of qualified immunity, it held that the Plaintiff in *Bradley* had no difficulty making that showing. The Court stated that

> *Garner* clearly established that an officer cannot use deadly force to stop an unarmed man who is not suspected of committing a violent crime from fleeing on foot. That is precisely what happened in *Garner* and that is precisely what happened in this case. Accordingly, *Garner* put Officer Benton on notice that he could not use deadly force to stop Robinson from running away on foot.

Just as what the Defendant officer did in *Bradley* was precisely covered by the seminal decision in *Garner*, so too was Defendant Grubbs's conduct in the present case. Mr. Blasingame was an unarmed man, suspected of no violent crime who was the target of deadly force merely because of his decision to flee on foot. To the extent that Defendant Grubbs wishes to argue that he had no awareness that the taser could be deadly in these circumstances, his only way to do so is to deny the extensive training he allegedly received regarding his use of taser. That training is a basis of Defendant's other motion for directed verdict regarding Plaintiff's municipal liability claim. Thus, the City is asking this Court to simultaneously conclude that Grubbs was well-trained on how to safely and constitutionally use his taser but that Grubbs had no awareness that he was using his taser in a deadly manner

despite his training to the contrary about environmental considerations.

Not only did the *Bradley* Court establish that the conduct in this case is directly covered by the *Garner* holding, but it also establishes that the use of force was so obviously unconstitutional that Grubbs would have been aware of that fact regardless of an analogous decision. Consider the below passage:

> Second, we would conclude that the use of force here was obviously unconstitutional even absent a case directly on point. Robinson posed no immediate threat to Officer Benton. He never tried to harm any of the officers, nor did he make any threatening movements or gestures. The officers also had no reason to think he posed a threat to anyone in the apartment complex, which he had just left. He was not suspected of committing a crime involving the infliction of serious physical harm. He was not even the suspect of the traffic stop, which was conducted on the suspicion that Sims was driving with an illegal tag. Yet, without any warning, Officer Benton applied deadly force to prevent Robinson's escape from the traffic stop on foot. We conclude that no reasonable officer could have believed that the application of deadly force was warranted under these circumstances.

Again, all of that is equally true here, particularly when one applies the directed verdict standard and takes the evidence in the light most favorable to Plaintiff.

Further, Plaintiff notes that while this Court expressed concern regarding the 6th Circuit's decision in *Cockrell v City of Cincinnati*, 468 Fed. App'x 491 (2012), that decision cannot form the basis of granting the city directed verdict on this point. First, not only is *Cockrell* unpublished and thus not binding, it is also outside of the 11th circuit and just mere persuasive authority. *Gallardo v Dudek*, 963 F.3d 1167 (2020). *Bradley*, in contrast, is a published opinion from the 11th circuit that is

binding on this Court. Where there is published authority from this Circuit on the point in dispute, there is no value to mere persuasive authority.

WHEREFORE, Plaintiff respectfully requests this Court deny Defendants' motion.

                                          Respectfully Submitted,

                                          **JOHNSON LAW, PLC**

Dated: August 25, 2022      By: */s/ Vernon R. Johnson*
                                              VERNON (VEN) R. JOHNSON
                                              (MI Bar P39219)
                                              AYANNA D. HATCHETT
                                              (MI Bar 70055)
                                              Attorneys for Plaintiff
                                              535 Griswold, Suite 2600
                                              Detroit, MI 48226
                                              (313) 324.8300
                                              vjohnson@venjohnsonlaw.com
                                              ahatchett@venjohnsonlaw.com

                                              TOBIN INJURY LAW

                                      By: */s/  Darren M. Tobin*
                                              DARREN M. TOBIN
                                              Attorney for Plaintiff
                                              49B Lenox Pointe
                                              Atlanta, GA 30324
                                              (404) 587.8423
                                              darren@tobininjury.com

## CERTIFICATE OF SERVICE

Undersigned hereby states that on August 25, 2022, she caused the foregoing document to be filed electronically with the United States District Court and that a copy of said document was sent to all parties having appeared in this matter, through their counsel of record, via the Court's CM/ECF electronic filing system.

*/s/   Liza Dodson*
LIZA DODSON

Case 1:19-cv-02047-SCJ   Document 152   Filed 08/25/22   Page 12 of 12