1624

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

KEITH EDWARDS, AS GUARDIAN AND )
CONSERVATOR FOR JERRY          )
BLASINGAME,                    )
                  PLAINTIFF,   )
                               ) DOCKET NO. 1:19-CV-02047-SCJ
      -VS-                      ) VOLUME 8
                               )
OFFICER J. GRUBBS AND THE CITY )
OF ATLANTA,                    )
                  DEFENDANTS.  )
_____

TRANSCRIPT OF JURY TRIAL
BEFORE THE HONORABLE STEVE C. JONES
UNITED STATES DISTRICT JUDGE
FRIDAY, AUGUST 26, 2022

APPEARANCES:

ON BEHALF OF THE PLAINTIFF:

  VERNON R. JOHNSON, ESQ.
  DARREN MICHAEL TOBIN, ESQ.
  AYANNA D. HATCHETT, ESQ.

ON BEHALF OF THE DEFENDANTS:

  STACI J. MILLER  ESQ.
  JAMES E. DEARING, JR.
  HERMISE PIERRE, ESQ.

VIOLA S. ZBOROWSKI, RDR, FAPR, CMR, CRR, RPR, CRC
OFFICIAL COURT REPORTER TO THE HONORABLE STEVE C. JONES
UNITED STATES DISTRICT COURT
ATLANTA, GEORGIA
404-215-1479
VIOLA_ZBOROWSKI@GAND.USCOURTS.GOV

1625

I N D E X

|         | PAGE |
| ------- | ---- |
| VERDICT | 1627 |

UNITED STATES DISTRICT COURT OFFICIAL CERTIFIED TRANSCRIPT

(HELD IN OPEN COURT AT 12:17 P.M.)

THE COURT:  Ladies and gentlemen, the jury has indicated they want to go downstairs, get their lunch, and bring it back upstairs and continue to deliberate in the jury room.

So, basically, I'm just going to tell them while they go to eat lunch, don't talk about the case.  And when all eight of you get back in the jury room, they can start talking about the case again.

Bring them out.

MR. JOHNSON:  Thank you, Judge.

(Whereupon, the jury is seated at 12:20 p.m.)

THE COURT:  You-all can be seated.

Ms. Evans, I understand you want to go downstairs and get your lunch and come back in the jury room and then continue to deliberate.

THE FOREPERSON:  Yes, Your Honor.

THE COURT:  Okay.  Stop your deliberations, and then when everybody is back in the jury room -- is everybody going to the cafeteria to get your lunch?  Okay.

When all eight of you-all are back in the jury room, you can resume deliberations.  As of right now, stop your deliberations.  Once you-all get back in there, you don't need for me to tell you, start your deliberations.

THE FOREPERSON:  Thank you, sir.

THE COURT:  They've a good lunch.

Now, here's what I plan on doing.  I'm going downstairs to get something out of the cafeteria for lunch.  I'm going to wait until about 10 till to give them enough time to clear out. That way no temptation either way around.  I advise you-all to do the same thing.

MR. JOHNSON:  Yes, sir.

THE COURT:  Have a good lunch, everyone.

MR. JOHNSON:  Thank you, sir.

THE DEPUTY CLERK:  All rise.  The Court will stand in recess until further order.

(Whereupon, the hearing concluded at 12:23 p.m.)

(Whereupon, Court resumed at 2:25 p.m.)

THE COURT:  Ladies and gentlemen, I have been informed the jury has reached a verdict.  I will have the jury bring it out.  The CSO will receive the verdict from the foreperson and will hand it to me.  I'll check it and make sure it is appropriate, and then the clerk will publish it.

Okay, bring them out.

(Whereupon, the jury is seated at 2:32 p.m.)

THE COURT:  You all may be seated.

Madam foreperson, I understand the jury has reached a verdict.  If you will hand the verdict form to the CSO.

Okay.  I ask the clerk, excuse me, Ms. Wright to publish the verdict.

THE DEPUTY CLERK:  Verdict form:  Do you find from a

preponderance of the evidence, question one, that Jerry Blasingame was subjected to excessive or unreasonable force by defendant Officer Jon Grubbs?  Answer yes.

Question two, do you find from a preponderance of the evidence that Jerry Blasingame's injury wouldn't have happened without defendant Officer Grubbs' conduct; and that Jerry Blasingame's injuries were a reasonably foreseeable consequence of defendant Officer Grubbs' conduct?  Answer yes.

Question three, that defendant Officer Grubbs' actions, in attempting to arrest Jerry Blasingame were, quote, under color, unquote, of law?  Answer yes.

Question four, that defendant -- that plaintiff should be awarded compensatory damages against defendant Officer Grubbs? Answer yes.  In what amount?  $20 million.

Question six, that punitive damages should be assessed against defendant Officer Jon Grubbs?  Answer yes.  In what amount?  $20 million.

Do you find from a preponderance of the evidence, question seven, that plaintiff has proved that an official policy or custom of the City of Atlanta was the moving force behind Jerry Blasingame's injuries?  Answer yes.

Question eight, that plaintiff should be awarded compensatory damages against the City of Atlanta?  Answer yes.  In what amount?  $60 million.

So say we, all signed, foreperson Heidi J. Evans, dated

August 26, 2022.

THE COURT:  Mr. Johnson, any objections to the form of the verdict?

MR. JOHNSON:  No, Judge.  Thank you.

THE COURT:  Ms. Miller, any objection to the form of the verdict?

MS. MILLER:  No, Your Honor.

THE COURT:  Ladies and gentlemen of the jury, this ends you-all's job -- participation in this case.  I want to thank you-all.  I watched you, you took a lot of notes, you paid attention, you were here on time every day.  I didn't have to worry about anything in the aspect of dealing with you-all in this case.  For that I want to say, thank you.  I appreciate it.

Let me kind of explain to you-all why the other day I asked you-all not to listen to any television, radio, newspapers.

Back in 2019 there was an incident that involved two Atlanta police officers and a gentleman by name of Rayshard Brooks.  I'm probably mispronouncing his first name.  In that case, Mr. Brooks ended up getting killed by one of the police officers.  In that case, tasers were used.  And what happened -- I'll tell you, basically, what I read, because this is a case that occurred with the Atlanta Police Department and it has not been involved in this court so far.

A police officer's taser was taken.  I think they tried to tase Mr. Brooks.  Mr. Brooks took the taser and then is

running -- I think there are allegations, all these are allegations -- fired back at one of the officers, and one of the officers shot Mr. Brooks and killed him.

On Wednesday of this week, the -- well, the case was given to the District Attorney's Office of Fulton County.  At the time, they had another District Attorney who indicted the two police officers.  But there was some questions about certain things -- I'm not making a commentary one way or another -- there was an election held, a new District Attorney came in and felt that the prior District Attorney may have caused her office to look biased, and she asked to be removed out of the case.  And the Chief Judge of the Fulton County Superior Court allowed her to obviously move out, and it was given to the -- and the Attorney General of the State gave the case to the Prosecuting Attorney's Council of the state who does matters like this.

Now, on Wednesday, the head of the Prosecuting Attorney's Council came back and said they found there was not enough evidence to charge the two officers.  And I felt with this case having some similarities, I did not want you-all reading about that or listening to the radio or television because you would get a lot of commentaries about it, a lot of different ideas about it.  Again, I have no opinion one way or the other.  My main goal was to make sure you-all focused on this case.  And it's always possible, even though you don't go in thinking that you aren't going to be persuaded, you could read something or hear

something that could have an effect.

So rather than to have that situation, I decided to ask you-all and I'm quite comfortable that you-all followed those requests, not to read anything about it.  I'm sure this weekend you'll be hearing more about it, and you can form your own opinions.

Now that the case is over, you can discuss the case with anybody you want to talk to about it.  The lawyers may want to ask you certain questions about it, and that will take place in -- if you have any questions of me, I'll hear some now from you.

Usually, at the end of the case, I come back in the back and shake the hands of the jurors.  But because of the rise in COVID, again, I don't want to invade your privacy or jeopardize your health in any way.  So I will thank you personally now.  I also enjoy going to the back and talking to the jurors afterwards, but I want to respect your right to be healthy.  And, again, I apologize to anyone that did not want to wear their mask during the course of the trial, but I thought it was important to respect each other and also to try to make sure we got through this trial with everybody healthy.

But if you have any questions for me here, I'll answer them for you.

Well, thank you.  You're free to go and have a great weekend.

(Whereupon, the jury was excused at 2:38 p.m.)

THE COURT:  Okay.  You all can be seated.  Anything else coming from the plaintiffs?

MR. JOHNSON:  No, Judge.  Thank you.

THE COURT:  Anything else from the defense?

MR. DEARING:  Yes, Your Honor.

We would like to review the motion, Your Honor, with regard to our motion for judgment as a matter of law as to the City of Atlanta and for Officer Grubbs.

Your Honor, I believe we've already gone through what the law is in the area.  We were also able, with regard to Officer Grubbs, we also would cite the case -- cite the Court to the case of *Manners v. Cannella*, 891 F.3d 959, 2018 case, where the Court in that case, Your Honor, went through, also, the Graham standards with regard to severity, the danger to others, and the resisting arrest.  And in that case, Your Honor -- that is a tasing case, also.  And we believe that that court in that situation, the Court would have some -- some ability to still grant to Officer Grubbs qualified immunity.

In that particular case, the officer saw a defendant or saw the plaintiff sitting in a car, eventually turned around -- it was a non-violent, initially, interaction, but eventually it turned somewhat tense, and the officer had to tase the plaintiff. On appeal, the Court of Appeals said that while it certainly isn't encouraged that officers engage in force necessarily with regard to nonlethal encounters, that the officer didn't know what was

1633

going on, was not necessarily aware of all of the surroundings, and had to do what was necessary to gain control of the plaintiff in that particular case and ruled that qualified immunity was appropriate.

Again, Your Honor, we go back again to the first part of the argument regarding the City of Atlanta. I believe Your Honor had stated some pretty definite thoughts about where we were, at least when we last talked about the case, and we would ask that the Court set aside the verdict with regard to the City of Atlanta. And also now that we've cited some additional case law for Officer Grubbs, that the Court would consider that, also.

THE COURT: Thank you.

Mr. Johnson.

MR. JOHNSON: Pursuant to our discussion the other day, Judge, I believe this is something that is properly brought as a post-trial motion that the City should brief so that we have the opportunity to brief the motion as well. It's what we discussed the other day, and I thought there was an understanding or agreement that that's how it would be handled. So that is what I would appreciate so that we're not doing it off the top of my head right now.

THE COURT: You're asking the Court to wait until I rule until you brief it?

MR. JOHNSON: Yes, sir. And that's what we talked about the other day. Yes, sir. Thanks.

MR. DEARING:  Your Honor, I believe that the Court said we could do it either immediately or we had a certain -- that the defense had a certain number of days to bring the motion.  Nothing has changed.  We're bringing the motion.  The law that we cited to the Court earlier still applies.  We're asking for the Court to rule at this time.

MR. JOHNSON:  Like I said, we had this discussion.  I asked the Court specifically when the Court said the Court was going to allow this to go to the jury, and you told us what your thoughts were at the time.  Now we're talking about the city.  Officer Grubbs, I'm not even discussing at this point.  That is no question the judgment, notwithstanding the verdict, the Court has denied the motion for directed verdict.  So that has to be done pursuant to the particular Federal Rules.

The City, we addressed this, Your Honor, and I asked the Court would the Court at least, if we're fortunate enough to get a verdict, would the Court at least allow us to have briefed the issue as opposed to simply ruling on an oral motion.  And I heard the Court say yes.  So I understood that that's what we were doing.  If it's changed, obviously, that's the Court's discretion.  I would prefer it not be --

THE COURT:  I said yes?  And Mr. Dearing said I was going to do it immediately.

How long is it going to take you to give me a brief on this?

MR. JOHNSON:  Give me 14 days.  Give me two weeks.

MR. DEARING:  Your Honor, nothing has changed.  Nothing has changed.

MR. JOHNSON:  Well, then why are we arguing about Grubbs today?  That's changed.  There is no question they would have to file a formal motion on Grubbs, unless the Court is going to automatically deny that right now.  That would save at least the next two months probably of us fighting about post-trial motions.  But it's not appropriate for a JNOV motion to be filed orally after a verdict.

THE COURT:  Well, what Mr. Dearing is doing, he's renewing his motion.  Therefore --

MR. DEARING:  And I believe, Your Honor, that Mr. Johnson actually asked to brief the issue of whether the City should pay for Officer Grubbs.

THE COURT:  He asked for three things.

MR. JOHNSON:  Thank you.

THE COURT:  That was one.  He also asked to brief why the City would have to pay for the medical expenses for -- give me ten minutes so I can think about it.

Ms. Miller and Mr. Dearing, basically, you-all are saying, Judge, we want you to rule today, and Mr. Johnson is saying, Judge, at least give me two weeks to brief it.

MR. JOHNSON:  Yes, Judge.

THE COURT:  I have to admit, Mr. Johnson, what I

heard -- well, I really haven't heard a whole lot that would change my mind, but I'm trying to be fair, Mr. Dearing.

MR. DEARING:  Your Honor, just as a practical matter, as soon as we leave this courtroom, it's going to be announced to the world what happened here today.  And we won't have anything to say, but there's a possibility that the City of Atlanta would be removed.

Nothing has changed, Your Honor.  Nothing has changed since we first argued this motion.  We -- we think that in light of nothing changing, I don't believe -- I certainly can't get into Your Honor's mind -- but nothing has changed.

THE COURT:  Well, I'm not so much saying I've changed my mind.  As I'm thinking, am I being procedurally unfair not allowing him to brief it?  I can't look at you right now and tell you that my mind has basically changed.  I'm trying -- what I'm running through my mind is, do I not allow Mr. Johnson the 14 days to at least brief it?  That's what is going through my mind.

I understand what you're saying that you don't want to wake up tomorrow morning with the front page saying it's a hundred million dollar verdict, but I don't make a decision based on what is going to be in the paper.

MR. DEARING:  I understand, Your Honor.  I'm just saying in large part, nothing has changed.  In fact, Your Honor, when we argued this motion a couple of days ago, I guess Tuesday, Mr. Johnson did not have any law that was adequate to challenge

what we were requesting.  Nothing has changed.  I mean, in 14 days anyone can do a lot of things, but, honestly, I don't know what he can do in 14 days that would change the state of the law and the state of the evidence that was presented to this Court.

THE COURT:  He definitely can't change the evidence.

MR. DEARING:  Absolutely, Your Honor.  And based on that evidence, and that's what we have to go on, there is nothing that's going to change.  There is nothing that's going to change. They still didn't present any evidence regarding patterns or practice, no history of violations regarding the taser.  Nothing. That's not going to change.

Briefing it -- I don't know what he would find in a brief that will change the evidence that this Court has.

THE COURT:  I'm thinking more terms in terms of the Eleventh Circuit, Mr. Dearing --

MR. JOHNSON:  Thank you.

THE COURT:  -- and what they would say if I didn't at least give him a chance to brief it.  I have to look at the whole picture.  I don't need to get to a point where they say Judge Jones should have at least allowed them to brief it.

Let me take a break.  I'll be right back.

(Whereupon, a break was taken at 2:47 p.m.)

(Whereupon, court resumed at 3:03 p.m.)

THE COURT:  You-all may be seated.

So, Ms. Miller and Mr. Dearing, I don't -- right now,

I'm pretty solid on what I think, but I also have to be fair, and I have to consider what the Eleventh Circuit will say to me by not allowing Mr. Johnson and you, if you want to, to brief it.  I'm not going to tell you, Mr. Johnson -- I know this law very well.  I know the facts in this case very well.  And, Mr. Dearing, you're probably saying, well, Judge, then why are you waiting?  There's an element of procedure.  You know that, Mr. Dearing.

You and I have done this for a while, and when you don't follow procedure, that's the first thing that gets the judges in trouble.  So I'm not waiting 14 days.  Here's what is going to happen.

The defendants have asked the Court in an oral motion to enter a motion notwithstanding the law -- the judgment, excuse me, on both Officer Grubbs and the City of Atlanta.  I want you all to put that in writing and file it today.

You will have seven days from today, Mr. Johnson, to file your brief on why the Court should not grant that motion.

MR. JOHNSON:  Yes, Judge.

THE COURT:  Do you wish to have time to respond?

MR. DEARING:  Yes.  Yes, Your Honor.

THE COURT:  You will have seven days from next Friday to respond.

MR. JOHNSON:  Relative to Officer Grubbs, since the Court formally denied that motion, it's improper for them --

THE COURT:  Well, that's procedure.  It's procedure,

though.  In other words, I just told Mr. Dearing procedure. Mr. Dearing has a right to renew the motion as far as Officer Grubbs.  Just like I told Mr. Dearing what I said, I have made -- I think -- not think, I feel confident with the decision I made regarding Officer Grubbs.  I don't foresee changing it.  But just like you have a right to file yours, they have a right to file theirs.

MR. JOHNSON:  Yes, Judge.  Thank you.

MR. DEARING:  Your Honor, what we file today will just be the renewal.  You just want in the form -- I just want to make sure I understand.  It's just simply renewing the motion, the oral motion.

THE COURT:  Yes.  It can be a page or less.

MR. DEARING:  Yes, that's fine.  I understand.  Thank you, Your Honor.

THE COURT:  And then, Mr. Johnson, you have seven days from today.  Now, those other two motions you're talking about, Mr. Johnson, those will come later, because two of them have nothing to do with this case.  The one regarding the $2000 limit, that's a different issue.

MR. JOHNSON:  I agree.

THE COURT:  And the one dealing with the City of Atlanta having to pay for the hospital bills, I really think I need to rule on the verdict first, because, you know -- so I think that's kind of outside this trial as well on this case.  So I think on

that, I will give you the normal 21 days on that.  Because that's -- as a matter of fact, I don't know how I will deal with either one of those two, because it's not -- it really can't be a partial motion for summary judgment at this point in time, Mr. Johnson, on the hospital bills.  That's past.  So I don't know how you're going to word it, because it can't be that.  And then the $2000 is almost like a separate lawsuit.

So that's what I'm saying, all I want from you is dealing with the motion that Mr. Dearing is going to file, and Mr. Dearing will respond to that.  Those other two, you're going to have to figure out how to bring those in front of the Court.  I think the $2000 matter has to be practically a separate lawsuit. But I don't know.  You may consider another mechanism to bring it before the Court.

MR. JOHNSON:  That may be a judgment thing.  So we're not there yet.

THE COURT:  So those two can wait 21 days.  Okay?  But this other one, I need to deal with.

Again, Mr. Dearing, I hear what you're saying, but the Court cannot make a decision based on what is going to be in the paper.

MR. DEARING:  I appreciate that, Your Honor.  I appreciate the time you've given us to get this thing moving.

THE COURT:  I'm going to rule now -- let's not leave here today with any misunderstandings.  Because just a minute ago

Mr. Dearing suggested, you said you're going to rule right after; and you said, well, no, Judge, you said you were going to give me time to write a brief.

After September 10, I'm ruling on this.  Don't make -- there's not going to be a reply brief -- except on the 3rd your brief, except on the 10th your brief, and then I'm ruling after that.

MR. DEARING:  Yes, sir.  Yes, sir.

THE COURT:  Let the record so reflect.

Mr. Dearing, the verdict will be filed.

MR. JOHNSON:  Thank you, Judge.

MR. DEARING:  Thank you, Your Honor.

THE COURT:  Thank you-all.

(Whereupon, the jury trial concluded at 3:08 p.m.)

1642

CERTIFICATE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF GEORGIA

    I do hereby certify that the foregoing pages are a true and correct transcript of the proceedings taken down by me in the case aforesaid.

    This the 26th day of August, 2022.

/s/Viola S. Zborowski _____
VIOLA S. ZBOROWSKI,
RDR, FAPR, CMR, CRR, RPR, CRC
OFFICIAL COURT REPORTER TO
THE HONORABLE STEVE C. JONES

UNITED STATES DISTRICT COURT OFFICIAL CERTIFIED TRANSCRIPT