## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**KEITH EDWARDS, as guardian and conservator for Jerry Blasingame,**

   **Plaintiff,**

**v.**

**OFFICER J. GRUBBS # 6416 and THE CITY OF ATLANTA,**

   **Defendants.**

**CIVIL ACTION FILE**

**No. 1:19-CV-02047-SCJ**

## <u>ORDER</u>

    This matter appears before the Court on Plaintiff's Motion for Attorneys' Fees (Doc. No. [186]), Plaintiff's Motions for Relief Pursuant to Rule 60(b) (Doc. Nos. [187]; [191]), and Defendant Grubbs' Motion for Relief from Judgment (Doc. No. [207]).[1] For the following reasons, the Court **DENIES** the Parties' motions.

---

[1] All citations are to the electronic docket unless otherwise noted, and all page numbers are those imprinted by the Court's docketing software.

## I.    BACKGROUND

This case's background and trial evidence has been thoroughly discussed in the Court's prior order on Defendants' renewed motion for judgment as a matter of law. Doc. No. [177], 2–11. The Court incorporates this factual account into this Order, and only recounts the facts necessary for resolving these motions.

A tasing incident involving Officer Grubbs left Mr. Blasingame (Plaintiff[2]) severely injured and led Plaintiff to filing the instant lawsuit against Officers Grubbs and the City of Atlanta. Doc. No. [52]. Plaintiff filed a Section 1983 claim alleging that Officer Grubbs violated his Fourth Amendment rights by using excessive force against him and that the City of Atlanta could also be liable for this violation under the Monell doctrine. Id. at ¶¶ 29–38.

The Court held a multi-day jury trial on Plaintiff's claim in August 2022. Doc. Nos. [193]–[200]. The jury returned a verdict in favor of Plaintiff. It awarded Plaintiff $20 million in compensatory damages and $20 million in punitive damages against Defendant Grubbs, and $60 million in compensatory damages against the City of Atlanta. Doc. No. [163], 3. The Court denied Defendants'

---

[2] The Court recognizes that Blasingame is no longer a named Plaintiff and Mr. Edwards represents him as the named plaintiff and conservator. Doc. No. [113]. For clarity, however, the Court will continue to refer to Blasingame as "Plaintiff."

motion for judgment as a matter of law during trial. Doc. No. [161]. Defendants renewed their motion for judgment as a matter of law following the verdict. The Court ordered briefing on the motion, and eventually granted the motion for the City of Atlanta (Doc. No. [177], 13–22), but denied it for Defendant Grubbs (id. at 23–36). The Court then entered judgment in favor of the City of Atlanta. Id. at 36.

Defendant Grubbs appealed the denial of the directed verdict and judgment as a matter of law.[3] Doc. No. [178]. Plaintiff filed his motions for attorneys' fees and Rule 60(b) relief following the Court entering judgment in favor of the City of Atlanta as a matter of law. Doc. Nos. [186]; [187]. Plaintiff also moved for relief from the Court's denial of his request for medical expenses while he was hospitalized and in custody pursuant to O.C.G.A. § 42-5-2. Doc. No. [191]. Defendant Grubbs subsequently moved for relief from judgment as it pertains to the punitive damages awarded against him. Doc. No. [207-1].

---

[3] Presently, only Defendant Grubbs has appealed the Court's judgment. While this appeal affects Defendant Grubbs' instant motion, see infra Section (III)(D), the Court retains jurisdiction over the issues presented in Plaintiff's motions relating to the judgment entered in favor of the City of Atlanta and attorneys' fees because these issues are not implicated by Defendant Grubbs' appeal. United States v. Tovar-Rico, 61 F.3d 1529, 1532 (11th Cir. 1995) ("[T]he filing of a notice of appeal divests the district court of jurisdiction over the aspects of the case involved in the appeal." (emphasis added)).

## II.    LEGAL STANDARD

With the exception of Plaintiff's motion for attorneys' fees, the Parties' motions all seek relief from judgment under Rule 60(b). Federal Rule of Civil Procedure 60 provides an avenue to seek relief "from a final judgment, order, or proceeding[.]" Fed. R. Civ. P. 60(b). In the Eleventh Circuit, there is a "high standard for granting post[-]judgment relief under Rule 60(b)." Zakrzewski v. McDonough, 490 F.3d 1264, 1267 (11th Cir. 2007). A court can provide relief from a judgment or order in the following limited circumstances:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

Specifically, Plaintiff moves for relief under Rule 60(b)(1) and (6). Rule 60(b)(1) applies to mistakes of law. See Nisson v. Lundy, 975 F.2d 802 (11th Cir. 1992). Rule 60(b)(6)'s catchall provision provides "an extraordinary

remedy which may be invoked only upon a showing of exceptional circumstances, and that, absent such relief, an extreme and unexpected hardship will result." <u>Saunders v. United States</u>, 380 Fed. App'x. 959, 964 (11th Cir. 2010). (citation and quotation omitted). The movant "must demonstrate that the circumstances are sufficiently extraordinary to warrant relief." <u>Id</u>. (citation and quotation omitted).

## III.   ANALYSIS

The Court now addresses the four motions filed by the Parties: (A) Plaintiff's motion for attorneys' fees, (B) Plaintiff's motion for relief of the judgment entered in favor of the City of Atlanta as a matter of law, (C) Plaintiff's motion for relief of judgment seeking medical expenses under O.C.G.A. § 42-5-2, and (D) Defendant Grubbs' motion for relief from the jury's award of punitive damages. For the reasons specified *infra*, each of these motions is denied.

### A.   <u>Plaintiff's Motion for Attorneys' Fees Is Premature and Denied.</u>

Plaintiff, as the prevailing party, moves for attorneys' fees under 42 U.S.C. § 1988(b). Doc. No. [186]. Along with his motion, Plaintiff submits the records for his attorneys' work in this case, the costs incurred with the proceeding, and argument for post- and pre-judgment interest. Doc. Nos. [186-2]; [186-3]; [186-4];

5

[186-5]. Defendants respond in opposition, arguing first, that this motion is premature because of the pending appeal and, second, that the amount of fees claimed by Plaintiff should be reduced given that he was only successful on one of his four claims against one of the two named Defendants. Doc. No. [192], 2. Defendants suggest a 50-60% reduction in the fees claimed and argue that pre-judgment interest should be denied. Id. at 7.

The Court, at this time, denies Plaintiff's motion for attorneys' fees. There is no doubt that Plaintiff was the prevailing party at trial. The judgment against Defendant Grubbs in Plaintiff's favor is currently on appeal, however, and the Eleventh Circuit's decision may impact exactly how successful Plaintiff has been in this case. Thus, the Court will defer a final ruling on the attorneys' fees until the appeal has been completed. The Court presently denies Plaintiff's motion for attorneys' fees (Doc. No. [186]), with the understanding that it might be reraised.

### B.   Plaintiff's Rule 60(b) Motion Against the City Is Denied.

Plaintiff next moves for relief from the Court's judgment entered in favor of the City of Atlanta as a matter of law. Doc. No. [187]. Plaintiff's broad argument is that the trial evidence supported the jury's verdict against the City

of Atlanta, but in this Rule 60(b) motion, Plaintiff specifically focuses on the City's policy regarding body-worn-cameras (BWC).[4] Id. at 9.

"To succeed on a Monell claim, a plaintiff must prove that (1) something that qualifies as an official local-government policy (2) was the "moving force" that "actually caused" (3) the plaintiff's constitutional injury." Sosa v. Martin Cty., No. 20-12781, 2023 WL 1776253, at *7 (11th Cir. Feb. 6, 2023) (citing Connick v. Thompson, 563 U.S. 51, 59 n.5 (2011).

The Court's prior order determined the trial evidence supported that the City of Atlanta's police department (APD) knew of and allowed improper use of BWC.[5] Doc. No. [177], 20. The Court, however, ultimately concluded that the evidence did not support that APD's improper BWC use "caused the constitutional violation at issue." Id. at 21. In other words, "Plaintiff did not show that the APD's failings regarding BWC usage increased uses of excessive force."

---

[4] Plaintiff makes clear that he is not waiving his other theories for Monell liability against the City of Atlanta—i.e., the failure to train, supervisor or discipline regarding the use of force or use of tasers—but expressly focuses his Rule 60(b) motion on the BWC policy. Doc. No. [187], 9. As Plaintiff's arguments in this instant motion only relate to the BWC, the Court will likewise limit its analysis in this Order to Monell liability based on the City's BWC policy.

[5] The Court itself expresses no opinion on whether the APD actually had a custom or policy of improper BWC usage.

7

Id. The jury verdict in favor of Plaintiff and against the City of Atlanta, therefore, was not supported due to a lack of causation evidence. Id. at 22.

Plaintiff contends that the Court's concern over the lack of evidence regarding "widespread uses of excessive force" did not fully consider the jury instructions given on Monell liability. Doc. No. [187], 10–11. Plaintiff specifically argues that a prior, similar violation is not required for Monell liability in all cases. Id. at 12. Plaintiff maintains that the jury's verdict under the instructions given is supported because the evidence shows that there was an official policy or custom regarding improper use of BWC and that that policy or custom "was the driving force behind the unconstitutional use of force in this case." Id. at 11.

The Court does not disagree that the jury instructions properly allow Monell liability despite a lack of evidence of a prior, similar incident. See Doc. No. [206], 11 ("City of Atlanta is liable if Plaintiff proves that an official policy or custom of City of Atlanta directly caused his injuries . . . [that is, if the policy or custom] was the moving force behind [Plaintiff's] injuries."). The Court, however, maintains that Plaintiff's trial evidence fails to show the required causal link between the policy here (improper use of BWC) and the unconstitutional conduct (excessive force against Plaintiff). See Brooks v. Scheib, 813 F.2d 1191,

8

1195 (11th Cir. 1987) (requiring an "affirmative link" between the policy and the unconstitutional conduct (quoting Rizzo v. Goode, 423 U.S. 362, 371 (1976))).

Certainly Plaintiff submitted evidence that generally the improper use of BWC can cause an increase of excessive force.[6] One of Plaintiff's experts testified that a police department's indifference to a policy or procedure—like APD's BWC policy here—creates an "agency culture" that does not "hold its members accountable" and "compromises the trustworthiness of the police department to the public." Doc. No. [195] (Trial Tr.), 586:16–20. This expert went on to testify,

> [I]f you're not holding your officers accountable, particularly on the most highest duty that an officer is allowed to perform, meaning use of force, then the officers, not only just the officer that is in question, but the officers throughout the rank and file, recognize that there is no consequence to their actions. So if there is no consequences and they're not being held accountable, that means then officers can go off the rail and do what they think they should do when it's not comporting or complying with the agency's policy. It's a very bad formula for disaster to the general public of not

---

[6] This evidence also illustrates that the Court is not, as a matter of law, rejecting the theory that improper BWC use *could* cause excessive force violations that incur Monell liability. See, e.g., Jones v Louisville/Jefferson County Metro Gov't, 482 F.Supp.3d 584, 597–98 (W.D. Ky. 2020). The Court, however, is bound at this stage of the proceeding to the facts and evidence submitted at trial. And Plaintiff has not met his burden to prove that the APD's improper BWC usage was the "moving force" behind the excessive force committed against him.

> adequately keeping your officers accountable for their
> actions.

Id. at 587:14–588:3.

Plaintiff's other expert witness testified that, in his opinion, "[t]here is an absolute connection between the body-worn cameras and the use of force by police officers," specifically that BWC "prevent excessive force." Doc. No. [197] (Trial Tr.) 1118:21–22, 1120:21–23. He stated that, in his experience, once a department starts using BWC, "it has reduced the number of citizen complaints made against [its] officers, and it also has reduced the incidents of use of force that departments experience prior to deploying the cameras." Id. at 1119:13–18. This expert further reasoned that if an officer's conduct is not recorded on BWC then the officer is "more likely to use force and, perhaps, more likely to use unnecessary force against individuals where other options should have been used." Id. at 1124:17–19.

Clearly these experts' opinions *could* support a theory that proper use of BWC in police departments generally can reduce excessive force violations. What this testimony fails to do, however—and what no other evidence at trial supports—is that the APD's policy of improper BWC use *caused Plaintiff's injuries here*. Put differently, there is no evidence that if APD had followed a proper BWC

policy then Defendant Grubbs would not have committed excessive force against Plaintiff.[7] Cf. Brooks, 813 F.2d at 1195 (vacating a jury verdict and entering judgment in favor of the city when "[t]here [was] no evidence that different procedures . . . would have prevented [plaintiff's] injuries.").

Ultimately, the Court cannot disregard the lack of trial evidence connecting APD's improper BWC use as the "moving force" behind the excessive force in this case. A lack of such evidence fails to provide the "affirmative link" required for Monell liability. See, e.g., Speight v. Griggs, 620 F. App'x 806, 810 (11th Cir. 2015); C.F.C. v. Miami-Dade Cty., 349 F. Supp. 3d 1236, 1264 (S.D. Fla. 2018) ("[P]laintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a *direct causal link* between the municipal action and the deprivation of federal rights." (quoting Bd. of Cty. Comm'rs v. Brown, 520 U.S. 397, 404 (1997))). The Court thereby denies Plaintiff's motion for relief from the judgment entered in favor of the city. Doc. No. [187].

_____

[7] The jury instructions clearly state the causation standard at issue here. Doc. No. [206], 11 ("City of Atlanta is liable if Plaintiff proves that an official policy or custom of City of Atlanta *directly caused* his injuries" (emphasis added)), 11 ("City of Atlanta is liable if its official policy or custom was *the moving force* behind [Plaintiff's] injuries" (emphasis added)).

**C.**  **Plaintiff's Rule 60(b) Motion Under O.C.G.A. § 42-5-2 Is Denied.**

Plaintiff also moves for the City of Atlanta to be held responsible for his medical care under O.C.G.A. § 42-5-2. Doc. No. [191]. The Court previously denied Plaintiff summary judgment on this issue because it had not been fully briefed and the evidence was better suited for trial. Doc. No. [85], 11. Now Plaintiff asserts that because the Court has entered a judgment in favor of the City (eliminating $60 million in compensatory damages) and has not otherwise provided for Plaintiff's medical expenses while in custody, the "Court has incorrectly limited the damages to which Plaintiff is entitled." Doc. No. [191], 2.

O.C.G.A. § 42-5-2(a) requires the governmental entity with "physical custody of an inmate to maintain . . . any needed medical and hospital attention [and] to bear the costs of any reasonable and necessary emergency medical and hospital care." The statute also considers the governmental entity bearing the costs of "reasonable and necessary follow-up medical or hospital care rendered to any such inmate as a result of the initial emergency care and treatment of the inmate." Id.

The Court's prior summary judgment order focused on whether O.C.G.A. § 42-5-2 waives sovereign immunity. Doc. No. [85], 9–11. Indeed, the Court

12

essentially invited the Parties to brief the sovereign immunity issue. Id. at 11. In the Rule 60(b) motion briefing, while the City of Atlanta argued that sovereign immunity has not been waived, Plaintiff did not meaningfully discuss sovereign immunity. Doc. Nos. [191], 9; [205], 13–15.

The Court now denies Plaintiff's Rule 60(b) motion for medical expenses under O.C.G.A. § 42-5-2. First, Plaintiff's failure to assert a claim in his complaint under O.C.G.A. § 42-5-2 defeats his request for these damages now. In the cases the Court has reviewed, the person in physical custody has stated an independent claim under O.C.G.A. § 42-5-2 for medical expenses. See, e.g., Robinson v. Integrative Det. Health Servs., Inc., No. 3:12-CV-20 CAR, 2014 WL 1314947, at *6 (M.D. Ga. Mar. 28, 2014); Proctor v. Georgia ex rel. Olens, No. 5:12-CV-342 HL, 2013 WL 3063527, at *3 (M.D. Ga. June 17, 2013); Kimbell v. Clayton Cty., No. 1:03-CV-2910-JEC, 2005 WL 7861525, at *9 (N.D. Ga. Sept. 27, 2005), aff'd sub nom. Kimbell ex rel Liddell v. Clayton Cty., 170 Fed. App'x 663 (11th Cir. 2006); Graham v. WellStar Health Sys., Inc., 338 Ga. App. 178, 179, 789 S.E.2d 369, 370–71 (2016).

Requiring a party to plead a claim for medical expenses under O.C.G.A. § 42-5-2 comports with the purpose of pleadings: "giv[ing] the defendant fair

notice of what the . . . claim is and the grounds upon which it rests." <u>Bell Atlantic</u> <u>Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)).

Plaintiff did not assert a claim for medical expenses under O.C.G.A. § 42-5-2, nor did he attempt to amend his complaint to reflect such claim. Doc. No. [52]. Without notice that Plaintiff was pursuing this claim, the Court agrees with the City of Atlanta that it would be improper to find the City liable for a claim it did not know it was defending until Plaintiff filed his summary judgment motion. Doc. No. [205], 12–13. Thus, because Plaintiff did not adequately plead a claim under O.C.G.A. § 42-5-2, the Court denies his motion for relief from judgment.

Alternatively, Plaintiff has not carried his burden to show that sovereign immunity has been waived. The Court reiterates that the law on this issue is unclear and non-linear. Doc. No. [85], 9. Ultimately, however, Plaintiff had the burden to show that sovereign immunity has been waived by O.C.G.A. § 42-5-2. Instead, all Plaintiff argued about sovereign immunity was that sovereign immunity was *not waived* for the care of inmates. Doc. No. [191], 9 ("The Georgia Supreme Court has confirmed 'that the care of inmates in the custody of a

14

municipal corporation is a governmental function for which sovereign immunity has not been waived.'" (citing <u>City of Atlanta v. Mitcham</u>, 296 Ga. 576, 576, 769 S.E.2d 320, 322 (2015)). Thus, the Court also denies Plaintiff's motion for relief from judgment for medical expenses under O.C.G.A. § 42-5-2 because Plaintiff has failed to prove that sovereign immunity has been waived for this claim.

### D.   <u>Defendant Grubbs' Rule 60(b) Motion for Relief from the Punitive Damages Award Is Denied.</u>

Finally, Defendant Grubbs moves under Rule 60(b) for relief from the judgment of the punitive damages awarded against him. Doc. No. [207-1]. Grubbs asks the Court to either vacate the punitive damages award, grant a new trial, or reduce the award because the award was excessive as a matter of law and violates his Fourteenth Amendment Due Process right. <u>Id</u>. at 2. Plaintiff opposes Defendant Grubbs' motion, arguing that it is both procedurally untimely and jurisdictionally barred by Grubbs' pending Eleventh Circuit appeal, and that the punitive damages award is otherwise substantively supported by the trial evidence, not excessive, and not unconstitutional. Doc. No. [216], 1–2.

The Court denies Defendant Grubbs' motion because it is jurisdictionally barred and untimely. First, the Court lacks jurisdiction over the judgment entered

against Defendant Grubbs because he has appealed to the Eleventh Circuit. "[T]he filing of a notice of appeal divests the district court of jurisdiction over the aspects of the case involved in the appeal." Tovar-Rico, 61 F.3d at 1532. Defendant Grubbs' notice of appeal indicated that he appealed "the Order entered September 14, 2022," "the *Judgment entered* against Officer J. Grubbs on September 14, 2022," and "*all other adverse rulings in the above-styled case.*" Doc. No. [178] (emphasis added). While the Court did not address the punitive damages award specifically in its order on Defendants' renewed motion for judgment as a matter of law (Doc. No. [177]), both the judgment entered against Defendant Grubbs and other rulings in this case implicate the punitive damages award entered. See, e.g., Doc. No. [179]. Thus, the punitive damages award against Defendant Grubbs is part of his current appeal and the Court lacks jurisdiction over it.

Second, and alternatively, the Court concludes that Defendant Grubbs' motion, while stylized as a Rule 60(b) motion, is better classified as a Rule 59(e) motion to alter or amend a judgment. "[T]he style of a motion is not controlling." Finch v. City of Vernon, 845 F.2d 256, 258 (11th Cir. 1988). A substantive motion to amend or alter a judgment is brought under Rule 59(e), whereas a collateral

16

motion seeks relief from judgment. Id. at 258–59. Defendant Grubbs' motion involves a substantive issue in this case: whether punitive damages should be awarded and, if so, in what amount. The punitive damages award was part of the judgment entered in this case. Doc. No. [179]; cf. Finch, 845 F.2d at 259 n. 3 (determining that the issue of joint and several liability was a substantive issue because the amount the defendant owed was "*part* of the judgment," not "owed *because of* the judgment" (emphasis added)). Accordingly, Defendant Grubbs' motion is best considered a Rule 59(e) motion to reconsider.

Rule 59(e), however, has a 28-day filing deadline, whereas Rule 60(b) motions must be filed within 1-year of the judgment. See Fed. R. Civ. Pro. 59(e), 60(c)(1). Here, Defendant Grubbs filed his motion outside the 28-day period for Rule 59(e) motions, but within the 1-year period for Rule 60(b) motions.[8] Thus, because Defendant Grubbs' motion is, at bottom, a Rule 59(e) motion to alter or amend the judgment, and it was filed outside the 28-day period for

---

[8] The timing of the filing has some bearing on a court's determination to treat a motion under Rule 59(e) or Rule 60(b), especially in tolling decisions. Finch, 845 F.2d at 258–59 (citing Dove v. Codesco, 569 F.2d 807, 809 (4th Cir. 1978). Given that the issues raised in Defendant Grubbs' motion are clearly substantive, however, and that the judgment against Defendant Grubbs does not pertain to a "tolling decision," the Court primarily uses the substantive/collateral test for determining under what rule this motion is properly brought and considered.

reconsideration, the motion must be procedurally denied as both untimely and jurisdictionally barred.[9]

## IV.   CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's Motions for Attorneys' Fees (Doc. No. [186]) and for Relief from Judgment (Doc. Nos. [187]; [191]). The Court furthermore **DENIES** Defendant Grubbs' Motion for Relief from Judgment (Doc. No. [207]).

IT IS SO ORDERED this ___30th___ day of March, 2023.

_____
**HONORABLE STEVE C. JONES**
**UNITED STATES DISTRICT JUDGE**

---

[9] The Court will not consider the merits of Defendant's arguments regarding punitive damages—constitutional or otherwise—given it lacks jurisdiction.