IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| KEITH EDWARDS, as guardian and conservator for JERRY BLASINGAME,<br><br>       Plaintiff,<br>v.<br><br>OFFICER J. GRUBBS, #6416, and CITY OF ATLANTA/ATLANTA POLICE DEPARTMENT,<br><br>       Defendants. | CIVIL ACTION NO.<br>1:19-cv-02047-SCJ |

**DEFENDANT OFFICER J. GRUBBS' MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR RECONSIDERATION**

Now Comes Defendant, Officer J. Grubbs ("Officer Grubbs"), by and through counsel, pursuant to Rules 59 and 60 of the Federal Rules of Civil Procedure, and hereby submits the following memorandum of fact and law in support of his motion for reconsideration of the Court's Order denying Officer J. Grubbs' qualified immunity.

## I.   INTRODUCTION

As the Court is aware, Officer Grubbs attempted to arrest Mr. Jerry Blasingame ("Mr. Blasingame") as he was panhandling by the side of a busy interstate in July 2018. As Mr. Blasingame fled from Officer Grubbs, Officer Grubbs deployed his taser one time to stop Mr. Blasingame's flight. In a tragic and unforeseeable turn of events, Mr. Blasingame, who was running up a hill to escape

1

from Officer Grubbs, rolled down the hill and into a metal utility box hidden from view at the base of the hill. Mr. Blasingame was left paralyzed.

Officer Grubbs made a split-second decision to stop a fleeing suspect as the suspect ran near a dangerous highway; and yet, after a jury trial, the verdict against Officer Grubbs included $20 million in compensatory damages and $20 million in punitive damages. The present motion seeks reconsideration of the Court's order denying Officer Grubbs' motion for judgment as a matter of law, holding that Officer Grubbs was not entitled to qualified immunity. The Court's qualified immunity order did not account for whether Officer Grubbs' conduct was a clearly established constitutional violation at the time it occurred nor did it properly assess whether Officer Grubbs' conduct was that of a reasonable officer in Officer Grubbs' shoes at the time. In so doing, the Court misapplied clearly established precedent from the United States Court of Appeals for the Eleventh Circuit.

## II. BACKGROUND

### A. Factual Background

On the afternoon of July 10, 2018, Officer Grubbs and his partner, Officer Shelley, were driving in their patrol car near Windsor Street and Interstate 20 in Atlanta when they noticed Mr. Blasingame panhandling on the shoulder of the road. *See* Trial Transcript ("Tr.") 854:10–25; 1086:20–25. Officer Grubbs then stopped to question Mr. Blasingame, but Mr. Blasingame turned and ran away on the

2

shoulder of the highway ramp. Tr. 1087:4–12, 885:16–19. Officer Grubbs ran after Mr. Blasingame. Tr. 1087:13–14.

As Officer Grubbs approached Mr. Blasingame, Mr. Blasingame crossed over a roadside guardrail. Tr. 1054:3–11. Mr. Blasingame then moved his arm backwards at Officer Grubbs, a motion that Officer Grubbs later described as a "clearance strike." Tr. 1056:1–23. Concerned that Mr. Blasingame would flee into traffic on the other side of the road and endanger himself and nearby drivers, Officer Grubbs drew and discharged his taser at Mr. Blasingame. Tr. 1068:10–1069:1. The taser struck Mr. Blasingame, causing him to fall down a decline that was hidden to Officer Grubbs at the time. Tr. 538:23–539:5 (citing Exh. 39), 1075:14–1076:15, 1089:4–12. Mr. Blasingame then hit his head on the concrete base of a utility box at the bottom of the incline. As a result of the fall, Mr. Blasingame sustained injuries. Tr. 1274:7–1275:4. Officer Grubbs then checked on Mr. Blasingame, summoned first responders to provide medical assistance, attended to Mr. Blasingame, and called a supervisor to inform that supervisor of the tasing incident. Tr 1078:16–1081:12, 1091:17–1093:8. No more than 45 seconds elapsed from the time Officer Grubbs left his vehicle until the time he tased Mr. Blasingame. Tr. 1090:3–6. Shortly after, Mr. Blasingame was transported to a hospital where he was treated for his injuries. Tr. 1079:13–23.

**B.** **The Verdict**

At trial, the jury held Officer Grubbs liable for violations of Mr. Blasingame's constitutional rights under 42 U.S.C. § 1983. *See* Doc. 163. Pursuant to that finding, the jury awarded $20 million in compensatory damages and $20 million in punitive damages to Mr. Blasingame. *Id.* at 2. The jury also awarded $60 million in compensatory damages against the City of Atlanta for violations of 42 U.S.C. § 1983. *Id.*

**C.** **Motions for Judgment**

The City moved to vacate the $60 million verdict in its renewed motion for judgment as a matter of law. *See* Docs. 155, 176. Officer Grubbs also moved for judgment as a matter of law based upon qualified immunity. *See id*. The Court granted the City's motion, thereby vacating the $60 million verdict against the City. *See* Doc. 177. The Court denied Officer Grubbs' motion. *Id*. The Court held that a reasonable jury could have found that Officer Grubbs used excessive force against Mr. Blasingame and thereby violated his Fourth Amendment rights. *Id*. at 30–32. The Court also held that Officer Grubbs' use of the taser was clearly established as a constitutional violation at the time it occurred, relying exclusively upon *Bradley v. Benton*, 10 F.4th 1232 (11th Cir. 2021). *Id*. at 32–34. Officer Grubbs timely appealed from the district court's order. Doc. 178. Mr. Blasingame also appealed the Court's order denying Plaintiff's Rule 60(b) Motions for Relief. Doc. 226.

4

### D.     <u>Relevant Procedural Posture</u>

On February 15, 2024, the Eleventh Circuit denied both parties' appeals, finding that this Court had not granted final judgment. *Edwards v. Grubbs*, No. 22-13261, 2024 U.S. App. LEXIS 3526 at *2–3 (11th Cir. Feb. 15, 2024). The Eleventh Circuit concluded that because the Court dismissed Count II under Rule 41—which requires "the dismissal of an entire action" instead of a single claim—"a final judgment was never rendered." *Id.* at 4. (quoting *Rosell v. VMSB, LLC*, 67 F.4th 1141, 1143 (11th Cir. 2023)) (citations omitted). Accordingly, there has been no final judgment and this Court did not "resolve 'conclusively the substance of all claims, rights, and liabilities of all parties to an action.'" *Id.* (quoting *Sanchez v. Disc. Rock & Sand, Inc.*, 84 F.4th 1283, 1291 (11th Cir. 2023)).

Because there was no final judgment in the Court's September 14, 2022 Order and because Count II was still pending before the Court, Plaintiff moved to amend the complaint and request a final judgment. Doc. 256. The Court subsequently granted leave to amend and entered final judgment as to all counts on May 2, 2024. Doc. 260. The Second Amended Complaint was later filed with the Court on May 10, 2024, containing one count for violation of 42 U.S.C. § 1983 against Defendants Officer Grubbs and the City of Atlanta. Doc. 261.

The Court has now entered final judgment, and because this motion is filed within 28 days of such final judgment, this matter is now ripe for review pursuant to

Rule 59(e), or in the alternate, Rule 60(b)(6).

## III. STANDARD OF REVIEW

### A. Rule 59(e) Standard for Alteration or Amendment of Judgment.

Under Rule 59(e), this Court may "alter or amend a judgment," Fed. R. Civ. P. 59(e), if the moving "party presents newly discovered evidence or demonstrates a manifest error of law or fact," *Marques v. JP Morgan Chase, N.A.*, 805 F. App'x 668 (11th Cir. 2020) (citing *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007)), or "where the judgment would result in manifest injustice[.]" *Daker v. Warren*, No. 1:10-CV-03815-RWS, 2012 WL 2403437 (N.D. Ga. June 25, 2012) (citing 11 Charles Alan Wright & Arthur R. Miller, *et al.*, Federal Practice and Procedure § 2810.1 (2d ed.)).  A "manifest injustice" results when the trial court had a "direct, obvious and observable" error. *McDaniel v. Am. Gen. Fin. Servs., Inc.*, No. 04-2667 B, 2007 WL 2084277 (W.D. Tenn. July 17, 2007).  To show a manifest injustice, a party "must demonstrate why the Court should reconsider its prior decision and set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision," *Calvo v. Walgreen Corp.*, No. 07-21398-CIV, 2009 WL 10666983 (S.D. Fla. Mar. 19, 2009) (citation omitted), or a "fundamental flaw . . . that without correction would lead to a result that is both inequitable and not in line with applicable policy." *Bey v. Weisenburger*, No. 3:23 CV 356, 2023 WL 6199755, at *2 (N.D. Ohio Sept. 22, 2023).

B.     **Rule 60(b)(6) Relief from Final Judgment.**

A party may seek relief from a final judgment or order under Federal Rule of Civil Procedure 60(b)(6) for "any other reason that justifies relief." A trial court has wide discretion to consider whether to grant the requested relief under Rule 60(b)(6), *see Kolawole v. Sellers*, 863 F.3d 1361, 1373 (11th Cir. 2017), and the moving party must show "sufficiently extraordinary" circumstances such that "extreme and unexpected hardship" will result absent said relief. *Doe v. Drummond Co.*, 782 F.3d 576, 612 (11th Cir. 2015) (citation and quotation marks omitted).

Circuit courts of appeals have found that "an award of excessive and unconstitutional punitive damages in and of itself presents exceptional circumstances" warranting relief under Rule 60(b)(6). *See Watkins v. Lundell*, 169 F.3d 540, 545 (8th Cir. 1999). This is because "[p]rocedural and substantive strictures are necessary to ensure that punitive damage awards, which are proxies for punishment and deterrence, comply with constitutional requirements." *Id.*

### IV.   ARGUMENT

A.   **Officer Grubbs is entitled to Qualified Immunity.**

The Court should vacate the judgment against Officer Grubbs to correct clear error. Officer Grubbs is entitled to qualified immunity based on the caselaw the Court relied on in its order denying Officer Grubbs' motion for judgment as a matter of law. An officer is entitled to qualified immunity unless his conduct violates established statutory or constitutional rights of which a reasonable person would

have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

The Court erroneously held that Officer Grubbs' use of the taser was a clearly established constitutional violation at the time it occurred. Doc. 177 at 33. The Court relied exclusively on the United States Court of Appeals for the Eleventh Circuit's decision in *Bradley v. Benton*, 10 F.4th 1232 (11th Cir. 2021), which it described as holding that an officer violates a suspect's clearly established Fourth Amendment rights "by tasing the suspect when he was on an elevated and precarious surface." *Id*. at 33. The Court then explained that "Officer Grubbs tased a fleeing but non-threatening suspect who had not committed a serious crime when that suspect was on an elevated, precarious surface, which made it highly likely that the tasing would result in serious injury or death." *Id*. at 33–34. It further speculated that "[e]ven had the utility box not been at the bottom of the hill, Mr. Blasingame's fall could have resulted in serious injury. The fact that Mr. Blasingame's head slammed into that utility box only worsened an already dangerous fall." *Id*. at 34.

The Court acknowledged that *Bradley* post-dated the conduct at issue. Thus, *Bradley* could not have clearly established the law in July 2018 when the incident ocurred, *see Wade v. United States*, 13 F.4th 1217, 1225 (11th Cir. 2021), *cert. denied sub nom. Wade v. Lewis*, 142 S. Ct. 1419 (2022) (a right must be clearly established "at the time of the challenged conduct."). But the Court still relied on it because "the *Bradley* court cited numerous cases pre-dating the events at issue here

8

that clearly established that using significant and potentially deadly force against a non-threatening suspect who is on an elevated surface violates that suspect's Fourth Amendment rights." *Id*. at 33–34 n.13. The Court relied on two pages of the *Bradley* opinion to conclude that *Bradley* itself was based on clearly established, preexisting law, *see* Doc. 177 at 34 n.13 (citing *Bradley*, 10 F.4th at 1242–44). The only substantive analysis on those pages is a comparison of the facts of *Bradley* to the facts of *Tennessee v. Garner*, 471 U.S. 1 (1985). *Bradley*, 10 F.4th at 1242–44. In *Garner*, the Supreme Court held that a police officer used excessive force when he shot an unarmed, fleeing burglary suspect to stop his flight. *Garner*, 471 U.S. at 21. The *Bradley* court looked to "*Garner*'s analogous facts" and explained that it "clearly established that an officer cannot use deadly force to stop an unarmed man who is not suspected of committing a violent crime from fleeing on foot." *Bradley*, 10 F.4th at 1243. It then held that *Garner* should have put a reasonable officer on notice that tasing a fleeing, non-violent suspect from the top of an eight-foot wall violated the Fourth Amendment, *id*., and that "no reasonable officer could have believed the application of deadly force was warranted under these circumstances." *Id*. at 1244.

The facts of *Garner* are too different from the facts in this case to have put Officer Grubbs on notice. *Garner* involved the use of deadly force. *Garner* did not make apparent to a reasonable officer at the scene that the use of a single taser shock

on Mr. Blasingame was an application of potentially deadly force.  "[A] taser generally is not a deadly weapon," *Cantu v. City of Dothan, Ala.*, 974 F.3d 1217, 1231 (11th Cir. 2020) (citing *Fils*, 647 F.3d at 1276 n.2), and a reasonable officer using it once on a fleeing suspect on a grassy hill with some underbrush and no visible dangers or obstacles would not have known he was applying force that had a "substantial risk of causing death or serious bodily harm."  *Pruitt v. City of Montgomery, Ala.*, 771 F.2d 1475, 1479 n.10 (11th Cir. 1985); *see also United States v. Guilbert*, 692 F.2d 1340, 1343 (11th Cir. 1982) ("Whether an object constitutes a dangerous weapon turns not on the object's latent capability alone, but also on the matter in which the object was used.") (cleaned up).

This Court also erroneously relied on *Bradley* for another reason: it focused on *Bradley*'s holding that tasing a suspect at an "elevated height" was an application of deadly force, *Bradley*, 10 F.4th at 1241, but that holding does not apply here because Mr. Blasingame was not at an "elevated height" in the way that the suspect was in *Bradley*.  The Court explained that *Bradley* held that an officer violates a suspect's clearly-established Fourth Amendment rights "by tasing the suspect when he was on an elevated and precarious surface," Doc. 177 at 34, and that Mr. Blasingame was "on an elevated, precarious surface" when Officer Grubbs tased him, and therefore Officer Grubbs used excessive force.  *Id*. at 34.  But having both feet on the ground of a grassy hill, with no open hazards is inherently different from

the "elevated height" in *Bradley*. In *Bradley*, the "elevated height" was an "eight-foot-high concrete wall." 10 F.4th at 1236. And in the other cases *Bradley* cites or references, the "elevated height[s]" included a second story window, *Peroza-Benitez v. Smith*, 994 F.3d 157, 162 (3d Cir. 2021); a "small, unenclosed ledge ten feet off the ground," *Negron v. City of New York*, 976 F. Supp. 2d 360, 368 (E.D.N.Y. 2013); a "narrow second-story ledge/roof," *Rockwell v. Rawlins*, No. 13-cv-3049, 2014 WL 5426716, at *4 (D. Md. Oct. 23, 2014); an eight-foot fence, *Peabody v. Perry Twp.*, No. 10-cv-1078, 2013 WL 1327026, at *5–7 (S.D. Oh. Mar. 29, 2013); and a platform fifteen feet in the air, *Cook v. Riley*, No. 11-cv-24, 2012 WL 2239743, at *12 (M.D.N.C. June 15, 2012). *Bradley*, 10 F.4th at 1241 (citing *Peroza-Benitez*, 994 F.3d at 168); *see also Peroza-Benitez*, 994 F.3d at 168 (collecting cases).

These "elevated surfaces" are inherently different from the hill in this case, where Mr. Blasingame was not "elevated" on a raised surface but was standing on ground level. Further, the elevated surfaces in *Bradley* and the other cases were openly hazardous or apparently dangerous to the officer at the scene. An eight-foot fence or wall, or any kind of ledge is apparently treacherous and any application of force that caused a fall would be deadly force to a reasonable officer. In contrast, a grassy hill without any visible hazards, such as large rocks or a utility box or telephone pole, does not present the same apparent environmental hazard that could turn any application of force into deadly force.

The Court also erred when it held that Officer Grubbs used excessive force in his attempt to seize Mr. Blasingame. To determine whether an officer used reasonable force to seize a person, courts consider "whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor,* 490 U.S. 386, 396, (1989). This is an objective inquiry "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1326 (11th Cir. 2015) (quotation omitted). Further, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97.

The Eleventh Circuit has laid out several guidelines for whether an arresting officer's use of a taser is reasonable. When a suspect "appears hostile, belligerent, and uncooperative, use of a taser might be preferable to a physical struggle causing serious harm to the suspect or the officer." *Fils v. City of Aventura*, 647 F.3d 1272, 1290 (11th Cir. 2011) (quotation omitted). But unprovoked taser use against a "non-hostile and non-violent suspect who has not disobeyed instructions" violates the Fourth Amendment. *Smith v. LePage*, 834 F.3d 1285, 1294 (11th Cir. 2016) (citation omitted); *see also Wate v. Kubler*, 839 F.3d 1012 (11th Cir. 2016)

12

(continued use of taser on arrestee after he was subdued and compliant violated Fourth Amendment).

The Court's analysis employed "the 20/20 vision of hindsight." *Weiland*, 792 F.3d at 1326. The Court applied only the broad *Graham* factors—and did not consider any of this Court's subsequent caselaw applying those factors to taser incidents—under which, Officer Grubbs' use of force was reasonable. The entire incident took place in less than a minute. Tr. 1090:3–6. Officer Grubbs made a "split-second judgment" about the necessary amount of force, *Graham*, 490 U.S. at 396–97, that should not be judged "with the 20/20 vision of hindsight." *Weiland*, 792 F.3d at 1326. Mr. Blasingame was breaking the law and he "disobeyed instructions," *Smith*, 834 F.3d at 1294—he ran from an officer who was attempting to apprehend him, and he did not comply with Officer Grubbs' instructions to stop. Tr. 1051:11–18; 1087:10–18. Further, it was undisputed at trial that, from where he stood, Officer Grubbs could not see the power box or the bottom of the hill, but he knew that the hill sloped downwards towards another road. *Id*. 538:23–539:5; 1089:4–12; 1090:16–1091:1. As a result, the power box and concrete pad—the situational hazard that injured Mr. Blasingame—was not apparent to a reasonable officer at the scene. Lastly, Mr. Blasingame, at the time was on solid ground, not in an elevated position. Tasing Mr. Blasingame, who "appear[ed] . . . uncooperative" and actively fled arrest was not an unreasonable decision. *Fils*, 647 F.3d at 1290.

13

## V. CONCLUSION

For the reasons stated above and pursuant to Rule 59(e), or in the alternative, Rule 60(b)(6), Officer Grubbs respectfully requests that the Court vacate its final judgment and find in favor of Officer Grubbs on all remaining counts.

Respectfully submitted this 16th of May, 2024.

*/s/ Staci J. Miller*
Staci J. Miller
Georgia Bar No.: 601594
City of Atlanta Law Department
55 Trinity Avenue, Suite 5000
Atlanta, GA 30303
Tel: 404.546.4100
sjmiller@atlantaga.gov


*/s/ James E. Dearing, Jr.*
James E. Dearing, Jr.
Georgia Bar. No.: 215090
1596 W. Cleveland Avenue, Suite 102
East Point, GA 30344
404.870.0010 / tele
jdearing@jed-law.com

*/s/ Harold D. Melton*
Harold D. Melton
Georgia Bar No. 501570
Charles E. Peeler
Georgia Bar No. 570399
Kimberly D. Eason
Georgia Bar No. 428618
Elizabeth P. Waldbeser
Georgia Bar No. 430797
**TROUTMAN PEPPER HAMILTON SANDERS LLP**
600 Peachtree Street, N.E., Suite 3000
Atlanta, GA 30308
Telephone: (404) 885-3000
Facsimile: (404) 885-3900
harold.melton@troutman.com
charles.peeler@troutman.com
kimberly.eason@troutman.com
elizabeth.waldbeser@troutman.com

*Attorneys for Defendants Officer Grubbs and City of Atlanta*

## FONT CERTIFICATION

Pursuant to Local Rule 7.1D, I hereby certify that the foregoing document was prepared using Times New Roman 14-point type as provided in Local Rule 5.1.

                                            */s/ Harold D. Melton*
                                            Harold D. Melton
                                            Georgia Bar No. 501570

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on May 16, 2024, the foregoing was filed electronically with the Clerk of the Court using the CM/ECF system which sent notification to all counsel of record.

*/s/ Harold D. Melton*
Harold D. Melton
Georgia Bar No. 501570
