## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| KEITH EDWARDS, as guardian and conservator for JERRY BLASINGAME,<br><br>        Plaintiff,<br>v.<br><br>OFFICER J. GRUBBS, #6416, and CITY OF ATLANTA/ATLANTA POLICE DEPARTMENT,<br><br>        Defendants. | CIVIL ACTION NO.<br>1:19-cv-02047-SCJ |

## DEFENDANT OFFICER J. GRUBBS' MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR A NEW TRIAL AND MOTION FOR REMITTITUR OF PUNITIVE DAMAGES

Now Comes Defendant, Officer J. Grubbs ("Officer Grubbs"), by and through counsel, pursuant to Rules 59 and 60 of the Federal Rules of Civil Procedure, and hereby submits the following memorandum of fact and law in support of his motion for a new trial and, in the alternative, motion for remittitur of the punitive damages award against him.

## I.   <u>INTRODUCTION</u>

As the Court is aware, Officer Grubbs attempted to arrest Mr. Jerry Blasingame ("Mr. Blasingame") as he was panhandling by the side of a busy interstate in July 2018. As Mr. Blasingame fled from Officer Grubbs, Officer Grubbs deployed his taser one time to stop Mr. Blasingame's flight. In a tragic and

169059144v3

unforeseeable turn of events, Mr. Blasingame, who was running up a hill to escape from Officer Grubbs, rolled down the hill and into a metal utility box hidden from view at the base of the hill.  Mr. Blasingame was left paralyzed.

Officer Grubbs made a split-second decision to stop a fleeing suspect as the suspect ran near a dangerous highway; and yet, after a jury trial, the verdict against Officer Grubbs included $20 million in compensatory damages and $20 million in punitive damages.  The present motion seeks two alternative remedies to correct various errors that took place during and after the jury trial.

First, the Court should grant Officer Grubbs a new trial.  Two occurrences inflamed the passion and prejudice of the jury and impermissibly influenced an unprecedented $60 million verdict against the City and $40 million verdict against Officer Grubbs.  The two occurrences at trial warrant a mistrial: (1) the Court's reprimand of Defendants' counsel in the presence of the jury, and (2) Plaintiff's counsel's reference to Mr. Blasingame's financial condition during closing argument.  These events tainted the jury, making it impossible for Officer Grubbs to overcome their prejudicial effect.

Second, Officer Grubbs seeks remittitur of the punitive damages award.  At trial, the jury allowed passion to sway its judgment and imposed an excessive punitive damages award of $20 million against a common police officer.  Officer Grubbs requests that the Court use its discretion to vacate the $20 million punitive

2

damages award, or, alternatively, reduce the award to $250,000.00, which is more than sufficient to deter and punish the conduct at issue. Should the Court decline to use its discretion to vacate or reduce the award, Officer Grubbs moves for remittitur based on a violation of his Fourteenth Amendment right to due process.

## II. BACKGROUND

### A.   The Tasing Incident

On the afternoon of July 10, 2018, Officer Grubbs and his partner, Officer Shelley, were driving in their patrol car near Windsor Street and Interstate 20 in Atlanta when they noticed Mr. Blasingame panhandling on the shoulder of the road. *See* Trial Transcript ("Tr.") 854:10–25; 1086:20–25. Officer Grubbs then stopped to question Mr. Blasingame, but Mr. Blasingame turned and ran away on the shoulder of the highway ramp. Tr. 1087:4–12, 885:16–19. Officer Grubbs ran after Mr. Blasingame. Tr. 1087:13–14.

As Officer Grubbs approached Mr. Blasingame, Mr. Blasingame crossed over a roadside guardrail. Tr. 1054:3–11. Mr. Blasingame then moved his arm backwards at Officer Grubbs, a motion that Officer Grubbs later described as a "clearance strike." Tr. 1056:1–23. Concerned that Mr. Blasingame would flee into traffic on the other side of the road and endanger himself and nearby drivers, Officer Grubbs drew and discharged his taser at Mr. Blasingame. Tr. 1068:10–1069:1. The taser struck Mr. Blasingame, causing him to fall down a decline that was hidden to

3

Officer Grubbs at the time.  Tr. 538:23–539:5 (citing Exh. 39), 1075:14–1076:15, 1089:4–12.  Mr. Blasingame then hit his head on the concrete base of a utility box at the bottom of the incline, invisible to Officer Grubbs at the time.  As a result of the fall, Mr. Blasingame sustained injuries. Tr. 1274:7–1275:4. Officer Grubbs then checked on Mr. Blasingame, summoned first responders to provide medical assistance, attended to Mr. Blasingame, and called a supervisor to inform that supervisor of the tasing incident.  Tr 1078:16–1081:12, 1091:17–1093:8.  No more than 45 seconds elapsed from the time Officer Grubbs left his vehicle until the time he tased Mr. Blasingame.  Tr. 1090:3–6.  Shortly after, Mr. Blasingame was transported to a hospital where he was treated for his injuries.  Tr. 1079:13–23.

**B.** **The Jury Trial**

At trial, Plaintiff's counsel set forth their case in chief, alleging that both the City of Atlanta and Officer Grubbs (collectively, "Defendants") violated 42 U.S.C. § 1983. Tr. 109–132.  Relevant to this motion, the following events transpired:

**1.** **The Reprimand**

The Court issued a reprimand in front of the jury stating that Defendants' counsel did not follow discovery procedure when she did not provide evidence of Officer Grubbs' disciplinary history until a couple of weeks before trial.  Tr. 1028:12–1033:17.  The Court found that Ms. Miller's error was not done in bad faith.  Tr. 1031:20-21.  Plaintiff's counsel used the reprimand as part of his closing

argument to assert that the City of Atlanta and Officer Grubbs were a part of a "cover up." Tr. 1594:12–17.  Plaintiff's counsel stated,

> "Ms. Miller has, since the beginning of this case and the defense of this case – there's no question about a coverup.  It happened right in front of you in this courtroom when you found out I wasn't given documents on time.  It should have been given to me a year ago by the City of Atlanta Law Department.  The coverup is undeniable." *Id.*

### 2.    Plaintiff's Closing Argument

In addition to the statements outlined above, Plaintiff's counsel repeatedly referred to Mr. Blasingame as "homeless," and a "panhandler" whose life is "not worth one cent less [than] anybody else," such as "a rich doctor from Buckhead." Tr. 1580:1–6; *see also* Tr. 1552:17–20, 1555:4, 1558:17.

Ultimately, the jury held Officer Grubbs liable for violations of Mr. Blasingame's constitutional rights under 42 U.S.C. § 1983.  *See* Doc. 163.  Pursuant to that finding, the jury awarded $20 million in compensatory damages and $20 million in punitive damages against Officer Grubbs.  *Id.* at 2.  The jury also awarded $60 million in compensatory damages against the City of Atlanta.  *Id.*

## C.    Motions for Judgment

The City moved to vacate the $60 million verdict in its renewed motion for judgment as a matter of law.  *See* Docs. 155, 176.  Officer Grubbs also moved for judgment as a matter of law based upon qualified immunity.  *See id.*  The Court granted the City's motion, thereby vacating the $60 million verdict against the City.

*See* Doc. 177.  The Court denied Officer Grubbs' motion.  *Id.*  The Court held that a reasonable jury could have found that Officer Grubbs used excessive force against Mr. Blasingame and thereby violated his Fourth Amendment rights.  *Id.* at 30–32. The Court also held that Officer Grubbs' use of the taser was clearly established as a constitutional violation at the time it occurred, relying exclusively upon *Bradley v. Benton*, 10 F.4th 1232 (11th Cir. 2021).  *Id.* at 32–34.

Officer Grubbs timely appealed from the district court's order.  Doc. 178. Subsequently, Mr. Blasingame filed Motions for Relief Pursuant to Rule 60(b), *see* Docs. 187; 191, and Officer Grubbs filed a Motion for Relief from Judgment.  *See* Doc. 207.  The Court denied the Parties' motions.  Doc. 219.  Regarding Officer Grubbs' motion, the Court found 1) that Officer Grubbs' appeal divested the Court of jurisdiction of the punitive damages award and 2) Officer Grubb's Rule 60(b) motion was better classified as a Rule 59(e) motion, and under Rule 59(e) Officer Grubb untimely filed the motion after the 28-day filing deadline.  *Id.* at 15–17.  Mr. Blasingame then appealed the Court's order to the United States Court of Appeals for the Eleventh Circuit.  Doc. 226.

## D.    <u>Relevant Procedural Posture</u>

On February 15, 2024, the Eleventh Circuit denied both parties' appeals, finding that the District Court had not granted final judgment because Count II was improperly dismissed under Rule 41.  *Edwards v. Grubbs*, No. 22-13261, 2024 U.S.

App. LEXIS 3526 at *2–3 (11th Cir. Feb. 15, 2024).  Because there was no final judgment in the Court's September 14, 2022 Order and because Count II was still pending before the Court, Plaintiff moved to amend the complaint and request a final judgment.  Doc. 256.  The Court subsequently granted leave to amend and entered final judgment as to all counts on May 2, 2024.  Doc. 260.  The Second Amended Complaint was later docketed on May 10, 2024, containing one count for violations of 42 U.S.C. § 1983 against Officer Grubbs and the City of Atlanta.  Doc. 261.

The Court has now entered final judgment, and because this motion is filed within 28 days of such final judgment, this matter is now ripe for review pursuant to Rule 59(e), or in the alternate, Rule 60(b)(6).

### III.   STANDARD OF REVIEW

### A.   Rule 59(a) Standard for New Trial

Rule 59(a) authorizes a court to grant a new trial on all or some of the issues "for which a new trial has heretofore been granted in an action at law in federal court."  Federal courts have recognized that a new trial may be warranted when: "the verdict is against the weight of the evidence, [] the damages are excessive, or [], for other reasons, the trial was not fair . . . and may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury."  *McGinnis v. Am. Home Mortg. Servicing, Inc.*, 817 F.3d 1241, 1254 (11th Cir. 2016) (quoting *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940)).

7

Moreover, "a district court may, in its discretion, grant a new trial if in the court's opinion, the verdict is against the clear weight of the evidence or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." *Id.*

**B.**  **Rule 59(e) Standard for Alteration or Amendment of Judgment**

Under Rule 59(e), this Court may "alter or amend a judgment," Fed. R. Civ. P. 59(e), if the moving "party presents newly discovered evidence or demonstrates a manifest error of law or fact," *Marques v. JP Morgan Chase, N.A.*, 805 F. App'x 668 (11th Cir. 2020) (citing *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007)), or "where the judgment would result in manifest injustice[.]" *Daker v. Warren*, No. 1:10-CV-03815-RWS, 2012 WL 2403437 (N.D. Ga. June 25, 2012) (citing 11 Charles Alan Wright & Arthur R. Miller, *et al.*, Federal Practice and Procedure § 2810.1 (2d ed.)).  A "manifest injustice" results when the trial court had a "direct, obvious and observable" error. *McDaniel v. Am. Gen. Fin. Servs., Inc.*, No. 04-2667 B, 2007 WL 2084277 (W.D. Tenn. July 17, 2007).  To show a manifest injustice, a party "must demonstrate why the Court should reconsider its prior decision and set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision," *Calvo v. Walgreen Corp.*, No. 07-21398-CIV, 2009 WL 10666983 (S.D. Fla. Mar. 19, 2009) (citation omitted), or a "fundamental flaw . . . that without correction would lead to a result that is both inequitable and not in line with

8

applicable policy." *Bey v. Weisenburger*, No. 3:23 CV 356, 2023 WL 6199755, at *2 (N.D. Ohio Sept. 22, 2023).

## C. **Rule 60(b)(6) Relief from Final Judgment.**

A party may seek relief from a final judgment or order under Federal Rule of Civil Procedure 60(b)(6) for "any other reason that justifies relief." A trial court has wide discretion to consider whether to grant the requested relief under Rule 60(b)(6), *see Kolawole v. Sellers*, 863 F.3d 1361, 1373 (11th Cir. 2017), and the moving party must show "sufficiently extraordinary" circumstances such that "extreme and unexpected hardship" will result absent said relief. *Doe v. Drummond Co.*, 782 F.3d 576, 612 (11th Cir. 2015) (citation and quotation marks omitted).

Circuit courts of appeals have found that "an award of excessive and unconstitutional punitive damages in and of itself presents exceptional circumstances" warranting relief under Rule 60(b)(6). *See Watkins v. Lundell*, 169 F.3d 540, 545 (8th Cir. 1999). This is because "[p]rocedural and substantive strictures are necessary to ensure that punitive damage awards, which are proxy for punishment and deterrence, comply with constitutional requirements." *Id.*

## IV.   ARGUMENT

## A. **Officer Grubbs is entitled to a New Trial.**

### 1.   **The Reprimand**

The Court's reprimand of Defendants' counsel, Staci Miller, in the presence

of the jury necessitates a new trial.  As an initial matter, Defendant does not take lightly that he is asking the Court to consider the prejudicial impact of something the Court said to the jury.  But an objective review of the reprimand warrants a new trial because "[j]uries are extremely sensitive to every word and intimation given by the judge." *United States v. Cox*, 664 F.2d 257, 259 (11th Cir. 1981).  And when a judge's conduct shows frustration towards one of the parties rather than neutrality, the impacted party is denied a constitutionally fair trial.  *See United States v. Harris*, 720 F.2d 1259, 1262 (11th Cir. 1983) ("Only when the judge's conduct strays from neutrality is the defendant thereby denied a constitutionally fair trial.").

At trial, during cross examination of Officer Grubbs, Plaintiff's counsel claimed to have just discovered evidence pertaining to Officer Grubbs' disciplinary records concerning the tasing incident. Tr. 977:24–979:24.  Plaintiff's counsel stated he received documents related to this discipline history two weeks before trial,  Tr. 1015:6-17, and moved for default on that basis.  Tr. 1000:8–10.  Although the documents were likely in the Atlanta Police Department's possession since June 2021, Tr. 1030:14–16, counsel for Defendants did not request and receive the documents at issue until August 1, 2022. Tr. 1031:22–24.  Defendants' counsel then provided the documents to Plaintiff's counsel within 48 hours of receipt.  Tr. 1007:19–20.  The Court characterized the delay in receiving and transmitting the discipline history as a "discovery violation."  Tr. 1010:16.

10

In support of Plaintiff's motion for default, Plaintiff's counsel argued that Plaintiff would be prejudiced by the delay largely because he had repeatedly told the jury that Officer Grubbs had never been disciplined for the tasing incident.  Tr. 1000:12–18; Tr. 1001:9–1004:23.  The Court denied Plaintiff's motion for default, but informed the parties that it would reprimand Attorney Miller in the presence of the jury.  Defendants' counsel objected to the reprimand (Tr. 1024:18–1025:7); however, the Court proceeded to reprimand Defendant's counsel in the front of the jury (Tr. 1031:14–1032:1).

Reprimands in the presence of the jury are to be used only if necessary to maintain control of the proceeding.  *United States v. Mackay*, 491 F.2d 616, 622 (10th Cir. 1973); *see also Lacaze v. United States*, 391 F.2d 516 (5th Cir. 1968) (finding that a district court committed reversible error by its reprimand of counsel for appellants in the presence of the jury).  There was no lack of—or even a threat to—control here, as the Court's reprimand regarded an alleged discovery dispute.  Tr. 1030:1-1033:7.  In fact, during the reprimand, the Court stated "I don't find that [the discovery violation] was done in bad faith," which further obviated the need for a reprimand in the presence of the jury.  Tr. 1031:20-21.

To remedy the impact of Plaintiff's counsel's prior statements to the jury about Officer Grubbs' disciplinary history, the Court could have issued a curative instruction to the jury without a reprimand.  The instruction would have explained

11

the delay, explained that Plaintiff's counsel is not to be held responsible for not knowing about the disciplinary history, and sufficiently resolved Plaintiff's prejudice concerns. Indeed, as further evidence that the reprimand was not necessary to remedy any perceived prejudice to Plaintiff, prior to issuing its reprimand, the Court expressly stated "I'm going to give the reprimand because to not give it, in my opinion, . . . is to discourage this kind of behavior." Tr. 1026:6–8. But the Court had several options to "discourage" the alleged discovery violation—including a private reprimand or sanctions—any one of which would avoid tainting the juries' opinion of Defendants' counsel. Instead, the Court issued a reprimand that prejudiced Defendants.

As evidence of the prejudicial impact of the reprimand, in Plaintiff's counsel's closing argument he used the reprimand in furtherance of an otherwise wholly unsupported theory that the City of Atlanta's Law Department was involved in a "coverup." Tr. 1594:12–17. Plaintiff's counsel stated,

> "Ms. Miller has, since the beginning of this case and the defense of this case – there's no question about a coverup. It happened right in front of you in this courtroom when you found out I wasn't given documents on time. It should have been given to me a year ago by the City of Atlanta Law Department. The coverup is undeniable." *Id.*

The baseless accusations of a cover up started with the Court's reprimand, which led to this improper and inflammatory argument. Accordingly, the reprimand permeated through the trial and played a role in inflaming the passions of the jury to

12

ultimately hand down a $100 million verdict for a tasing incident.

### 2.    Plaintiff's Improper Closing Argument

As an initial matter, Defendant recognizes that counsel did not immediately object to the arguments Plaintiff's counsel set forth at closing.  But in the Eleventh Circuit, "where the interest of substantial justice is at stake, improper argument may be the basis for a new trial even if no objection has been raised." *McWhorter v. City of Birmingham*, 906 F.2d 674, 677 (11th Cir. 1990) (quotation omitted); *see also Christopher v. Florida*, 449 F.3d 1360, 1366 (11th Cir. 2006); *Oxford Furniture Companies, Inc. v. Drexel Heritage Furnishings, Inc.*, 984 F.2d 1118, 1128 (11th Cir. 1993).

Here, Plaintiff's counsel impermissibly referenced Plaintiff's poor financial condition multiple times at closing, which has been categorically prohibited by federal courts.  *See United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 239, (1940) ("[A]ppeals to class prejudice are highly improper and cannot be condoned and trial courts should ever be alert to prevent them."); *Garcia v. Sam Tanksley Trucking, Inc.*, 708 F.2d 519, 522 (10th Cir. 1983) ("Reference to the wealth or poverty of either party, or reflection on financial disparity, is clearly improper argument."); *Brown v. Coleman Co.*, No. CIV-06-403, 2007 U.S. Dist. LEXIS 96221, at *3 (D.N.M. Sept. 17, 2007) ("Generally, any reference to the wealth or poverty of either party, or reflection on financial disparity, is improper argument.").

169059144v3

Plaintiff's counsel stated that Mr. Blasingame was a "panhandler," "homeless," and that his life is "not worth one cent less [than] anybody else," such as "a rich doctor from Buckhead."  Tr. 1580:1–6; *see also* Tr. 1552:17–20, 1555:4, 1558:17.  This improper argument prejudiced Officer Grubbs by unlawfully playing on the sentiments of the jury concerning Plaintiff's financial status.  Counsel's closing argument was "plainly unwarranted and clearly injurious," warranting a new trial. *Hilger v. Velazquez*, 613 F. App'x 775, 776 (11th Cir. 2015).

**B.**     **The Punitive Damages Award is Grossly Excessive and Shocks the Conscience.**

The punitive damages award of $20 million should be eliminated altogether, or alternatively, substantially reduced.  When an award is "so gross or inordinately large as to be contrary to right reason," this Circuit permits judicial intervention. *Machado v. States Marine-Isthmian Agency, Inc.*, 411 F.2d 584, 586 (5th Cir. 1969). But "[t]he Court 'will not disturb an award unless there is a clear showing that the verdict is excessive as a matter of law.'  To be overturned, the award must be 'grossly excessive' or 'shocking to the conscience.'"  *Trezevant v. Tampa*, 741 F.2d 336, 341 (11th Cir. 1984) (quoting *Anderson v. Eagle Motor Lines, Inc.*, 423 F.2d 81, 85 (5th Cir. 1970) and *La-Forest v. Autoridad de las Fuentes Fluviales*, 536 F.2d 443 (1st Cir. 1976)).  Here, the jury imposed a $20 million punitive damages award against a police officer who tased a fleeing suspect.  This award is excessive.

Evidence at trial shows the punitive award against Officer Grubbs shocks the

14

judicial conscience for three reasons: 1) Plaintiff's compensatory award is high enough such that the punitive award far exceeds the amount necessary to punish and deter Officer Grubbs for his conduct; 2) the punitive award amount demonstrates "passion, prejudice, corruption or other improper cause invaded the trial," *Murphy v. Flagler Beach*, 846 F.2d 1306, 1310 (11th Cir. 1998); and 3) comparable defendants received far lesser punitive damages against them.

### 1. The Sufficiency of the Plaintiff's Compensatory Award.

In *State Farm Mutual Auto Insurance Company v. Campbell*, the United States Supreme Court explained that "[i]t should be presumed a plaintiff has been made whole for his injuries by compensatory damages, so punitive damages should only be awarded if the defendant's culpability, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence." 538 U.S. 408, 419 (2003). As such, courts must look to the plaintiff's compensatory award first and compare it with the defendant's conduct to determine if an award is warranted beyond compensatory damages. *Id.*; *see also Williams v. First Advantage LNS Screening Solutions, Inc.*, 947 F.3d 735, 750–51 (11th Cir. 2020).

Here, Plaintiff's compensatory award alone is $20 million. *See* Doc. 163 at 2. In *Simmons v. Bradshaw*, no punitive damages were awarded against a police officer accused of violating that plaintiff's constitutional rights under § 1983 by

15

stopping plaintiff during a traffic stop and then shooting the compliant, unarmed plaintiff (with a gun, not a taser) four times.[1]  No. 14-80425-CIV-COHN/SELTZER (S.D. Fla. 2016) (Doc. Nos. 32, 287).  That plaintiff was also rendered a paraplegic on account of the injuries he sustained during the shooting.  *Id*.  Before the Eleventh Circuit vacated the verdict, a jury awarded approximately $23 million in compensatory damages against both the officer in his individual capacity and the sheriff in his official capacity.  *Id*.  The *Simmons* case demonstrates that even after the more reprehensible conduct of shooting a compliant, unarmed suspect four times, the $23 million compensatory damages verdict would be sufficient punishment and deterrence.

"Punitive damages do not compensate plaintiffs for injuries suffered . . . . Rather, their purpose 'is to punish the defendant for his willful or malicious conduct and to deter others from similar behavior.'"  *Hoever v. Marks*, 993 F.3d 1353, 1358–59 (11th Cir. 2021) (internal citations omitted).  In this case, a $20 million compensatory damages verdict is sufficient punishment and deterrence against a police officer.  Such an astonishing sum has few rivals, as discussed *infra*, and any added punitive damages would "destroy[]" Officer Grubbs.  *Arceneaux v. Merrill*

---

[1] Significantly, the Eleventh Circuit reversed the verdict against the police officer in this case and remanded for a new trial, finding that the officer "was not afforded the opportunity to have his claimed defense of qualified immunity determined by the court."  *Simmons v. Bradshaw*, 879 F.3d 1157 (11th Cir. 2018).

16

*Lynch, Pierce, Fenner & Smith, Inc.*, 767 F.2d 1498, 1503 (11th Cir. 1985). Accordingly, a verdict of $20 million in compensatory damages is already sufficient deterrence and punishment.

Moreover, it is "'common knowledge' that police officers 'don't make a lot of money.'" *Gordon v. Norman*, 788 F.2d 1194, 1199–1200 (6th Cir. 1986). The Court may consider this common knowledge even in the absence of evidence as to Officer Grubbs' financial condition. *See id.* (where the United States Court of Appeals for the Sixth Circuit did not find error in the trial judge's decision to reduce a punitive damages award against an officer despite no evidence of the officer's financial condition in the record). There is simply no indication that more than the $20 million in compensatory damages is needed to sufficiently punish or deter Officer Grubbs in the future.[2]

## 2. Passion and Prejudice Invaded the Trial.

A hallmark of an excessive verdict is one that raises "an irresistible inference that passion, prejudice, corruption or other improper cause invaded the trial." *Murphy v. Flagler Beach*, 846 F.2d 1306, 1310 (11th Cir. 1988) (citation omitted). Other courts have vacated punitive damages awards and ordered a new trial when

---

[2] In fact, had Plaintiff pursued his case in state court under Georgia law, Plaintiff's punitive damages claim would have been limited to $250,000.00. *See* O.C.G.A. § 51-12-5.1(g) (limiting punitive damages to $250,000 for torts absent a few narrow exceptions, none of which apply in the instant case).

the "figure appears to have been plucked from the air." *Malandris v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 703 F.2d 1152, 1183 (10th Cir. 1981) (finding $3 million in punitive damages excessive and unsupported by the record evidence). Here, the events that transpired at trial evoked the jury's passion and created such a stir as to raise such an irresistible inference that passion and prejudice invaded the trial.

In addition to the Court's reprimand of Defendants' counsel and Plaintiff's counsel's improper arguments at closing, passion and prejudice occurred because Mr. Blasingame's injuries were both severe and very unfortunate. The jury watched a "day in the life" video that detailed Mr. Blasingame's very limited mobility and need for around-the-clock care. Tr. 714:7–715:2. The jury also saw images of the pool of blood around the concrete slab where Mr. Blasingame hit his head. Tr. 557:2–11 (citing Exh. 39). One cannot help but have sympathy towards Mr. Blasingame due to his injuries. But taken together, these and other events at trial triggered an emotional response from the jury amounting to $60 million in compensatory damages against the City and a total of $40 million against Officer Grubbs. Indeed, in Plaintiff's closing arguments, counsel only identified approximately $22 million for past and future economic damages plus a request for pain and suffering. Tr. 1578:1–1580:25. The jury then awarded a total of $80 million for compensatory damages plus another $20 million in punitive damages

against Officer Grubbs. But Plaintiff can point to no evidence justifying a $20 million punitive damages award against a salaried police officer. Indeed, the next-highest punitive damages award in this circuit against a police officer for a Section 1983 violation is $2.5 million, awarded against officer who coerced a confession for rape and murder from a minor who was subsequently exonerated by DNA evidence. *Spadaro v City of Miramar*, No. 0:11-cv-61607-JIC (S.D. Fla. Mar. 27, 2013) (Doc. No. 444) (aff'd on appeal at Doc. Nos. 547 and 548). The excessive nature of the award creates an irresistible inference that the jury verdict was tainted by passion as opposed to any articulable evidence of a sufficient punitive damages amount.

### 3. Comparable Cases Show Far Less in Punitive Damages Awards.

Perhaps the best indicium that Officer Grubbs' punitive damages award shocks the judicial conscience is that his conduct is far less deplorable than the conduct at issue in other cases with similarly high punitive damages awards. On July 10, 2018, Officer Grubbs stopped his patrol car across a busy roadway and approached Mr. Blasingame to ask why he was standing on the side of the highway. Tr. 1048:21–25, 1087:4–9. Rather than comply, Mr. Blasingame ran, and Officer Grubbs chased after and called for Mr. Blasingame to stop. Tr. 1051:11–18, 1087:10–18. Mr. Blasingame then crossed over a roadside guardrail and moved his arm backwards at Officer Grubbs, who had caught up to him by this point. Tr. 1054:18–22, 1056:1–23. Mr. Blasingame went down a decline on the other side of

the guardrail, and, concerned Mr. Blasingame would flee into traffic on the road at the bottom of this decline, Officer Grubbs drew and discharged his taser at Mr. Blasingame.  Tr. 1064:10–15, 1066:6–10, 1068:10–1069:1.  Mr. Blasingame fell down the rest of the decline and struck his head on the concrete base of a utility box at the bottom, suffering severe injuries.  Tr. 538:23–539:5, 1075:14–1076:15, 1274:7–1275:4.  Officer Grubbs could not see the steepness of the decline when he fired the taser.  Tr. 1089:4–12.  Moreover, Officer Grubbs was unaware of the utility box or concrete slab at the bottom of the decline.  *Id.*  Officer Grubbs then checked on Mr. Blasingame, summoned first responders to provide medical assistance, attended to Mr. Blasingame, and called a supervisor to inform that supervisor of the tasing incident.  Tr 1078:16–1081:12, 1091:17–1093:8.  From the time Officer Grubbs left his vehicle until the time he tased Mr. Blasingame, no more than 45 seconds elapsed.  Tr. 1090:3–6.

In comparison, other cases with higher degrees of reprehensibility have received *much* lower punitive damages awards.  For example, in *Sarah C. Dozier v. City of Atlanta*, the Court approved a settlement of $4.9 million where several police officers mortally wounded an elderly woman during an entry pursuant to a no-knock warrant at her residence.  No. 1:08-cv-00007-MHS (N.D. Ga. Sept. 02, 2010).  And in *Jennings v. Fuller*, the trial court reduced a $17.63 million compensatory and $19 million punitive damages award to $5 million and $6 million, respectively, where

five police officers beat, dragged, pepper-sprayed, and placed a hood over the plaintiff in a jail cell. *See* 2017 WL 2242357, at *4–10 (E.D. Mich. May 23, 2017). A non-exhaustive list of Eleventh Circuit cases concerning Section 1983 cases involving a police officer's conduct shows just how extreme Officer Grubbs' punitive damages award is compared to these cases involving far more reprehensible conduct:

- ***Spadaro v City of Miramar*, No. 11-cv-61607-JIC (S.D. Fla. 2013)** – Court awarded $2.5 million and $2 million in punitive damages against two officers, respectively, for coercing a confession for rape and murder from a minor who was subsequently exonerated by DNA evidence.

- ***Doe 1 et al. v. City of Lauderhill*, No. 0:14-cv-61466-KMW (S.D. Fla. 2015)** – Court awarded $800,000 and $900,000 in punitive damages against two officers, respectively, for forcing plaintiffs to pull into an abandoned lot where the police officers raped and sexually assaulted them.

- ***K.J.C. v. City of Montgomery*, 2:17-cv-00091-ALB-SMD (M.D. Ala. 2020)** – Court awarded $500,000 in punitive damages against a police officer after plaintiff, an intellectually disabled woman, called 911 to report a missing medical device and the responding officer anally raped the plaintiff and made her promise not to tell anyone.

- ***Lucas v. City of Braswell*, No. 4:10-cv-00030-HLM (N.D. Ga. 2010)** – Court awarded $440,000 in punitive damages against police officers after the officers conspired to have plaintiff falsely arrested and maliciously prosecuted.

- ***Bonner v. Carlisle*, No. 2:21-cv-00334-MHH (N.D. Ala. 2021)** – Court awarded $350,000 in punitive damages against a police officer accused of sexually assaulting the plaintiff under the guise of conducting a follow up interview.[3]

---

[3] There is one additional Section 1983 case that awards $10 million in punitive damages against an Alabama Alcoholic Beverage Control Board enforcement officer (not a police officer) for

169059144v3

In comparison, the jury's punitive damages award against Officer Grubbs' is eight times that of the closest punitive damages award against a police officer in the Eleventh Circuit.  This is an extraordinary circumstance warranting vacatur or, in the alternative, a substantial reduction.

## C.     The Punitive Damages Award Violates Due Process

Additionally, the $20 million punitive damages award violates Officer Grubbs' Fourteenth Amendment right to due process and warrants a constitutional reduction.  *See BMW of N. Am. v. Gore*, 517 U.S. 559 (1996).  "[W]hen an award can fairly be categorized as 'grossly excessive' . . . it enter[s] the zone of arbitrariness that violates the Due Process Clause of the Fourteenth Amendment."  *Id*. at 568.  "Unlike a remittitur, which is discretionary with the court and which [the Eleventh Circuit] review[s] for an abuse of discretion, a court has a mandatory duty to correct an unconstitutionally excessive verdict so that it conforms to the requirements of the due process clause."  *Johansen v. Combustion Eng'g, Inc.*, 170 F.3d 1320, 1331 (11th Cir. 1999) (citations omitted).  In *Gore*, the Supreme Court provided three guideposts to determine whether such a reduction is warranted: (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3)

---

repeatedly raping the 11-year-old plaintiff and maintaining pornographic images of the plaintiff for two years.  *See S.T. v. Isbell*, No. 2:09cv616-MHT (M.D. Ala. 2010).  The ABC enforcement officer pled guilty to sexual abuse charges and was incarcerated at the time of trial.  *Id*.

22

the difference between the punitive damages awarded by the jury and the civil or criminal penalties authorized or imposed in comparable cases.  517 U.S. at 575, 583; *Bogle v. McClure*, 332 F.3d 1347, 1360 (11th Cir. 2003).  The punitive damages award here warrants reduction under guideposts one and three.

### 1.    Reprehensibility.

As the Supreme Court noted in *Gore*, the degree of the defendant's reprehensibility is "[p]erhaps the most important indicium of the reasonableness of a punitive damages award."  517 U.S. at 575.  This means that "the punitive damages should be roughly proportionate to the enormity or gravity of the offense."  *Watkins*, 169 F.3d at 546.  To develop any sort of proportion as to the appropriate punitive damages compared to the gravity of the offense, it is important to compare Officer Grubbs' conduct against other defendants, as well as the punitive damages assessed in similar cases.  *See, e.g.*, *Disorbo v. Hoy*, 343 F.3d 172, 188 (2d Cir. 2003) ("To determine the appropriate level of punitive damages, we assess such awards in other police misconduct cases.").

As noted above, Officer Grubbs' conduct in tasing a fleeing suspect is far less reprehensible than the cited Section 1983 cases for beating up an inmate, gunning down an elderly woman during an entry pursuant to a no-knock warrant, rape, or coercing a confession.  Indeed, the most comparable case has ***no*** punitive damages award  and  includes  the  more  reprehensible  conduct  of  shooting  a  compliant,

unarmed suspect four times. *See Simmons v. Bradshaw*, No. 14-80425-CIV-COHN/SELTZER. If the Court were to evaluate the punitive damages award without comparing it to similar cases, the Court would be left with attempting to justify a $20 million punitive damages award that is unsupported by the record. The parties proffered no evidence as to an articulable dollar amount sufficient to punish and deter Officer Grubbs' conduct. And, as discussed above, the $20 million compensatory damages award is already sufficient to punish and deter a salaried police officer.

### 2.    Comparable Civil Penalties.

The Supreme Court in *Gore* also instructed courts to compare punitive damages to comparable civil or criminal penalties. *See Gore*, 517 U.S. at 583. Here, there are two comparable penalties for the court to consider. First, if Officer Grubbs was charged with deprivation of rights under the color of law pursuant to 18 U.S.C. § 242, the maximum fine he could have received would have been $250,000.00. *See* 18 U.S.C. § 3571(b)(3). Second, had Plaintiff been able to pursue his criminal charges against Officer Grubbs for assault and battery, O.C.G.A. § 51-12-5.1(g) would have governed the imposition of civil penalties. Under that section, "for any tort action . . . [other than personal injury products liability torts or specific intent torts] in which . . . punitive damages are . . . awarded, the amount which may be awarded in the case shall be limited to a maximum of $250,000.00." There is no

24

evidence suggesting Officer Grubbs acted with the specific intent to cause harm when he fired his taser at Mr. Blasingame, and, as such, the comparable punitive damage amount would be $250,000.00.

Accordingly, the two comparable statutory penalties limit recovery to $250,000.00. Comparing $20 million in assessed punitive damages to the $250,000.00 in civil penalties produces a ratio of 80:1, showing the "monetary comparisons are wide" and counselling reduction. *Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 23 (1991). Taking guideposts one and three into consideration, Officer Grubbs requests that the Court vacate the punitive damages award altogether in light of the $20 million compensatory damages already awarded. Alternatively, Officer Grubbs asks that the court reduce the punitive damages award to no more than $250,000.00.

## V.   <u>CONCLUSION</u>

For the reasons stated above and pursuant to Rule 59 (a)  and (e), or in the alternate, Rule 60(b), Officer Grubbs respectfully requests that the Court grant a new trial or, in the alternate, vacate the punitive damages award or reduce Officer Grubbs' punitive damages award to no more than $250,000.00.

169059144v3

Respectfully submitted this 16th of May, 2024.

*/s/ Staci J. Miller*
Staci J. Miller
Georgia Bar No.: 601594
City of Atlanta Law Department
55 Trinity Avenue, Suite 5000
Atlanta, GA 30303
Tel: 404.546.4100
sjmiller@atlantaga.gov

*/s/ Harold D. Melton*
Harold D. Melton
Georgia Bar No. 501570
Charles E. Peeler
Georgia Bar No. 570399
Kimberly D. Eason
Georgia Bar No. 428618
Elizabeth P. Waldbeser
Georgia Bar No. 430797

*/s/ James E. Dearing, Jr.*
James E. Dearing, Jr.
Georgia Bar. No.: 215090
1596 W. Cleveland Avenue, Suite 102
East Point, GA 30344
404.870.0010 / tele
jdearing@jed-law.com

**TROUTMAN PEPPER HAMILTON SANDERS LLP**
600 Peachtree Street, N.E., Suite 3000
Atlanta, GA 30308
Telephone: (404) 885-3000
Facsimile: (404) 885-3900
harold.melton@troutman.com
charles.peeler@troutman.com
kimberly.eason@troutman.com
elizabeth.waldbeser@troutman.com

*Attorneys for Defendants Officer Grubbs and City of Atlanta*

## FONT CERTIFICATION

Pursuant to Local Rule 7.1D, I hereby certify that the foregoing document was prepared using Times New Roman 14-point type as provided in Local Rule 5.1.

*/s/ Harold D. Melton*

169059144v3

Harold D. Melton
Georgia Bar No. 501570

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on May 16, 2024, the foregoing was filed electronically with the Clerk of the Court using the CM/ECF system which sent notification to all counsel of record.

*/s/ Harold D. Melton*
Harold D. Melton
Georgia Bar No. 501570