**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| KEITH EDWARDS, as guardian and conservator for JERRY BLASINGAME,<br><br>          Plaintiff,<br>v.<br><br>OFFICER J. GRUBBS, #6416, and CITY OF ATLANTA/ATLANTA POLICE DEPARTMENT,<br><br>          Defendants. | CIVIL ACTION NO.<br>1:19-cv-02047-SCJ |

**DEFENDANT OFFICER J. GRUBBS' REPLY IN SUPPORT OF HIS
MOTION FOR A NEW TRIAL AND MOTION FOR REMITTITUR OF
PUNITIVE DAMAGES**

Now Comes Defendant, Officer J. Grubbs ("Officer Grubbs"), by and through

counsel, pursuant to Rules 59 and 60 of the Federal Rules of Civil Procedure, and

hereby submits this Reply in support of his motion for a new trial and, in the

alternative, motion for remittitur of the punitive damages award against him.

## I.     INTRODUCTION

Plaintiff's response to Defendant's motion for a new trial and, in the

alternative, motion for remittitur of the punitive damages award (the "Response")

attempts to establish procedural faux pas where none exist.  For the reasons stated

below, the Court may permissibly rule in Officer Grubbs' favor pursuant to its

authority vested under Rules 59 and 60 of the Federal Rules of Civil Procedure.

1

Concerning the substance of Officer Grubbs' request for a new trial, both the reprimand of Attorney Miller and counsel's repeated references to Mr. Blasingame's financial condition warrant a new trial.  Plaintiff argues that the reprimand was fair due to the Court's limiting instruction, stating that the jury should not consider the reprimand when evaluating the merits of the case.  However, the clearest indication of the reprimand's prejudicial nature is that even Plaintiff's counsel—an officer of the court—could not adhere to the Court's limiting instruction.  Plaintiff's counsel impermissibly used the reprimand to advance his theory of a "coverup." Accordingly, the Court cannot expect that the lay persons within the jury adhered to the Court's limiting instruction when Plaintiff's counsel could not do the same.  As for counsel's inappropriate references to Mr. Blasingame's financial condition, there can be no permissible purpose which justifies references to Mr. Blasingame's homelessness and statements that his life should be valued the same as "a rich doctor from Buckhead."

Finally, regarding the punitive damages award, at no point does Plaintiff attempt to justify a $20 million punitive damages verdict against a salaried police officer who tased a fleeing suspect.  Plaintiff avoids the simple truth that a $20 million punitive damages verdict under these circumstances is both unprecedented and unwarranted.  For the reasons stated below, the Court should grant Officer Grubbs' motion for a new trial, or alternatively, remittitur of the punitive damages

award.

## II.    <u>ARGUMENT</u>

**A.    <u>Plaintiff's Allegations of Untimeliness Under Rules 50 and 59 Are Improper as a Matter of Law</u>**

Plaintiff claims that the present motion is untimely under Rule 59(e), which requires parties to file any motion to alter or amend a judgment within 28 days of the judgment. (Dkt. No. 264 at 12.) Accordingly, Plaintiff argues that because the Court entered the initial judgment on September 22, 2022, Officer Grubbs had until October 20, 2022 to file their Rule 59 motion(s). *Id*. Plaintiff then acknowledges that the United States Court of Appeals for the Eleventh Circuit remanded this case in February 2024, finding that no final adjudication of Count II of the First Amended Complaint had yet occurred. *Id*. However, Plaintiff argues that "in order to produce a final order, all that needed to be done was to grant Plaintiff's unopposed motion to amend his complaint." *Id*. Without citing any supporting case law, Plaintiff argues that the Court should not consider the present motion because the September 22, 2022 judgment "has not been modified in any way since that time." *Id*. at 13.

Plaintiff's timeliness arguments are flawed for several reasons. First, after the parties completed extensive briefing on the merits of their respective appeals, the Eleventh Circuit specifically held that "[w]e do not have jurisdiction over this appeal [] because there is no final judgment." (Dkt. No. 251 at 4.) Accordingly, because

the Eleventh Circuit has already held that no final judgment had been entered in this case, any claim that the September 22, 2022 Order was a final judgment is incorrect as a matter of law.

Second, Plaintiff's argument that merely substituting the First Amended Complaint with the Second Amended Complaint to remove Count II somehow creates a final judgment is counterintuitive.  No final judgment had been entered as of February 15, 2024, the date on which the Eleventh Circuit issued its opinion.  The act of substituting a complaint does not retroactively establish a final order.  If this were the case, then the parties would be presently unable to appeal the September 22, 2022 Order as this, too, would be untimely.  Instead, it is well established that prior, non-final orders are included within—and made appealable by—entry of a final order.  *Barfield v. Brierton*, 883 F.2d 923, 930 (11th Cir. 1989) ("[S]ince only a final judgment or order is appealable, the appeal from a final judgment draws in question all prior non-final orders and rulings which produced the judgment.").

And last, after the Eleventh Circuit issued its remand order, Plaintiff specifically moved the Court to enter final judgment in this case.  Indeed, the header of Plaintiff's motion reads, "PLAINTIFF'S UNOPPOSED MOTION FOR LEAVE TO FILE HIS SECOND AMENDED COMPLAINT AND FOR ENTRY OF FINAL JUDGMENT."  (Dkt. No. 256 at 1.)  Plaintiff cannot seek a final judgment, on one hand, and then claim that a final judgment had already been entered, on the

4

other. The Court ultimately entered final judgment on May 2, 2024 and, therein, the Court amended Rule 59(e)'s 28-day deadline by imposing a 14-day deadline—a deadline for which Plaintiff does not make any timeliness accusations. Therefore, Defendant's Rule 59 motions are timely as a matter of law.

**B.**    **Officer Grubbs is entitled to a New Trial.**

    **1.**    **The Reprimand**

In the initial briefing, Officer Grubbs states that the Court's reprimand of Attorney Miller in the presence of the jury necessitates a new trial. This is because "[j]uries are extremely sensitive to every word and intimation given by the judge," *United States v. Cox*, 664 F.2d 257, 259 (11th Cir. 1981), and when a judge's conduct "strays from neutrality," the impacted party is denied a constitutionally fair trial. *See United States v. Harris*, 720 F.2d 1259, 1262 (11th Cir. 1983) (internal quotation marks and citations omitted).

Without explaining how or why, Plaintiff states that the reprimand was "fair and accurate." (Dkt. No. 264 at 14.) Plaintiff further argues that a new trial is improper where, as here, the Court issued a curative instruction to the jury to not consider the reprimand in their assessment of Defendant's liability. *Id*. After the reprimand, the Court did issue a limiting instruction, stating as follows:

> However, ladies and gentlemen of the jury, you're not rendering your verdict based on this reprimand that I just gave Ms. Miller. You're still to render your verdict based on the facts and the law in this case. I'm

pointing out the matter regarding Mr. Johnson and the discovery to point out what happened, and for you not to hold it against Mr. Johnson. I don't want you-all to think he's trying to mislead you. However, this is a court of law. And as I indicated to each one of you-all when you were chosen, you're to render your verdict based on the law that I will give you and the facts that you hear and the evidence you hear from witnesses that testify on the witness stand and exhibits I allow in during the course of this trial.

. . .

I do not take lightly reprimanding an attorney in front of a jury. But I felt -- and I'm not trying to embarrass Ms. Miller -- but I felt it was necessary. But again, the reprimand cannot and should not weigh into the evidence of this case.

Tr. 1032 at 2–25. But the damage was already done. The Eleventh Circuit recognizes that even when a curative instruction addresses some improper act or evidence, the Court should still grant a new trial if it "is so highly prejudicial as to be incurable by the trial court's admonition." *United States v. Harriston*, 329 F.3d 779, 787 n. 4 (11th Cir. 2003) (quoting *United States v. Funt*, 896 F.2d 1288, 1295 (11th Cir. 1990)). Here, the reprimand prejudicially aided Plaintiff's unfounded theory of a coverup or collusion. Tr. 1594 at 8–17. Indeed, as discussed in the initial briefing, the reprimand had such a prejudicial effect that opposing counsel even used it in his closing argument, stating:

"Ms. Miller has, since the beginning of this case and the defense of this case – there's no question about a coverup. It happened right in front of you in this courtroom when you found out I wasn't given documents on time. It should have been given to me a year ago by the City of

6

Atlanta Law Department.  The coverup is undeniable." *Id.*

At no point in the initial stages of the proceedings did Plaintiff's counsel allude to any cover up or collusion within the City's Law Department.  Only after the Court's reprimand did this issue impermissibly take center stage in Plaintiff's theory of the case.  More importantly, consider this: if an officer of the Court was unable to follow the Court's limiting instruction pertaining to the reprimand, how then can we expect the jury to abide by that same limiting instruction?  We simply cannot.  The reprimand was prejudicial to Officer Grubbs and warrants a new trial.

### 2.    Plaintiff's Improper Closing Argument

The initial briefing also describes comments that Plaintiff's counsel made during his closing argument that impermissibly referenced Mr. Blasingame's financial condition.  Counsel repeatedly referred to Mr. Blasingame as "homeless," and a "panhandler" whose life is "not worth one cent less [than] anybody else," such as "a rich doctor from Buckhead."  Tr. 1580:1–6; *see also* Tr. 1552:17–20, 1555:4, 1558:17.  However, the United States Supreme Court has held that "appeals to class prejudice are highly improper and cannot be condoned and trial courts should ever be alert to prevent them."  *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 239, (1940) ("[A].").  These "appeals" to Mr. Blasingame's financial condition permeated throughout Plaintiff's closing.

The Response Brief focuses only on Plaintiff's use of the word "panhandling"

and how that word was also used by defense counsel. (Dkt. No. 264 at 14–15.) But "panhandling" was never used by defense counsel in an *appeal* to class prejudice. Instead, it was used to describe Mr. Blasingame's unlawful conduct just before the incident. Plaintiff's counsel squarely used Mr. Blasingame's financial condition to prejudicially advantage his client. Indeed, there was no other permissible purpose to justify stating that Mr. Blasingame was "homeless," a fact that has no bearing on whether Officer Grubbs used excessive force. Tr. 1580:1–6. Moreover, there is no other permissible purpose for Plaintiff's counsel to state that Mr. Blasingame's life is "not worth one cent less [than] anybody else," such as "a rich doctor from Buckhead." Tr. 1552:17–20, 1555:4, 1558:17.

Accordingly, Plaintiff's counsel's appeal to Mr. Blasingame's financial condition also warrants a new trial.

## C.   The Punitive Damages Award is Grossly Excessive and Shocks the Conscience.

"To be overturned, [a punitive damages award] must be 'grossly excessive' or 'shocking to the conscience.'" *Trezevant v. Tampa*, 741 F.2d 336, 341 (11th Cir. 1984) (quoting *Anderson v. Eagle Motor Lines, Inc.*, 423 F.2d 81, 85 (5th Cir. 1970) and *La-Forest v. Autoridad de las Fuentes Fluviales*, 536 F.2d 443 (1st Cir. 1976)). Here, the jury imposed a $20 million punitive damages award against a police officer who tased a fleeing suspect. This award is excessive.

8

Plaintiff first argues that the punitive damages award was not excessive because the compensatory damages award was not a sufficient deterrent. (Dkt. No. 264 at 16–18.) Plaintiff argued that because Mr. Blasingame's medical expenses could eventually exceed $20 million, a $20 million punitive damages award is warranted. (*Id*.) Plaintiff then attempts to distinguish Officer Grubbs' cited comparator cases in support of Officer Grubbs' initial briefing. (*Id*. at 15–20.) But wholly lacking from Plaintiff's response is any explanation as to why $20 million is the appropriate punitive damages award to punish and deter a salaried police officer from tasing a fleeing suspect. Instead, the Response relies on the fact that counsel asked for $100 million in their closing argument and since the jury *only* awarded $20 million, this is some sort of justification for the excessive verdict. (*Id*. at 14.)

Contrary to Plaintiff's Response, the test for excessiveness is not whether the jury awarded less than what the Plaintiff asked for. Instead, when an award is "so gross or inordinately large as to be contrary to right reason," this Circuit permits judicial intervention. *Machado v. States Marine-Isthmian Agency, Inc.*, 411 F.2d 584, 586 (5th Cir. 1969). This is because "[p]unitive damages do not compensate plaintiffs for injuries suffered. . . . Rather, their purpose 'is to punish the defendant for his willful or malicious conduct and to deter others from similar behavior.'" *Hoever v. Marks*, 993 F.3d 1353, 1358–59 (11th Cir. 2021) (internal citations omitted).

9

In determining the amount sufficient to "punish" and "deter" Officer Grubbs' conduct, every case cited in support of Officer Grubbs' motion substantiates a finding that the award was simply too high under the circumstances. *See Jennings v. Fuller*, 2017 WL 2242357, at *4–10 (E.D. Mich. May 23, 2017) (reducing a $17.63 million compensatory and $19 million punitive damages award to $5 million and $6 million, respectively, where five police officers beat, dragged, pepper-sprayed, and placed a hood over the plaintiff in a jail cell); *Spadaro v City of Miramar*, No. 11-cv-61607-JIC (S.D. Fla. 2013) ($2 million in punitive damages against two officers for coercing a confession for rape and murder from a minor who was subsequently exonerated by DNA evidence); *Doe 1 et al. v. City of Lauderhill*, No. 0:14-cv-61466-KMW (S.D. Fla. 2015) ($900,000 in punitive damages against two officers for forcing plaintiffs to pull into an abandoned lot where the police officers raped and sexually assaulted them); *K.J.C. v. City of Montgomery*, 2:17-cv-00091-ALB-SMD (M.D. Ala. 2020) ($500,000 in punitive damages against a police officer after plaintiff, an intellectually disabled woman, called 911 to report a missing medical device and the responding officer anally raped the plaintiff and made her promise not to tell anyone); *Lucas v. City of Braswell*, No. 4:10-cv-00030-HLM (N.D. Ga. 2010) ($440,000 in punitive damages against police officers after the officers conspired to have plaintiff falsely arrested and maliciously prosecuted); *Bonner v. Carlisle*, No. 2:21-cv-00334-MHH (N.D. Ala. 2021) ($350,000 in

10

punitive damages against a police officer accused of sexually assaulting the plaintiff under the guise of conducting a follow up interview).

## D.    **The Punitive Damages Award Violates Due Process.**

In *BMW of North America*, the Supreme Court provided three guideposts to determine whether such a reduction is warranted: (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil or criminal penalties authorized or imposed in comparable cases. 517 U.S. at 583 (1996); *Bogle v. McClure*, 332 F.3d 1347, 1360 (11th Cir. 2003).

Plaintiff first argues that Officer Grubbs' conduct was reprehensible under guidepost one based upon a non-exhaustive list of reprehensibility factors set forth in *State Farm Mutual Automotive Insurance Co. v Campbell*, 538 U.S. 408, 418 (2003).[1]  (Dkt. No. 264 at 23–24.)  Again, the Response misses the mark.  The test for an excessive verdict is not whether the conduct was at all reprehensible.  Instead,

---

[1] Those factors include whether: "the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident." *State Farm Mut. Auto. Ins. Co.*, 538 U.S. at 418.

"the punitive damages should be roughly proportionate to the enormity or gravity of the offense." *Watkins*, 169 F.3d at 546. To develop any sort of proportion as to the appropriate punitive damages compared to the gravity of the offense, it is important to compare Officer Grubbs' conduct against other defendants, as well as the punitive damages assessed in similar cases. *See, e.g.*, *Disorbo v. Hoy*, 343 F.3d 172, 188 (2d Cir. 2003) ("To determine the appropriate level of punitive damages, we assess such awards in other police misconduct cases.").

Specific to the circumstances of this case, the test is whether the conduct was sufficiently reprehensible to support a $20 million punitive damages verdict against a police officer who tased a fleeing suspect that sustained injuries after he fell down a hill hidden from the officer at the time of the tasing. Plaintiff can point to no similar case or circumstance in which the results of an Officer's split-second judgment related to Plaintiff's injuries warrants a $20 million verdict. Instead, the cases discussed *supra* and in Officer Grubbs' initial briefing support a finding that this case is a major outlier warranting a constitutional reduction.

Plaintiff also argues that because there are no civil penalties available pursuant to a Section 1983 action, guidepost three does not favor a reduction. (Dkt. No. 264 at 25.) But Plaintiff ignores the fact that this guidepost applies to *comparable* civil or criminal penalties, not just those implicated by the statute at issue. *See Gore*, 517 U.S. at 583. Comparably, if Officer Grubbs was charged with deprivation of rights

12

under the color of law pursuant to 18 U.S.C. § 242, the maximum fine he could have received would have been $250,000.00. *See* 18 U.S.C. § 3571(b)(3). Or had Plaintiff pursued criminal charges against Officer Grubbs for assault and battery, Georgia Code Section 51-12-5.1(g) would have likewise limited a punitive damages recovery to $250,000.00.

Accordingly, the two comparable statutory penalties limit recovery to $250,000.00. Comparing $20 million in assessed punitive damages to the $250,000.00 in civil penalties produces a ratio of 80:1, showing the "monetary comparisons are wide" and counselling reduction. *Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 23 (1991).

## III.    CONCLUSION

For the reasons stated the memorandum in support of Officer Grubbs' motion for a new trial and, in the alternative, motion for remittitur of the punitive damages award, and for the reasons stated above, Officer Grubbs respectfully requests that the Court grant a new trial or, in the alternate, vacate the punitive damages award or reduce Officer Grubbs' punitive damages award to no more than $250,000.00.

[Signatures on following page]

13

Respectfully submitted this 6th day of June, 2024.


/s/ Staci J. Miller

Staci J. Miller
Georgia Bar No.: 601594
City of Atlanta Law Department
55 Trinity Avenue, Suite 5000
Atlanta, GA 30303
Tel: 404.546.4100
sjmiller@atlantaga.gov


/s/ Harold D. Melton

Harold D. Melton
Georgia Bar No. 501570
Charles E. Peeler
Georgia Bar No. 570399
Kimberly D. Eason
Georgia Bar No. 428618
Elizabeth P. Waldbeser
Georgia Bar No. 430797


/s/ James E. Dearing, Jr.

James E. Dearing, Jr.
Georgia Bar. No.: 215090
1596 W. Cleveland Avenue, Suite 102
East Point, GA 30344
404.870.0010 / tele
jdearing@jed-law.com


**TROUTMAN PEPPER HAMILTON SANDERS LLP**
600 Peachtree Street, N.E., Suite 3000
Atlanta, GA 30308
Telephone: (404) 885-3000
Facsimile: (404) 885-3900
harold.melton@troutman.com
charles.peeler@troutman.com
kimberly.eason@troutman.com
elizabeth.waldbeser@troutman.com

*Attorneys for Defendant Officer Grubbs*

**FONT CERTIFICATION**

Pursuant to Local Rule 7.1D, I hereby certify that the foregoing document was prepared using Times New Roman 14-point type as provided in Local Rule 5.1.

*/s/ Harold D. Melton*
Harold D. Melton
Georgia Bar No. 501570

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on June 6, 2024, the foregoing was filed electronically with the Clerk of the Court using the CM/ECF system which sent notification to all counsel of record.

*/s/ Harold D. Melton*
Harold D. Melton
Georgia Bar No. 501570

15