IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

KEITH EDWARDS, as guardian and
conservator for Jerry Blasingame,

   Plaintiff,

v.

OFFICER J. GRUBBS # 6416 and
THE CITY OF ATLANTA,

   Defendants.

CIVIL ACTION FILE

No. 1:19-CV-02047-SCJ

**ORDER**

This matter appears before the Court on Defendant Officer J. Grubbs'
Motion for New Trial and Motion for Remittitur of Punitive Damages. Doc.
No. [263].[1] For the following reasons, the Court **DENIES IN PART** Defendant
Grubbs' motion **insofar** as it requests a new trial or remittitur of damages based
on events at trial but **GRANTS** the motion **as to** the punitive damages award
being unconstitutional. Indeed, because the punitive damages awarded by the
jury in this case exceeds the bounds permitted by the Due Process Clause, the

---

[1] All citations are to the electronic docket unless otherwise noted, and all page numbers
referenced are those imprinted by the Court's docketing software.

Court **REDUCES** the punitive damages awarded to Plaintiff[2] against Defendant Grubbs to the constitutionally permitted amount of **$1 million**.

## I.    BACKGROUND

The Court reviews the facts only as necessary to resolve the instant motion. In August 2022, the Court held a jury trial in this Section 1983 excessive force case. Doc. Nos. [193]–[200]. The jury ultimately returned a $100 million verdict against Defendant Grubbs and his co-Defendant, City of Atlanta. Doc. No. [163]. Specifically, the jury awarded Plaintiff $20 million in compensatory damages and $20 million in punitive damages against Defendant Grubbs. Id. The jury awarded Plaintiff the other $60 million against the City of Atlanta. Id. The Court subsequently vacated the judgment against the City of Atlanta on a Rule 50(b) post-trial motion (see Doc. No. [177]). The Court also denied Defendant Grubbs' motion for judgment as a matter of law, which raised—for the first time—the issue of qualified immunity.[3] Id.

---

[2] The Court recognizes that Mr. Edwards represents Mr. Blasingame as the named plaintiff, guardian, and conservator in this case. Doc. No. [113]. For clarity, however, the Court continues to refer to Blasingame as "Plaintiff" when discussing the incident and facts underlying this case.

[3] In a contemporaneously filed motion with the instant one, Defendant Grubbs seeks reconsideration under Rule 59(e) and Rule 60 of this JMOL Order and the qualified immunity decision. Doc. No. [262]. The Court denies this motion to reconsider in a

2

Both Plaintiff and Defendant Grubbs appealed the Court's rulings. After the completion of appellate briefing, however, the Eleventh Circuit remanded this case for lack of jurisdiction. Doc. No. [251]. The jurisdictional issue involved a single claim that had been voluntarily dismissed under Rule 41—a procedural impropriety that the Eleventh Circuit had fully addressed after this Court had allowed the Rule 41 voluntarily dismissal. See Rosell v. VMSB, LLC, 67 F.4th 1141 (11th Cir. 2023). Accordingly, this matter returned to this Court on remand, where the Parties then jointly moved to amend the complaint, which the Court granted and thereafter entered a final judgment that made clear prior orders and decisions remained in place. Doc. Nos. [258]; [260].

Following this final judgment, Defendant Grubbs filed the instant motion for new trial and remittitur of punitive damages. Doc. No. [263]. In this motion, Defendant Grubbs argues that the excessive damages award proves that the jury reached its verdict based on passion and prejudice, rather than on the evidence and law presented, and that a new trial is required. See generally Doc. No. [263-1]. Specifically, Defendant Grubbs cites two occurrences at trial that prompted an improper damages award: (1) the Court's reprimand of

---

separate order filed concurrent with this one.

Defendants' attorney in the presence of the jury for discovery violations revealed at trial, and (2) Plaintiff's attorney's reference to the financial condition of the deceased Plaintiff in his closing argument. Id. at 4–5, 9–14. In the alternative, Defendant Grubbs seeks a remittitur of excessive punitive damages or a reduction of the punitive damages as unconstitutional. Id. at 14–25. Plaintiff opposes Defendant Grubbs' motion *in toto* and Defendant Grubbs has filed his reply. Doc. Nos. [264]; [267]. The matter is thus ripe for the Court's review.

## II.   LEGAL STANDARD

"A party may move for a new trial under Federal Rule of Civil Procedure 59 on the grounds that the verdict was against the weight of the evidence, the damages were excessive, or the trial was otherwise unfair." Scott v. Miami Dade Cnty., No. 21-13869, 2023 WL 4196925, at *1 (11th Cir. June 27, 2023) (citing McGinnis v. Am. Home Mortg. Servicing, Inc., 817 F.3d 1241, 1254 (11th Cir. 2016)). "[I]f in [the court's] opinion, the verdict is against the clear weight of the evidence . . . or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." McGinnis, 17 F.3d at 1254 (second and third alterations in original) (quoting Hewitt v. B.F. Goodrich Co., 732 F.2d 1554, 1556 (11th Cir. 1984)). "[I]n

4

a motion for a new trial the judge is free to weigh the evidence." Id. (quoting Rabun v. Kimberly–Clark Corp., 678 F.2d 1053, 1060 (11th Cir. 1982)). "[W]hen independently weighing the evidence, the trial court is to view not only that evidence favoring the jury verdict but evidence in favor of the moving party as well." Id. at 1255 (alteration in original) (quoting Williams v. City of Valdosta, 689 F.2d 964, 973 (11th Cir. 1982)).

"A timely motion for new trial is addressed to the sound judicial discretion of the trial court." Hercaire Int'l, Inc. v. Argentina, 821 F.2d 559, 562 (11th Cir. 1987). In lieu of granting a new trial, a court may alter or amend a jury's verdict, but only to correct errors of law. See Johansen v. Combustion Eng'g, Inc. 170 F.3d 1320, 1328–31 (11th Cir. 1999).

Rule 59(e) provides for a party to move "to alter or amend a judgment . . . no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). A Rule 59 motion may only be granted if there is "newly-discovered evidence or manifest errors of law or fact." AcryliCon USA, LLC v. Silikal GmbH, No. 1:14-CV-1072-TWT, 2024 WL 1479646, at *1 (N.D. Ga. Apr. 5, 2024) (quoting Arthur v. King, 500 F.3d 1335, 1343 (11th Cir. 2007)). "Rule 59(e) may not be used 'to relitigate old matters, [or to] raise argument or present evidence that could

5

have been raised prior to the entry of judgment.'" Berry v. Crestwood Healthcare LP, 84 F.4th 1300, 1313 (11th Cir. 2023) (alteration in original) (quoting Michael Linet, Inc. v. Village of Wellington, 408 F.3d 757, 763 (11th Cir. 2005)). The limited, permissible grounds to grant Rule 59(e) relief are: "(1) to correct manifest errors of law or fact, (2) to prevent manifest injustice, (3) to account for an intervening change in controlling law, and (4) to allow the moving party to present newly discovered or previously unavailable evidence." AcryliCon USA, 2024 WL 1479646, at *1 (quoting Tenor Cap. Partners, LLC v. GunBroker.com, LLC, 2022 WL 12464321, at *2 (N.D. Ga. Oct. 21, 2022)).

Rule 60(b) allows for relief "from a final judgment, order, or proceeding" for several specified reasons. See Fed. R. Civ. P. 60(b)(1)–(6). There is a "high standard for granting post[-]judgment relief under Rule 60(b)." Zakrzewski v. Donough, 490 F.3d 1264, 1267 (11th Cir. 2007). Indeed, "[r]elief from judgment under Rule 60(b)(6) [ ] is an extraordinary remedy and requires a showing of 'extraordinary circumstances' to justify the reopening of a final judgment." MacPhee v. MiMedx Grp., Inc., 73 F.4th 1220, 1251 (11th Cir. 2023) (quoting Arthur v. Thomas, 739 F.3d 611, 628 (11th Cir. 2014)); see also Saunders v. United States, 380 Fed. App'x 959, 964 (11th Cir. 2010) (requiring the movant

6

"demonstrate that the circumstances are sufficiently extraordinary to warrant relief." (citation and quotation omitted)).

## III.    ANALYSIS

This motion requires the Court to resolve a number of issues: (A) whether Defendant Grubbs' motion is untimely, (B) if the jury handed down its damages' award based on its passion and prejudice so as to render the award excessive, and (C) whether the punitive damages award is unconstitutional. The Court answers the first two questions in the negative but concludes that the punitive damages award here is unconstitutional and must be reduced accordingly.

### A.    Timeliness of Defendant Grubbs' Motion

Plaintiff first contends that this motion is untimely under Rule 59 and thus must be denied. Doc. No. [264], 12–13. Indeed, the issue of untimeliness partially informed the Court's pre-remand denial of Defendant Grubbs' first motion for relief from judgment, which sought a reduction in punitive damages. Doc. No. [219], 16–18. The basis for Plaintiff's current argument is that the judgment instigating the 28-day deadline under Rule 59(e) was the Court's September 2022 judgment, which entered the punitive damages award, and not the most recently entered judgment following the amended complaint. Doc. No. [264], 12.

7

Defendant Grubbs defends the timeliness of his motion in the light of the Eleventh Circuit's remand and the Court's entry of final judgment after all claims in the complaint had been disposed of in the second amended complaint. Doc. No. [267], 3–5. He argues that he filed his motion within 28-days of the proper final judgment (and pursuant to the Court's scheduling order in the final judgment itself), his motion is timely. Id.

The Court concludes that this motion is not untimely under Rule 59(e). To the contrary, it appears that Defendant Grubbs could not have filed this motion until *after* the most recent judgment. Motions to alter or amend a judgment under Rule 59 cannot be brought until a final judgment has been entered. See, e.g., Molbogot v. MarineMax E., Inc., No. 20-CV-81254, 2022 WL 2671124, at *1 (S.D. Fla. July 11, 2022) ("No judgment has been entered in this case, so Rule 59(e) is inapplicable."). "The word 'judgment' as used in Rule 59(e) includes 'any order from which an appeal lies.'" Emergency Recovery, Inc. v. Hufnagle, 77 F.4th 1317, 1326 (11th Cir. 2023) (quoting Fed. R. Civ. P. 54(a)). The Eleventh Circuit's remand for lack of jurisdiction makes clear that the Court's 2022 judgment was *not* a judgment for purposes of Rule 59(e) — i.e., not a judgment from which an appeal could be brought. See Doc. No. [251], 4 ("We[, the Eleventh Circuit,] do

8

not have jurisdiction over this appeal, however, because there is no final judgment."). The most recent final judgment thereby is the one from which an appeal may lie, and motions under Rule 59(e) must be made within 28-days thereof. Fed. R. Civ. P. 59(e). Defendant Grubbs filed his motion within 28-days of this judgment. Thus, it is not untimely, and the merits of the motion will be considered.

### B.    Excessive Damages from Improper Passion and Prejudice

Turning to the merits, Defendant Grubbs seeks a new trial, or alternatively a reduction in damages (i.e., remittitur) because the damages awarded by the jury were excessive. Doc. No. [263-1], 14. He argues the jury determined the damages award based on improper passion and prejudice and that the compensatory award in this case is sufficient to account for the factual circumstances and liability finding. Id. at 15. He makes these arguments in reference to other, similar cases where a lesser punitive damage amount has been awarded. Id.

The Court addresses Defendant Grubbs' arguments for a new trial and remittitur concurrently because many of the arguments and citations to the trial evidence overlap. Moreover, granting a new trial and remitter derive from the same authority. Johansen, 170 F.3d at 1328. "A court which believes the jury's

verdict is excessive may order a new trial unless the plaintiff agrees to remit a portion of the jury's award."[4] Id. Ultimately, the Court rejects Defendant Grubbs' arguments that the jury was improperly impassioned or prejudiced. No new trial or remittitur is required.

The Court proceeds by reviewing the two events at trial that now inform Defendant Grubbs' present request for relief. It then considers whether Defendant Grubbs has made a sufficient showing that a new trial or remittitur is required.

### 1.  *The Events at Trial*

The incidents identified by Defendant Grubbs do not show that the jury was improperly impassioned or prejudiced in rendering this verdict. "A fundamental principle of American jurisprudence is that the fact-finder determines the quantum of damages in civil cases." Murphy v. City of Flagler Beach, 846 F.2d 1306, 1310 (11th Cir. 1988) (quoting Hawkes v. Ayers, 537 F.2d

---

[4] Neither Party mentions that even if the Court agreed remittitur was appropriate, then Plaintiff would have an option to proceed with a new trial rather than the Court's remittitur. Johansen, 170 F.3d at 1329 ("The Seventh Amendment requires, however, that the plaintiff be given the option of a new trial in lieu of remitting a portion of the jury's award." (citing Hetzel v. Prince William Cnty., 523 U.S. 208, 210 (1998))). Conversely, if the punitive damages award is unconstitutional, a court must reduce the award "to correct an unconstitutionally excessive verdict so that it conforms to the requirements of the due process clause." Id. at 1331.

836, 837 (5th Cir. 1976)). When reviewing an award, the Court may only intervene if the "award is so inadequate 'as to shock the judicial conscience and to raise an irresistible inference that passion, prejudice, corruption or other improper cause invaded the trial, the jury's determination of fact is considered inviolate.'" Id. (quoting Garrick v. City & Cnty. of Denver, 652 F.2d 969, 972 (10th Cir. 1981)). To find improper passion and prejudice is high bar, as such a finding—with some very limited exception—would require a new trial be granted on the issue of damages *and* liability. Wright & Miller, Federal Practice & Procedure, § 2815 Remittitur (3d ed.) ("[T]he court may condition a denial of the motion for a new trial upon the filing by the plaintiff of a remittitur in a stated amount. In this way the plaintiff is given the option of either submitting to a new trial or of accepting the amount of damages that the court considers justified."); but see Edwards v. Sears, Roebuck & Co., 512 F.2d 276, 282–83 (5th Cir. 1975)[5] ("[T]his circuit has no *per se* rule regarding the appellate court's response to a lower court's finding that a jury verdict was affected by improper elements . . . If the passion, [etc.] taints only the damage award and not the liability assessment, the proper

---

[5] Decisions of the of the former Court of Appeals for Fifth Circuit handed down prior to October 1, 1981, are considered as binding in this Circuit. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981).

11

response is a remittitur or a new trial addressed to damages alone. But, if it appears that the improper jury action, in reasonable probability, affected both the liability and damages issues, then a new trial as to both issues must be ordered." (internal citation omitted)); Frederick v. Kirby Tankships, Inc., 205 F.3d 1277, 1284 (11th Cir. 2000) ("The rule in this circuit states that where a jury's determination of liability was not the product of undue passion or prejudice, we can order a remittitur to the maximum award the evidence can support.").

Defendant Grubbs primarily references two events at trial that he argues caused improper passion and prejudice of the jury: (a) the Court's reprimand of defense counsel, and (b) the references in Plaintiff's closing argument to Plaintiff's financial condition. Doc. No. [263-1], 9–14; see also note 8 infra. The Court reviews each and then rejects that these occurrences require a new trial or remittitur based on the jury's passions or prejudices.

### a)    **The Court's reprimand of defense counsel in the presence of the jury**

The Court starts with the reprimand of defense counsel for discovery violations revealed at trial—an unfortunate set of circumstances that require brief review. Up until Defendant Grubbs' testimony *at trial*, Plaintiff's litigation

strategy had relied on the fact that the City of Atlanta had not disciplined Defendant Grubbs for Plaintiff's tasing incident. The Court even acknowledged that Plaintiff had been propounding this position to the jury throughout the trial. See, e.g., Doc. No. [197] (Trial Day 5 Tr.) Tr. 1012:11–17 ("I've sat here for four days listening to your theory of the case[:] that the City of Atlanta, basically, whitewashed this [incident] and didn't do anything, and [it turns out] they did.")

During trial, however, Plaintiff and Plaintiff's counsel learned—in real time with the Court and the jury—that Defendant Grubbs had, in fact, been disciplined for incident after he had given his deposition testimony. Doc. No. [196] (Trial Day 4 Tr.) Tr. 979:6–15 (testifying that at the time of his January 2021 deposition "[no discipline] had occurred," but affirming "that [fact] changed sometime [thereafter]"). It then came to light that Defendant's counsel had notice of Defendant Grubbs' discipline "early [in 2022] when we started preparing for trial." Id. at 982:14–22. Counsel did not have a copy of the discipline file until later in the year, however, and so it was not produced to Plaintiff's counsel until August 2022, the month of trial. Id. at 983:1–20. Moreover, when produced, counsel did not raise any attention to the disciplinary file, despite Plaintiff having asked for records of disciplinary proceedings and even after

13

Plaintiff's trial arguments continually referenced the City of Atlanta's failure to discipline Defendant Grubbs. Id. at 987:18–25; see also Doc. No. [197] (Trial Day 5 Tr.) Tr. 1010:16–25 ("The fact that you didn't get a written report is not an excuse for not at least picking up the phone or sending an e-mail or letter [indicating] Officer Grubbs was disciplined on this day and here are the results. . . [y]ou supplement your discovery.").

This development led to Plaintiff moving for default on liability and the Court recessing trial for the evening to consider its options in the light of this "bad discovery violation." Id. at 1010:15–16. The Parties had an opportunity to submit an expedited brief regarding the appropriate recourse, and the next day the Court heard further argument from the Parties before it denied Plaintiff's motion for default. Id. at 1014:22–25. The Court instead decided to (1) issue a curative instruction regarding Plaintiff's prior statements to the jury regarding City of Atlanta's discipline of Defendant Grubbs, (2) publicly reprimand defense counsel in front of the jury, and (3) shorten Defendants' time for closing argument from 1-hour to 30-minutes. Id. at 1015:13–1016:25, 1017:8–11. The Court expressly declined to reprimand Defendant Grubbs as an individual, even though he "knew probably before everyone else" about the discipline. Id. at 1017:12–17. The

Court explained that even under these circumstances it was generally inappropriate "in a trial with parties involved to reprimand [a party] in front of the jury." Id. at 1017:22–1018:1.

Upon defense objection to the reprimand (concerning potential prejudice to the jury's consideration of the evidence), the Court determined that it would also instruct the jury "to render their verdict based on the facts and evidence in this case," rather than based on the reprimand of defense counsel, and ensure each juror was able to do so by polling the jury. Id. at 1025:8–13; see also id. ("I will add at the end of the reprimand, that as jurors they are still to render a verdict based on the facts and evidence in this case, and if they cannot do that, raise their hand.").

The Court's statement to the jury thereafter reflected the Court's comments to counsel and explanation of its decision to sanction for the discovery violation. See generally Doc. No. [197] (Trial Day 5 Tr.) Tr. 1028:24–1033:17. At the end of the Court's reprimand and curative instructions, the Court asked the jurors to indicate if they would be unable to "render a verdict based on the facts and the evidence the law [] in the case." Id. at 1033:2–7. No juror made any such indication. Id. at 1033:8.

15

Part of the Court decision to not enter default against Defendants (i.e., Officer Grubbs and City of Atlanta) was because it did not find defense counsel acted in bad faith. Id. at 1013:23–25. The Court did not "think [Defendants] were trying to hide" the information, nor did it "think there was a strategy to set [Plaintiff] up" for unfair surprise at trial. Id. at 1014:1–7. Instead "[the Court thought] it [was] a case where somebody just made a bad decision[.]" Id. at 1014:12–14. Plaintiff later made a bad faith argument, but at the time the violation was revealed Plaintiff's counsel himself "agree[d]" that Defense counsel was not "unethical or [trying] to be unethical" and "ha[d] not shown that type of character in this case." Doc. No. [196] (Trial Day 4 Tr.) Tr. 989:16–25; but see id. at 990:11–21 ("I don't think she intentionally does a lot of these other things, but that was an intentional decision that should have been absolutely given to me. It should have been in a letter once she got the file so that I knew."). Nevertheless, Defendant Grubbs is correct that Plaintiff's counsel, in rebuttal of closing arguments, referenced this discovery sanction as part of a "coverup [that] is undeniable." Doc. No. [199] (Trial Day 7 Tr.) Tr. 1594:12–23. Defendant Grubbs argues that "this improper and inflammatory argument" began with the Court's reprimand and prejudiced the damages awarded. Doc. No. [263-1], 12.

16

### b) **Plaintiff's closing argument**

The other incident at trial that Defendant Grubbs raises as causing improper juror passion and prejudice was the reference to Plaintiff's financial condition and poverty during Plaintiff's closing argument. Specifically, counsel made several comments about Plaintiff's homelessness and general impoverishment. Doc. No. [199] (Trial Day 7 Tr.) Tr. 1552:20 ("He's just a homeless guy; right?"), 1555:3–4 ("[I]t's just another panhandler."), 1580:1–5 ("[Plaintiff] being an American citizen, despite being homeless . . . his suffering, his disability, his internment, his torture living in his own body every day is not worth one cent less from anybody else, a rich doctor from Buckhead[.]"). Defendant Grubbs contends that not only was Plaintiff's financial condition irrelevant to the jury's consideration of the evidence, but it improperly inflamed the jury's passions and resulted in an excessive award. Doc. No. [263-1], 13.

### 2. *New Trial or Remittitur Based on the Trial Incidents*

As preliminary note, the Court understands Defendant Grubbs' contentions regarding the fairness of trial in the instant motion to be only implicating the damages awarded. Put differently, Defendant Grubbs does not substantively develop any argument that these trial events caused unfairness in

17

the jury's liability determination. See generally Doc. No. [263-1]. The Court

likewise does not find any present reason to question the finding of liability in

this case.[6]

Furthermore, the Court rejects that the aforementioned incidents inflamed

the jury's passions or prejudiced them in reaching their verdict. It is true that a

court should be cautious when reprimanding counsel in front of the jury—but it

can be done as long as a court remains impartial in the proceedings. United States

v. Harris, 720 F.2d 1259, 1262 (11th Cir. 1983). Even when a judge's "blunt

reprimand" was "more to embarrass the attorney [rather] than to correct [ ]

impropriety," as long as "[t]he trial judge [does] not impermissibly stray from

neutrality" then the comments do not impugn the fairness of the proceedings. Id.

The Court reprimanding defense counsel before the jury in this case was

part of its deliberately crafted sanction following a discovery violation revealed

during trial. It was not even the most drastic sanction that the Court could have

issued—the Court strongly considered entering default on liability. Doc.

---

[6] As noted *supra*, the Court addresses (and denies) Defendant Grubbs' motion to reconsider its denial of qualified immunity in a separate order.

No. [197] (Trial Day 5 Tr.) Tr. 1014:22–25. It also refused to directly reprimand Defendant Grubbs as a party in this case. Id. at 1017:12–1018:1.

When Defendant Grubbs objected with concerns about the sanction improperly affecting the jury's deliberation, the Court agreed to issue a contemporaneous instruction to the jury that it was only to consider the evidence and law presented in rendering its verdict. No juror indicated he or she would have a problem doing so when expressly asked by the Court. Id. at 1033:2–8. "[W]e presume juries follow the instructions given to them[.]" Austin v. FL HUD Rosewood LLC, 791 F. App'x 819, 826 (11th Cir. 2019)).   And a curative instruction is only inadequate if its substance "is so highly prejudicial as to be incurable by the trial court's admonition." Id. (quoting United States v. Perez, 30 F.3d 1407, 1410 (11th Cir. 1994)). The Court has no reason to doubt the juror's representations that they would decide the case based on the facts and law presented.

In the light of the foregoing, the reprimand of defense counsel was an appropriate sanction and was not intended, nor did it result in, prejudicing the jury. Defendant Grubbs may have preferred a different sanction for the discovery violation, but that does not mean a new trial or remittitur should be granted.

19

Neither do the arguments made by Plaintiff's counsel during closing argument constitute a basis for finding prejudice or passion in the jury verdict. To begin, it was a highly relevant fact in this case that Plaintiff was panhandling when the incident with Defendant Grubbs began—a fact that would carry presuppositions about Plaintiff's financial condition regardless of counsel's other remarks. Moreover, when Plaintiff's counsel discussed damages in closing argument he did so in the context of Plaintiff's harm and the evidence submitted. See generally, e.g., Doc. No. [199] (Trial Day 7 Tr.) Tr. 1576:12–1580:19 (discussing compensatory damages). Indeed, the amount the jury returned for Plaintiff is well-below the amount that Plaintiff's counsel requested—and even within the range of an amount hypothetically proposed by defense counsel. See, e.g., id. at 1581:6–8 (Plaintiff's counsel asking for $50 million in punitive damages), 1593:6–10 (defense counsel suggesting $100 million for "the consequences and the injuries" of the actions might be appropriate). For these reasons, Plaintiff's closing argument does not cause concern about unfairness or impartiality in the jury rendering their verdict.[7]

---

[7] This conclusion is reinforced by the fact that Defendant Grubbs admittedly failed to object to Plaintiff's closing argument. Without an objection, Defendant Grubbs must show that "the interest of substantial justice is at stake[.]" McWhorter v. City of

Defendant Grubbs also argues that the compensatory award is sufficient to compensate Plaintiff, as well as punish and deter Defendant Grubbs and other officers from similar conduct. Doc. No. [263-1], 15–17. The Court rejects this argument. There is no reason to think that the jury failed to follow the instructions given on the difference between compensatory and punitive damages when determining the proper amount of damages to award here. Doc. No. [206], 14–18. Nor, as a theoretical matter, would be it be proper to vacate or reduce a punitive damages award merely because the compensatory award was "enough" to cover both compensation *and* punishment and deterrence. The two types of damages are distinct. State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 416 (2003) ("[C]ompensatory and punitive damages, although usually awarded at the same time by the same decisionmaker, serve different purposes."). The Court rejects Defendant Grubbs invitation to ignore these differences.

---

Birmingham, 906 F.2d 674, 677 (11th Cir. 1990) (quoting Edwards, 512 F.2d at 286). No such showing has been made here. Cf., e.g., McWhorter, 906 F.2d at 677 (finding "substantial justice was at stake" when "[t]rial counsel's closing argument was in direct violation of the district court's ruling and was thus highly improper").

21

Similarly, Defendant Grubbs cites to a number of cases involving constitutional violations that resulted in smaller damages awards. There is no doubt that the award in this case was substantial, dwarfing most historical recoveries in Section 1983 cases. See, e.g., Doc. No. [263-1], 21 (listing cases and recoveries). While comparable cases are something the Court may consider in its analysis of whether the damages awarded here were excessive, the Court must ultimately determine if the trial was unfair or resulted in a miscarriage of justice. It does not make such a finding.

Thus, it is the Court's conclusion that Defendant Grubbs has not raised any basis to grant a new trial or remit damages based on the trial events raised.[8] The Court thereby denies Defendant Grubbs' motion for a new trial or remittitur for these occurrences.

---

[8] Defendant Grubbs also briefly mentions the severity of Plaintiff's injuries as witnessed by the jury in the "day in the life" video and the "pool of blood around the concrete slab" Plaintiff hit his head. Doc. No. [263-1], 18. Defendant Grubbs did not object to these exhibits being admitted (Doc. Nos. [195] (Trial Day 3 Tr.) Tr. 714:7–23 (day in the life video), [194] (Trial Day 2 Tr.) Tr. 245:21–25 (Exhibit 39, which includes the photo referenced)), nor does their admission implicate substantial justice. McWhorter, 906 F.2d at 677.

22

### C.   Unconstitutional Punitive Damages

Defendant Grubbs' final argument is that the award of punitive damages was unconstitutionally excessive. Doc. No. [263-1], 22–25. "Punitive damages . . .'are aimed at deterrence and retribution': to deter the defendant and others from this type of conduct and to punish the defendant for his particular wrongful conduct." Williams v. First Advantage LNS Screening Sols. Inc., 947 F.3d 735, 746–47 (11th Cir. 2020) (quoting State Farm, 538 U.S. at 416). Accordingly, "[f]ederal due process prohibits [ ] imposing a 'grossly excessive' punishment on a tortfeasor." Sepulveda v. Burnside, 432 F. App'x 860, 864–65 (11th Cir. 2011) (quoting BMW of N. Am., Inc. v. Gore, 517 U.S. 559, 574 (1996)). The "take-away" from the precedent on this issue is that "the Due Process Clause requires that a defendant be put on fair notice of the severity of the punishment that might be imposed on him for his misconduct" and that the "grossly excessive" determination must be made "in relation to the relevant state interest underlying prohibition of the particular conduct at issue . . . ." Williams, 947 F.3d at 749–50.

To make this assessment, the Court looks at three "guideposts": (1) "the degree of reprehensibility of the defendant's conduct," (2) the "disparity"

between the compensatory and punitive damages awarded, and (3) comparable

civil penalties or punitive damages' awards. Id. at 748. The Court will address

each of these guideposts in turn and finally (4) conclude with its assessment that

the punitive damages award here is unconstitutionally excessive.

### 1. Reprehensibility

The reprehensibility of a punitive damages' award is the most important

factor in the constitutional analysis. Williams, 947 F.3d at 749. To assess the

reprehensibility factor, the Court considers and weighs:

> (1) whether the harm caused was physical, rather than
> economic; (2) whether the defendant's conduct
> "evinced an indifference to or a reckless disregard of the
> health or safety of others"; (3) whether the target of the
> conduct was financially vulnerable; (4) whether "the
> conduct involved repeated actions or was an isolated
> incident"; and (5) whether the harm resulted from
> "intentional malice, trickery, or deceit, or mere
> accident."

Id. (quoting State Farm, 538 U.S. at 419).

Taking each factor in turn: first, there is no doubt that the harm caused by

Defendant Grubbs and suffered by Plaintiff was physical. This factor weighs in

favor of a reprehensibility finding.

As for the second factor, the jury's verdict awarding punitive damages

bears some indication that Defendant Grubbs' conduct showed indifference or

24

reckless disregard for Plaintiff's health and safety. The Court instructed the jury that it may only award punitive damages if Defendant Grubbs "acted with malice or reckless indifference" toward Plaintiff. Doc. No. [206], 16. The Court also defined these terms for the jury. Id. at 16–17 (defining "malice" if Defendant Grubbs' conduct was "motivated by evil intent or motive" and "reckless indifference" if Defendant Grubbs "engage[d] in conduct with a callous disregard for whether the conduct violate[d] [Plaintiff's rights]"). Thus, by generally choosing to leave the jury's assessment of the factual evidence undisturbed, the Court concludes that Defendant Grubbs showed indifference or reckless disregard for Plaintiff's rights. It further does not strain reason to further find that such indifference and reckless disregard would adversely impact Plaintiff's health and safety.

Third, it is undisputed that Plaintiff was financially vulnerable. See Section (III)(B)(1)(b) *supra*. However, as applied in this case, Plaintiff's financial condition has minimal relevance to assessing a punitive damages award for unconstitutional excessive force. There is no evidence that Defendant Grubbs harmed or took advantage of Plaintiff because of his financial vulnerability—even if the initial stop was on account of panhandling (which is

25

illegal conduct under Georgia law). Thus, the Court affords minimal weight to this consideration.

Considering the fourth factor, there is no suggestion that Defendant Grubbs has been subject to any other claims of excessive force. Accordingly, based on the submissions before the Court, the circumstances involving Plaintiff constitute an isolated incident of excessive force in Defendant Grubbs' career. This factor weighs against finding reprehensibility in this case. Cf. Butler v. Windsor, 143 F. Supp. 3d 332, 336–37 (D. Md. 2015) (concluding "the conduct was an 'isolated incident,' which militates against a finding of *very* reprehensible conduct . . . ." (internal quotations omitted) (emphasis added)).

Finally, for the fifth factor, the trial evidence does not support any finding of ill-will or intentional harm beyond "mere accident." Williams, 947 F.3d at 749. There is no evidence that Defendant Grubbs was motivated by any harmful intent toward Plaintiff at the time of the incident. This factor counsels against reprehensibility.

Strictly as a matter of numbers, the Court's assessment of these factors favors a finding of reprehensibility. However, reprehensibility is not a zero-sum determination. Indeed, conduct may be "*sufficiently* reprehensible to support an

26

award of punitive damages" and still "not [be], in the grand scheme of things, *severely* reprehensible." Id. at 763 (emphasis added); see also Rubinstein v. Yehuda, 38 F.4th 982, 998 (11th Cir. 2022) ("A finding of reprehensibility, however, can rest on just two sub-factors—though the plaintiff might be entitled to a relatively smaller punitive damages award in such a case."); Kidis v. Reid, 976 F.3d 708, 715 (6th Cir. 2020) ("In more extreme cases, where many or all of the reprehensibility factors are satisfied, due process still constrains an ensuing punitive damages award.").

Indeed, here, when the Court has to "eyeball" the award after "weighing the egregiousness of the particular misconduct,"[9] Williams, 947 F.3d at 762, the Court does not think it appropriate to weigh Defendant Grubbs' particular misconduct as overly egregious, even though the Court does—in the light of the jury's verdict based on the evidence presented—find that the conduct was reprehensible *enough* to support *some* punitive damages award. Consequently,

---

[9] The Eleventh Circuit made this statement in its discussion of the ratio or disparity guidepost. Williams, 947 F.3d at 762. However, the Court's consideration of the guideposts is not dissimilar from the consideration of the reprehensibility factors—i.e., determinations that require weighing of factors' strength to reach a final conclusion.

27

the Court determines that while Defendant Grubbs' conduct was reprehensible for a punitive damages award, the strength of its reprehensibility is slight.

### 2.   *Disparity or Ratio Between the Compensatory and Punitive Damages Awards*

The Parties do not meaningfully address the second guidepost in their briefing. Doc. Nos. [263-1]; [264]. This guidepost looks at the disparity (i.e., ratio) between the compensatory award (a calculation of the harm suffered) and the punitive award (for punishment and deterrence). Williams, 947 F.3d at 749. A typical assessment of the disparity or ratio guideline involves a higher punitive damages award than a compensatory award. See, e.g., id. at 762 (endorsing a 4:1 ratio of punitive to compensatory damages, and finding that the 13:1 ratio returned by the jury was too great in the light of the reprehensibility finding).

Here, the ratio of punitive damages to compensatory damages is 1:1, and thus it might appear that no further discussion of this guidepost is required. Such assumption, however, is misguided given that precedent assesses the amount of compensatory damages awarded. State Farm, 538 U.S. at 425 (2003) ("When compensatory damages are substantial, then a lesser ratio, perhaps only equal to compensatory damages, can reach the outermost limit of the due process

guarantee."). Here, the compensatory award is enormously high—higher than nearly all the awards cited by the Parties' briefing for any damages awarded (compensatory or punitive). See, e.g., Doc. No. [26-1], 21. Thus, the ratio of compensatory and punitive damages in this case must necessarily account for the high compensatory award. As determined *infra*, Section (III)(C)(4), the Court concludes the 1:1 ratio in this case cannot suffice under the standards of constitutional due process.

### 3. *Comparable Penalties and Awards*

Finally, the Court considers comparable penalties and awards rendered in other contexts or cases. Given the unique facts in this case, the Court does not find the comparison to other punitive damages' awards cited by Defendant Grubbs to be particularly compelling as most of the conduct cited is not remotely comparable to the incident here.[10] Doc. No. [263-1], 21 (addressing comparable

---

[10] The Court specifically differentiates the citations to cases involving sexual assault. The type of harm, its reprehensibility, and considerations of punishment and deterrence in cases of sexual violence committed by officers does not offer comparable cases to have provided fair notice to Defendant Grubbs about his use of force (tasing) after chasing Plaintiff, a lawbreaking panhandler. Thus Defendant Grubbs descriptions of and citations to Doe 1 et al. v. City of Lauderhill, No. 0:14-cv-61466-KMW (S.D. Fla. 2015), K.J.C. v. City of Montgomery, 2:17-cv-00091-ALB-SMD (M.D. Ala. 2020), Bonner v. Carlisle, No. 2:21-cv-00334-MHH (N.D. Ala. 2021), and S.T. v. Isbell, No. 2:09cv616-MHT (M.D. Ala. 2010), do not assist the Court in this analysis. Moreover,

cases in the analysis of remitter or new trial on account of excessive damages).

As mentioned, moreover, the compensatory award in this case was enormously

high—a fact not always present in the comparators cited.

Having come up short in the Eleventh Circuit, the Court looks for

comparative conduct and awards throughout the nation. [11] For example, the

Sixth Circuit in Kidis v. Reid, 976 F.3d 708, found that the punitive damages

---

as best the Court can tell, in the other two cases cited—Spadaro v. City of Miramar, No. 11-cv-61607-JIC (S.D. Fla. 2013) and Lucas v. City of Braswell, No. 4:10-cv-00030-HLM (N.D. Ga. 2010)—the unconstitutional conduct alleged did not involve any physical violence or assault on a person. Thus these cases likewise do not provide fair notice to Defendant Grubbs about the potential punitive damages award for his conduct.

Even if the Court were to consider these cases, however, the awards were much lower than the punitive damages awarded here—the highest amount being $10 million in S.T. v. Isbell, No. 2:09cv616-MHT (M.D. Ala. 2010), where an officer repeatedly raped a victim and maintained pornographic images of her for years following the sexual assault. Like this case, Isbell's compensatory award was the same as the punitive damages award, $10 million (i.e., a 1:1 ratio). See Final Judgment, S.T. v. Isbell, No. 2:09cv616-MHT (M.D. Ala.), ECF No. [51]. No motion to remit these damages or reduce them as unconstitutional followed the judgment entered. The award against Defendant Grubbs is 2x the amount of Isbell, for not nearly as reprehensible conduct.

[11] There is no express prohibition against assessing damages' awards for comparable conduct in other jurisdictions. The Court iterates, however, that its reference to these other cases is a small part of its analysis determining that the punitive damages awarded here are unconstitutional. The "most important" guidepost is reprehensibility. See, e.g., Williams, 947 F.3d at 749–50. "The third factor [ ] is accorded less weight in the reasonableness analysis than the first two guideposts[.]" Kemp v. Am. Tel. & Tel. Co., 393 F.3d 1354, 1364 (11th Cir. 2004). The Court's consideration of the guideposts so reflects the Eleventh Circuit's direction for weighing the guideposts.

30

award of $200,000 was unconstitutionally excessive. In Kidis, the plaintiff had caused a minor car accident driving while intoxicated. He initially ran, evading arrest from the pursuing officer, but eventually peaceably submitted to the arrest. Despite his then-lack of resistance, however, the officer "continued to punch and strangle" the plaintiff, "yelling that he was going to 'teach [him] to . . . run.'" Id. at 713 (alteration in original). The jury found the officer had used excessive force, but that plaintiff's injuries were unrelated to the force. It then awarded $1 in nominal damages and $200,000 in punitive damages. Id. at 714. Comparing the $200,000 punitive damages award to other cases, the Sixth Circuit concluded the award "[fell] at the high end of the list," even when compared to cases where the plaintiff had suffered actual injury. Id. at 717–18. The Sixth Circuit accordingly reduced punitive damages to $50,000, the maximum amount that due process would allow. Id. at 718.

Clearly Kidis differs from Plaintiff's case in the sense that here Plaintiff suffered severe physical injuries from the excessive force, as reflected in the $20 million compensatory award. For purposes of Defendant Grubbs' notice of a potential punitive damages' award, however, such a difference in compensatory harm is immaterial. Other cases involving excessive force by officers (for even

31

more reprehensible and aggressive conduct than Defendant Grubbs committed here) that caused some (even if less than Plaintiff's) physical harm, still have resulted in lesser punitive damages awards. See, e.g., Greenaway v. Cnty. of Nassau, 327 F. Supp. 3d 552, 570–71 (E.D.N.Y. 2018) (concluding a $200,000 punitive damages award—split evenly between two offending officers—was not excessive when the officers "tase[d] [plaintiff] four times [without] evidence that [he] was violent or otherwise resistant" as an award "within the range established by comparable cases"); McCoy v. Alfrey, No. CIV.A. 08-112, 2010 WL 4366120, at *6 (E.D. Ky. Oct. 28, 2010) (affirming a $250,000 punitive damages award for a plaintiff who was placed in handcuffs, taken to a desolate area, and severely beaten and pepper sprayed in the presence of his romantic partner); Jennings v. Fuller, No. 13-13308, 2017 WL 2242357, at *18 (E.D. Mich. May 23, 2017) (reducing a $19 million punitive damages verdict, apportioned between 5 officers, to $6 million for extreme force used against a detained person).

Defendant Grubbs also cites to the civil penalties under Georgia law in the most comparable to Plaintiff's (i.e., "any tort action"), which are capped at $250,000. See O.C.G.A. § 51-12-5.1(g). The same cap applies to federal criminal

32

fines for deprivation of rights, 18 U.S.C. § 242.[12] See 18 U.S.C. § 3571(b)(3). In the light of these civil penalties, the $20 million punitive damages award here is enormously high (i.e., 80x higher than these caps).

In the light of the foregoing, the Court concludes that the punitive damages' award here when compared to other similar incidents would not have put Defendant Grubbs "on fair notice" that his conduct would result in the punitive damages judgment against him. Williams, 947 F.3d at 749–50. The guidepost weighs in favor of finding the punitive damages award unconstitutional under the Due Process Clause.

### 4.    Assessment and Weighing of the Guideposts

In order to properly assess and weigh these guideposts, the Court must consider the state's interest in deterring the conduct at issue. Sepulveda, 432 F. App'x at 865 n.4 (citing Myers v. Cent. Fla. Inv., Inc., 592 F.3d 1201, 1218 (11th Cir. 2010)). This is because the constitutional consideration of punitive

---

[12] Plaintiff's argument on this third factor does not totally engage with the required assessment. The short of Plaintiff's argument is that the damages awarded in this case were not criminal penalties, nor were they brought under Georgia law and so these provisions are inapplicable. Doc. No. [264], 26–27. However, the Supreme Court's guidelines to determine if punitive damages are unconstitutionally excessive allow, and even encourage, the Court to assess *comparable* civil penalties. Necessarily, *comparable* penalties will not be those actually available or imposed in the case as it appears.

damages is rooted in due process's requirement to not impose an overly severe punishment—"*in relation to the relevant state interest*"—on a defendant without "fair notice." Williams, 947 F.3d at 750 (emphasis added).

Neither Party has indicated what the proper state interest would be for the Court to consider. Doc. Nos. [263-1]; [264]. The context of this case, however, provides sufficient insight to determine the state interest at issue. For purposes of assessing the punitive damages award here, the Court finds the state interest may be described as ensuring officers conduct routine, non-violent, and non-emergency stops of ordinarily citizens without the use of excessive force. The state's interest, however, must also consider the often spontaneous and uncertain nature of law enforcement's interactions with law breaking citizens. Like liability for excessive force under Section 1983,[13] an award deterring and punishing excessive force thereby is most reasonably assessed in the light of the lawbreaking activity and the circumstances leading to the force used. Cf. Lee v. Ferraro, 284 F.3d 1188, 1197 (11th Cir. 2002) (indicating an officer can use force "necessary in the situation at hand").

---

[13] Indeed, the Court's description of the state interest reflects the conceptualization of Fourth Amendment excessive force claims in Section 1983 cases. See Doc. No. [177], 26–27 (recounting the standards for Section 1983 excessive force claims).

34

Based on this interest and the above analysis of the guideposts for assessing punitive damages, "the law does not permit the award" against Defendant Grubbs in this case. Johansen, 170 F.3d at 1331. With particular emphasis on the Court's determination of some, but overall, minor reprehensibility, the Court concludes that an equal punitive damages award to the already large compensatory damages awarded in this case cannot stand. This decision reflects the Court's consideration of the state's interest (i.e., excessive force not being used against non-violent, but lawbreaking, civilians) and the minor reprehensibility of Defendant Grubbs' conduct toward Plaintiff.

The foregoing should not be read to imply that Plaintiff's suffering and injuries resulting from this conduct were likewise minor or slightly reprehensible. There is no doubt that Plaintiff suffered gravely before ultimately succumbing to his injuries. Defendant Grubbs' conduct was physically harmful and reckless, but ultimately was an isolated incident for which there is no evidence of ill-will or bad intent. Given the reprehensibility of Defendant Grubbs' conduct, the extremely high compensatory award, and comparable penalties, the Court concludes that the punitive damages awarded in this case are constitutionally excessive and must be reduced to comply with the Due Process Clause.

"[C]ourt has a mandatory duty to correct an unconstitutionally excessive verdict so that it conforms to the requirements of the [D]ue [P]rocess [C]lause." Johansen, 170 F.3d at 1331 (citing BMW, 517 U.S. at 585). Having contemplated the state's interest, the slight reprehensibility finding, and the comparable awards and civil penalties for similar conduct, the Court determines that in this case a punitive damages award of $1 million is the maximum amount allowed by constitutional due process. A $1 million award serves the purposes of punitive damages—"punishing unlawful conduct and deterring its repetition"—without surpassing "the zone of arbitrariness that violates the Due Process Clause." BMW, 517 U.S. at 568. This award serves the state interest of deterring future excessive force violations of law enforcement officers in contexts akin to those of Defendant Grubbs and Plaintiff here. Cf. Osterhout v. Bd. of Cnty. Comm'rs of LeFlore Cnty., 10 F.4th 978, 1003 (10th Cir. 2021) ("We [] consider other cases with civil awards for excessive force. In many of those cases, juries have awarded punitive damages of $1 million or more for excessive force . . . ."[14]).

---

[14] The highest punitive damages award cited in Osterhout in making this point was $1.55 million. See 10 F.4th at 1003.

36

## IV.   CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant Grubbs' Motion for a New Trial or Remittitur of Punitive Damages. Doc. No. [263]. The Court **DENIES** Defendant Grubbs' Motion **insofar** as it requests a new trial or a remittitur of punitive damages based on the occurrences and arguments made at trial. The Court **GRANTS** Defendant Grubbs' Motion **insofar** as the $20 million punitive damages award in this case is unconstitutionally excessive in violation of the Due Process Clause. The Court hereby **REDUCES** the amount of punitive damages awarded against Defendant Grubbs to be within the bounds of the Constitution, which in this case is **$1 million**. An amended judgment is to follow the entry of this Order.

**IT IS SO ORDERED** this ___9th___ day of August, 2024.

_____
HONORABLE STEVE C. JONES
UNITED STATES DISTRICT JUDGE

37